**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY**

LARRY BLAIR )
        )
     and )
        )
CHARLIE DAVIS, )
        )
On Behalf Of Themselves And )
All Other Persons Similarly Situated, )     Case No: 09-CV-2443 EFM/KGG
        )
       Plaintiffs, )
    vs. )
        )
TRANSAM TRUCKING, INC., )
        )
       Defendant. )
        )

---

## REPLY IN SUPPORT OF DEFENDANT TRANSAM TRUCKING, INC.'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

SEIGFREID BINGHAM, P.C.

By: /s/ Rachel H. Baker
     Rachel H. Baker US-KS #70148
     Shannon Johnson KS #23496
     2800 Commerce Tower
     911 Main Street
     Kansas City, Missouri 64105
     rbaker@seigfreidbingham.com
     sjohnson@seigfreidbingham.com
     Phone:    816-421-4460
     Fax:       816-474-3447

ATTORNEYS FOR DEFENDANT
TRANSAM TRUCKING, INC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF UNCONTROVERTED FACTS .................................................... 3

III. SUMMARY JUDGMENT STANDARD ............................................................... 93

IV. ARGUMENT AND AUTHORITIES ................................................................... 95

    A. Plaintiffs have Failed to Properly Controvert TransAm's Statements of
    Fact, thus TransAm's Material Facts Remain Uncontroverted. ................................ 95

    B. TransAm's Owner Operators are Accurately Classified as Independent
    Contractors Under the FLSA and the KWPA. ............................................. 97

    C. Results of IRS and DOL Investigations of Worker Classification
    Issues at TransAm ................................................................................ 109

V. CONCLUSION ............................................................................................. 110

# **TABLE OF AUTHORITIES**

Page

## Cases

*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664 (10th Cir. 1998) .................................................. 94

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...................................................... 1, 93, 94

*Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238 (10th Cir. 1990) .......... 94

*Brennan v. Sand Products, Inc.,* 371 F. Supp. 236 (W.D. Okla. 1973) ...................................... 106

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................ 93

*Donovan v. DialAmerica Marketing*, 757 F.2d 1376 (3rd Cir. 1985) ...................................... 107

*Goldberg v. Bellotto*, 207 F.Supp. 499 (S.D. Fla. 1962) ........................................................ 107

*Hall v. Bellmon,* 935 F.2d 1106 (10th Cir. 1991) ........................................................ 94, 95, 96

*Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299 (5th Cir. 1998) ............... 107

*In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d 557 (N.D. Ind. 2010) ............. 13, 21, 25,
............................................................................................ 30, 32, 33, 34, 35, 36, 50, 51,52,
.............................................................................................. 53, 54, 55, 56, 57, 60, 61, 62, 64,
........................................................................................ 65, 67, 69, 94, 98, 99, 107, 108

*Luxama v. Ironbound Exp., Inc.*, No. 11-2224, 2012 WL 5973277 (D.N.J., June 28, 2012) ..... 107

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................. 93

*Mazzei v. Rock N Around Trucking, Inc.,* 246 F.3d 956 (7th Cir. 2001) ................................... 107

*Mitchell v. Strickland Transportation Co.*, 228 F.2d 124 (5th Cir. 1956) ................................. 107

*Murray v. City of Sapulpa*, 45 F.3d 1417 (10th Cir. 1995) ............................. 3, 42, 74, 77, 94, 96

*Real v. Driscoll Strawberry Assoc., Inc.,* 603 F.2d 748 (9th Cir. 1979) ........................... 101, 107

*Ruiz v. Affinity Logistics Corp.,* 887 F. Supp. 2d 1034 (S.D. Cal. 2012) ................................. 107

*Spaulding v. United Transp. Union*, 279 F.3d 901 (10th Cir. 2002) ......................................... 93

*State Comp. Ins. Fund v. Brown*, 32 Cal. App. 4th 188 (1995) .................................... 9, 106, 107

*Stevens,* 561 F.Supp.2d 1224, 1230 (D. Kan. 2008) ....................................................... 93, 95, 96

*W.J. Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308 (5th Cir. 1976) ..................... 100, 107

*Wallin v. Dycus,* No. 03-CV-00174, 2009 WL 2490127 (D. Colo. August 13, 2009) .......... 94, 96

*Wallis v. Secretary Kan. Dept. of Human Resources*, 236 Kan. 97, 689
   P.2d 789 (Kan. 1984) ....................................................................................................... 108

**Rules**

D. Kan. Local Rule 56.1 ......................................... 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20,
.................................................. 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34,
.................................................. 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 49, 50, 51,
.................................................. 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65,
.................................................. 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 79, 80, 81, 82,
.................................................. 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 96, 97, 108

D. Kan. Local Rule 56.1(b)............................. 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21,
.................................................. 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34,
.................................................. 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 48, 49,
.................................................. 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 61, 62, 63,
.................................................. 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 79, 80,
.................................................. 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 96

D. Kan. Local Rule 56.1(d)............................................................................ 60

Fed. R. Civ. P. 56........................................ 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19,
.................................................. 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33,
.................................................. 34, 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 49, 50,
.................................................. 51, 52, 53, 54, 55, 56, 57, 58, 59, 61, 62, 63, 64, 65,
.................................................. 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 79, 80, 81, 82,
.................................................. 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 95, 96, 97

Fed. R. Civ. P. 56(e) ............................................................................ 96

Fed. R. Evid. 602 ............................................................................ 95

**Regulations**

49 C.F.R. § 376.12 ............................................................................ 54
49 C.F.R. § 382.101 ...................................................................... 37, 99
49 C.F.R. § 390.1 ......................................................................... 3, 99
49 C.F.R. § 390.3(e) ......................................................................... 3
49 C.F.R. § 391.1 ............................................................................ 99

## I.   INTRODUCTION

To overcome TransAm Trucking, Inc.'s ("TransAm") *Motion For Summary Judgment*, Plaintiffs must "set forth <u>*specific facts*</u> showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis added).   Plaintiffs, however, failed to meet this burden in their *Memorandum In Opposition To Defendant's Motion for Summary Judgment* (Doc. 71).   For the most part, Plaintiffs offered nothing but conjecture, speculation, misstatements unsupported by the record and/or argument of immaterial (and often inadmissible) additional facts in their attempts to controvert Defendant's properly supported Statements of Fact (SOF).   Thus, their attempts to controvert TransAm's SOF are simply insufficient such that TransAm's material SOF remain uncontroverted.

Regarding the law to be applied to TransAm's uncontroverted facts, the parties agree that the economic realities test is to be applied.   Plaintiffs, however, incorrectly apply this test by limiting their analysis to the "economically dependent" prong.   They simply fail to analyze the remaining prong of the economic realities test, i.e., whether they are in business for themselves. Defendant agrees that employees who receive wages from their employer are economically dependant on their employer.   They, in contrast to the Plaintiffs, have no opportunity for profit and loss.   Employees, unlike Plaintiffs, make little investment in equipment and rarely, if ever, hire others to work for them as do Plaintiffs.   Plaintiffs not only make a substantial investment in their trucks, limiting their use to business as opposed to personal, but they also pay their own expenses and are in primary control of their own business activities.   These, and other factors, distinguish Plaintiffs from employees.

Furthermore, Plaintiffs have misconstrued what it means to be economically dependent. They argue that they are economically dependent because their Independent Contractor Agreement ("ICA") with TransAm requires them to drive exclusively for TransAm so long as

the ICA is in effect.  Plaintiffs impermissibly equate this contractual (and federally mandated) exclusivity with economic dependence.  If this exclusivity were determinative of whether Plaintiffs were independent contractors or employees, the other factors which courts are required to examine would be superfluous.  Under Plaintiffs' approach, every independent contractor who contracts to exclusively provide a service for a set period would be transformed into an employee.  Obviously, this is not the law, which of course explains why courts must consider multiple factors in classifying independent contractors versus employees.

Thus, the significant point that Plaintiffs ignore, and that TransAm fully briefed in its *Motion for Summary Judgment* (Docs. 63, 65), is that in order to determine whether an individual is an independent contractor or an employee, the Tenth Circuit mandates that six elements be analyzed: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.  *Johnson v. Unified Gov't of Wyandotte Co.,* 371 F.3d 723, 729 (10th Cir. 2004).  None of these factors alone are dispositive; instead, the Court employs a totality of the circumstances approach to determine whether the Plaintiffs are economically dependent as employees are economically dependent upon their employer or whether Plaintiffs are in business for themselves as independent contractors.  *Id.*  TransAm correctly analyzed and interpreted each of those factors in light of numerous federal and state cases which have examined and analyzed similar factors with regards to the role of independent contractor drivers in the trucking industry, whether under the FLSA, state law, the KWPA, or other law.

Plaintiffs, as discussed above, have failed to create a genuine issue of any fact that is material to the issues before the Court.  Thus, under the totality of the circumstances, the result is clear:  TransAm has properly classified its drivers as independent contractors and, therefore, is entitled to judgment as a matter of law.

## II.    STATEMENT OF UNCONTROVERTED FACTS[1]

**SOF 1:**      TransAm Trucking, Inc. is an interstate and intrastate for-hire motor carrier (US DOT No. 315503, Docket No. MC-197897) with facilities in Olathe, Kansas, and Rockwall, Texas.  Affidavit of Murray Droescher, attached as Exhibit A, at ¶ 4.

**REPLY:**      Uncontroverted.

**SOF 2:**      In order to fulfill its' customers' needs, TransAm requires the services of a number of qualified drivers to haul tractor-trailer loads on its behalf. Exh. A, Droescher Affidavit, at ¶ 5.

**REPLY:**      Uncontroverted.

**SOF 3:**      As an interstate motor carrier, TransAm is governed by the Federal Motor Carrier Safety Act ("FMCSA") and the United States Department of Transportation.  Drivers who haul for TransAm, whether as employed Company Drivers or Owner Operators, are required to be hired pursuant to specific regulatory requirements set forth in the Federal Motor Carrier Safety Regulations promulgated by the Federal Motor Carrier Safety Administration.   Exh. A, Droescher Affidavit, at ¶ 8; _see also, e.g._, 49 C.F.R. §§ 390.1 _et seq_.

**REPLY:**      Deemed uncontroverted.  Though Plaintiffs argue the affidavit of Murray Droescher is an inadmissible "lay opinion" of the law, in fact the Federal Motor Carrier Safety Administration regulations require motor carriers to be knowledgeable of and comply with all requirements contained in the regulations.  _See_ 49 C.F.R. § 390.3(e).

---

[1] TransAm has asserted numerous "facts" for purposes of this Summary Judgment, and notes that no "fact" which has been asserted as such here shall be considered an admission, and TransAm reserves the right to vigorously contest various facts at trial.

Further, SOF 3 not only relied on Mr. Droescher's knowledge and expertise on TransAm's requirements under the FMCSA, but also cited a portion of the regulations themselves, and therefore this fact is properly supported and admissible.

**SOF 4:**      TransAm has both Company Drivers (who are employees of TransAm) and Owner Operators (who enter into Independent Contractor Agreements with TransAm).  The company utilizes the services of both types of drivers for the business reason that Company Drivers are only entitled to limited time off, and further, because the company's business can fluctuate tremendously.  As such, in order to ensure customer demands are met a timely manner, TransAm uses both Company Drivers and Owner Operators to haul its loads.  Exh. A, Droescher Affidavit, at ¶¶ 6-7; Deposition of Russ McElliott, attached in relevant part as Exhibit B, at p. 25:3 – 11.

**REPLY:**      Deemed uncontroverted.  Plaintiffs only controvert this fact to the extent TransAm uses the terms "Company Drivers" and "Owner Operators" and cites generally to the <u>entire</u> statement of facts contained in Plaintiffs' Motion for Partial Summary Judgment. (Doc. 66).  This is insufficient under Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b) to controvert this fact.  Moreover, most of the "facts" cited by Plaintiffs are unsupported and inadmissible, as more fully set forth in *Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment* (Doc. 72), and TransAm incorporates its responses to Plaintiffs' Statements of Fact ("PSOF") ¶¶ 2 – 38 by reference.  Accordingly, Plaintiffs' response to SOF must be disregarded.

## Independent Contractor Agreements

**SOF 5:**      TransAm's relationships with its Owner Operators are governed by written Independent Contractor Agreements.  Exh. A, Droescher Affidavit, at ¶ 9.

**REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written Independent Contractor Agreements, and fail to demonstrate any genuine controversy other than the application of this fact to the relevant "economic realities test," which is merely legal argument and not a proper controversion of the fact as stated pursuant to Fed. R. Civ. P. 56.  Plaintiffs do not, and cannot, dispute they entered into written Independent Contractor Agreements with TransAm.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  Accordingly, SOF 5 is uncontroverted.

**SOF 6:**      The Independent Contractor Agreement is a lease whereby an Owner Operator agrees to lease to TransAm the use of a tractor for the hauling of freight to TransAm's customers:

> [Owner Operator] owns and/or leases motor vehicle equipment and is engaged in the business of transporting freight by motor vehicle pursuant to long term arrangements with for-hire motor carriers; and…[TransAm] desires to lease [Owner Operator's] motor vehicle equipment and to obtain certain personnel services from [Owner Operator] from time to time, and [Owner Operator] desires to lease such motor vehicle equipment to [TransAm] and to make available such personnel services from time to time…

Independent Contractor Agreement dated March 23, 2007, attached as Exhibit C, at Whereas Clauses 2, 3.

**REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written ICAs, and fail to demonstrate any genuine controversy other than the application of this fact to the relevant "economic realities test," which is merely legal argument and not a proper controversion of the fact as stated pursuant to Fed. R. Civ. P. 56.  Plaintiffs do not, and cannot, dispute they entered into written Independent

Contractor Agreements with TransAm containing the language cited in SOF 6.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  As such, SOF 6 is uncontroverted.

**SOF 7:**      In the Independent Contractor Agreement, the Owner Operator agrees to "furnish to [TransAm] the motor vehicle equipment….for the purpose of hauling freight from time to time pursuant to the terms and conditions of this Agreement.  Such Equipment shall be furnished to [TransAm] on a schedule to be determined by [Owner Operator]."  Exh. C, at ¶ 1(a).

   **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written Independent Contractor Agreements, and fail to demonstrate any genuine controversy other than the application of this fact to the relevant "economic realities test," which is merely legal argument and not a proper controversion of the fact as stated pursuant to Fed. R. Civ. P. 56.  Plaintiffs do not, and cannot, dispute they entered into written Independent Contractor Agreements with TransAm containing the language cited in SOF 7.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  As such, SOF 7 is uncontroverted.

**SOF 8:**      Every Owner Operator signs a separate Independent Contractor Agreement for each tractor he leases to TransAm.   Exh. A, Droescher Affidavit, at ¶ 9.

   **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written Independent Contractor Agreements, and fail to demonstrate any genuine controversy other than the application of this fact to the relevant "economic realities test," which is merely legal argument and not a proper controversion of the fact

as stated pursuant to Fed. R. Civ. P. 56.  Plaintiffs do not, and cannot, dispute they entered into separate written Independent Contractor Agreements with TransAm for each tractor leased to TransAm.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  As such, SOF 8 is uncontroverted.

**SOF 9:**      The Independent Contractor Agreement dictates and describes the relationship between the parties:

> The parties intend to create by this Agreement an independent contractor relationship and not an employment or master/servant relationship between Carrier and Contractor.  Neither Contractor nor any personnel furnished by Contractor to perform services hereunder shall be considered employees of Carrier at any time, under any circumstances or for any purpose.

Exh. C, at § 20.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written Independent Contractor Agreements, and fail to demonstrate any genuine controversy other than the application of this fact to the relevant "economic realities test," which is merely legal argument and not a proper controversion of the fact as stated pursuant to Fed. R. Civ. P. 56.  Plaintiffs do not, and cannot, dispute they entered into written Independent Contractor Agreements with TransAm containing the language cited in SOF 9.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  As such, SOF 9 is uncontroverted.

**SOF 10:**      Further, the Independent Contractor Agreement provides: "Contractor shall determine the method, means and the manner of performing Contractor's obligations pursuant to

this Agreement and shall be responsible to Carrier for the performance of this Agreement in accordance with the rules and regulations of appropriate regulatory agencies." Exh. C, at § 20.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written Independent Contractor Agreements, and fail to demonstrate any genuine controversy other than the application of this fact to the relevant "economic realities test," which is merely legal argument and not a proper controversion of the fact as stated pursuant to Fed. R. Civ. P. 56.  Plaintiffs do not, and cannot, dispute they entered into written Independent Contractor Agreements with TransAm containing the language cited in SOF 10.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  As such, SOF 10 is uncontroverted.

**SOF 11:**      Further, the Independent Contractor Agreement provides: "Carrier shall neither have nor exercise any control or direction over the specific methods by which the Contractor (or Contractor's employees or agents) shall perform services hereunder."  Exh. C, at § 20.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written Independent Contractor Agreements, and fail to demonstrate any genuine controversy other than the application of this fact to the relevant "economic realities test," which is merely legal argument and not a proper controversion of the fact as stated pursuant to Fed. R. Civ. P. 56.  Plaintiffs do not, and cannot, dispute they entered into written Independent Contractor Agreements with TransAm containing the language cited in SOF 11.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  As such, SOF 11 is uncontroverted.

**SOF 12:**     By the terms of the Agreement itself, the Owner Operator signing the Agreement does not have any obligation to perform the hauling services personally.  Rather, the Owner Operator can hire others to perform the services called for under the Agreement.  Exh. A, Droescher Affidavit, at ¶ 10; Exh. C, at § 2.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not controvert the existence or terms of the written Independent Contractor Agreements, and fail to demonstrate any genuine controversy.  Plaintiffs do not, and cannot, dispute they entered into written Independent Contractor Agreements with TransAm which allowed Plaintiffs to hire their own employees or personnel, because both of the named Plaintiffs indeed leased multiple trucks and hired employees or personnel to drive those trucks.  *See* Doc. 65, at SOF ¶¶ 64-81; Doc. 72 at response to PSOF ¶ 28.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 28 by reference.  As such, SOF 12 is uncontroverted.

**The Named Plaintiffs**

**SOF 13:**     Named Plaintiff Larry Blair was a Company Driver for TransAm from December 2002 until May 2004.   Deposition of Larry Blair, attached in relevant part as Exhibit D, at p. 47:25 – 48:23, 50:3 – 50:8.

> **REPLY:**     Uncontroverted.

**SOF 14:**     Mr. Blair testified he has a degree in Business Management from The Ohio State University. Exh. D, Deposition of Larry Blair, at p. 16:12 – 16:19.

> **REPLY:**     Uncontroverted.

**SOF 15:**      Mr. Blair voluntarily resigned his employment with TransAm in 2004.  Exh. D,
Deposition of Larry Blair, at p. 44:18 – 44:21.

>      **REPLY:**      Uncontroverted.

**SOF 16:**      In March 2007, Mr. Blair elected to return to TransAm.  At that time, he had the
option of being either a Company Driver or an Owner Operator.  He voluntarily elected to
become an Owner Operator.  Exh. D, Deposition of Larry Blair, at p. 54:2 – 56:2, 81:25 – 85:1,
87:3 – 88:4.

>      **REPLY:**      Deemed uncontroverted.  Plaintiffs only controvert this fact to the extent
> TransAm uses the terms "Company Drivers" and "Owner Operators" and cites generally
> to the <u>entire</u> statement of facts contained in *Plaintiffs' Motion for Partial Summary
> Judgment*. (Doc. 66).  This is insufficient under Fed. R. Civ. P. 56 and D. Kan. Local
> Rule 56.1(b) to controvert this fact.  Moreover, most of the "facts" cited by Plaintiffs are
> unsupported and inadmissible, as more fully set forth in *Defendant's Response to
> Plaintiffs' Motion for Partial Summary Judgment* (Doc. 72), and TransAm incorporates
> its responses to PSOF ¶¶ 2 – 38 by reference.  Accordingly, Plaintiffs' response must be
> disregarded and SOF 16 is uncontroverted.

**SOF 17:**      Mr. Blair became an Owner Operator for TransAm when he signed his first
Independent Contractor Agreement with TransAm on March 23, 2007.  *See* Exh. C.

>      **REPLY:**      Deemed uncontroverted.  Plaintiffs only controvert this fact to the extent
> TransAm uses the terms "Company Drivers" and "Owner Operators" and cites generally
> to the <u>entire</u> statement of facts contained in *Plaintiffs' Motion for Partial Summary
> Judgment*. (Doc. 66).  This is insufficient under Fed. R. Civ. P. 56 and D. Kan. Local
> Rule 56.1(b) to controvert this fact.  Moreover, most of the "facts" cited by Plaintiffs are

unsupported and inadmissible, as more fully set forth in *Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment* (Doc. 72), and TransAm incorporates its responses to PSOF ¶¶ 2 – 38 by reference.  Accordingly, Plaintiffs' facts must be disregarded and SOF 17 is uncontroverted.

**SOF 18:**      Mr. Blair elected to become an Owner Operator because he wanted to own his own business.  Exh. D, Deposition of Larry Blair, at p. 90:2 – 90:15.

**REPLY:**      Deemed uncontroverted.  Plaintiffs only argue this fact is legally irrelevant but do not attempt to controvert the fact as stated.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.

**SOF 19:**      Named Plaintiff Charlie Davis became an Owner Operator for TransAm in December 2005 by signing his first Independent Contractor Agreement on December 9, 2005. *See* Independent Contractor Agreement dated December 9, 2005, attached as Exhibit E.

**REPLY:**      Deemed uncontroverted.  Plaintiffs only controvert this fact to the extent TransAm uses the terms "Company Drivers" and "Owner Operators" and cites generally to the entire statement of facts contained in *Plaintiffs' Motion for Partial Summary Judgment*. (Doc. 66).  This is insufficient under Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b) to controvert this fact.  Moreover, most of the "facts" cited by Plaintiffs are unsupported and inadmissible, as more fully set forth in *Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment* (Doc. 72), and TransAm incorporates its responses to PSOF ¶¶ 2 – 38 by reference.  Accordingly, Plaintiffs' response must be disregarded and SOF 19 is uncontroverted.

**SOF 20:**      Mr. Davis elected to become an Owner Operator because he wished to choose whether he was home for holidays, which he understood was not an option available to Company Drivers, who are only entitled to four days off per month.  Deposition of Charlie, attached in relevant part as Exhibit F, at p. 107:13 – 109:7.  He also wanted to own his own truck.  Exh. F, at p. 249:20 – 249:22.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs only argue this fact is irrelevant but do not attempt to controvert the fact as stated.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26-38 by reference.

**SOF 21:**      According to the First Amended Complaint, "the Putative Class Members are those current and former Leased Drivers [Owner Operators] improperly misclassified as independent contractors who were issued compensation via ComData Cards provided by Defendant or otherwise had Charges Deducted from their compensation."  Amended Complaint for Damages – Class Action, Doc. No. 22, at ¶ 24.  As defined, the putative Plaintiffs' class would include all Owner Operators who entered into Independent Contractor Agreements during the relevant time period.  *See* id.

> **REPLY:**      Deemed uncontroverted.   Plaintiffs do not argue the First Amended Complaint is not accurately quoted or specifically point to any evidence that this fact is controverted, and this fact is supported by the record in accordance with Fed. R. Civ. P. 56.  Accordingly, SOF 21 is uncontroverted.

**SOF 22:**      Owner Operators who enter into Independent Contractor Agreements with TransAm include contractors who leased their tractors from other companies and then, in turn,

lease those same tractors to TransAm, as well as independent contractors who own their own trucks and lease them to TransAm under an Independent Contractor Agreement.   Exh. A, Droescher Affidavit, at ¶ 11.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not demonstrate a genuine dispute. The putative class as defined by the Plaintiffs is part of the record and the language speaks for itself.  Further, Plaintiffs have provided no admissible evidence that none of TransAm's Owner Operators were permitted to provide trucks from another source, as there is ample evidence in the record that drivers are, in fact, permitted to do so with some minimal restrictions such as the truck's age and ability to carry gross weight.  *See* Doc. 65, SOF ¶ 49.   Moreover, Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d 557, 578-79 (N.D. Ind. 2010) (interpreting Kansas law).   Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 37 by reference.  Accordingly, SOF 22 is uncontroverted.

**Compensation**

**SOF 23:**      Owner Operators are paid a base rate of 84 cents per mile, while Company Drivers are paid a base rate of approximately 18 to 24 cents per mile.  Exh. B, Deposition of Russ McElliott, at p. 95:19 – 95:25.

> **REPLY:**      Deemed uncontroverted.  The Independent Contractor Agreements entered into by Plaintiffs, attached to Defendant's Motion for Summary Judgment (Docs. 65.3 and 65.5) provide Plaintiffs were to be paid 84 cents per mile.  Further, named Plaintiff Larry Blair testified he was paid 84 cents per mile.  *See* Doc. 71.1, at p. 149: 22 – 150:15.

Plaintiffs have not cited any other specific evidence in the record that controverts this fact as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), and therefore Plaintiffs' unsupported argument must be disregarded.   Accordingly, SOF 23 is uncontroverted.

**SOF 24:**     Owner Operators are issued 1099s for their services and do not receive W-2 wages. Exh. F, Deposition of Charlie Davis, at p. 130:6 – 131:15; Exh. A, Droescher Affidavit, at ¶ 12.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated that Owner Operators are issued 1099s for their services rather than W-2 wages.   In fact, Plaintiffs have cited <u>no</u> evidence to controvert this fact.    Therefore Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 25:**     Per their Agreement, Owner Operators are provided weekly settlement statements to account for payments due the driver by TransAm.  The Agreement provides in relevant part:

> In consideration for furnishing the Equipment and the provision of the personnel services as specified herein, Carrier shall pay to Contractor the compensation described in Exhibit C…All such payments to Contractor and any applicable deductions shall be reflected in an operator's settlement which Carrier shall produce both on a weekly basis and as a final statement following termination of this Agreement...

Exh. C, Independent Contractor Agreement, at § 3.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated that Owner Operators are issued settlement statements, nor do Plaintiffs controvert the cited language of the Independent Contractor Agreement.   In fact, Plaintiffs have cited <u>no</u> evidence to controvert this fact.   Therefore Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and must be disregarded for its

failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 26:**    Blair never had charges deducted from his settlement that he did not authorize, other than some loading receipts he did not believe he was reimbursed for and which he discussed with his fleet manager.  Exh. D, Deposition of Larry Blair, at p. 191:19 – 193:2.

    **REPLY:**    Deemed uncontroverted.  Plaintiffs admit SOF 26 is uncontroverted and only argue that the statement is immaterial.  The remainder of Plaintiffs' response to this fact is argument unsupported by any specific facts in the record and therefore this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 27:**    Davis has never made a claim to TransAm that there were charges deducted from his settlement statements that were not authorized by him.  He does not have any information or documentation that indicates that his charges were unauthorized.  Exh. F, Deposition of Charlie Davis, at p. 179:17 – 180:20.

    **REPLY:**    Deemed uncontroverted.  Plaintiffs admit SOF 27 is uncontroverted and only argue that the statement is immaterial.  The remainder of Plaintiffs' response to this fact is argument unsupported by any specific facts in the record and therefore this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 28:**    In practice, and per the Agreement, payments from TransAm to Owner Operators do not include employee withholding:

> Contractor understands and agrees that Carrier shall not withhold on behalf of Contractor (or Contractor's employees or agents) pursuant to this Agreement any sums for income tax, unemployment insurance, Social Security or any other withholding pursuant to any law or requirement of

> any governmental body relating to them, or make available to Contractor (or Contractor's employees or agents) any of the benefits afforded to employees of Carrier.

Exh. C, Independent Contractor Agreement, at § 20; Exh. A, Droescher Affidavit, at ¶ 12.

> **REPLY:** Deemed uncontroverted. Plaintiffs admit SOF 28 is uncontroverted and only argue that the statement is immaterial. Plaintiffs do not controvert the fact as stated that payments by TransAm to Owner Operators do not include employee withholding, nor do Plaintiffs controvert the cited language of the Independent Contractor Agreement. The remainder of Plaintiffs' response to this fact is argument unsupported by any specific facts in the record and therefore this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 29:** Davis admits he kept receipts and submitted his Owner Operator-related business expenses as a deduction on his income taxes. Exh. F, Deposition of Charlie Davis, at p. 200:24 – 201:4, 232:21 – 233:5, 240:23 – 241:21.

> **REPLY:** Deemed uncontroverted. Plaintiffs admit SOF 29 is uncontroverted and only argue that the statement is immaterial. The remainder of Plaintiffs' response to this fact is argument unsupported by any specific facts in the record and therefore this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**Required and Optional Training**

**SOF 30:** Only experienced drivers may elect to become Owner Operators; inexperienced drivers are only eligible to hold positions as Company Drivers until they gain required

experience.  Deposition of Rhonda McFarland, attached in relevant part as Exhibit G, at p. 53:15 – 54:6.

      **REPLY:**     Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated.  To the extent Plaintiffs have not admitted the entirety of the fact as stated, Plaintiffs have not demonstrated with specificity, with evidence from the record, that there is any genuine dispute as to this fact.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 4-6 by reference.  Therefore, SOF 30 is uncontroverted.

**SOF 31:**     Both Company Drivers and Owner Operators attend at least a three-day orientation at TransAm's Olathe, Kansas or Rockwall, Texas facilities.  Exh. G, Deposition of Rhonda McFarland, at p. 18:7 – 13.

      **REPLY:**     Uncontroverted.

**SOF 32:**     During the three-day orientation session, Owner Operators complete FMCSA and DOT-required evaluations and testing, receive their Owner Operator Information Handbooks, and sign their Independent Contractor Agreements.  *See* Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories, attached as Exhibit H, at No. 6.

      **REPLY:**     Uncontroverted.

**SOF 33:**     Owner Operator Information Handbooks are different from the handbooks provided to Company Drivers.  Affidavit of Rhonda McFarland, attached as Exhibit I, at ¶ 8.

      **REPLY:**     Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated and only argue that the statement is immaterial.  The remainder of Plaintiffs' response to this fact is argument unsupported by any specific facts in the record and therefore this

response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 34:**     Company Drivers are also required to attend at least a three-day orientation, and inexperienced Company Drivers are also required to complete an additional 22-day training. During training and orientation, Company Drivers receive their Driver Information Handbook, complete FMCSA and DOT-required evaluations, and complete W-4s and other payroll documents.  Exh. H, at No. 6.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs admit this fact is uncontroverted and only argue that the statement is misleading.  The remainder of Plaintiffs' response to this fact is argument unsupported by any specific facts in the record and therefore this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 4-6 by reference.  Therefore, SOF 34 is uncontroverted.

**SOF 35:**     Although Company Drivers and Owner Operators attend the same three-day orientation session, the information provided to the two groups of drivers is different in some respects, including but not limited to home time, maintenance of equipment, routes, and fuel solution.  Owner Operators are dismissed from the orientation when TransAm covers topics that are applicable only to employees, such as employee benefits.  Exh. G, Deposition of Rhonda McFarland, at p. 18:9 – 21:12; *see also* Training PowerPoint, attached as Exhibit J.

**REPLY:**      Deemed uncontroverted.  Plaintiffs state they controvert SOF 35 but fail to demonstrate a genuine controversy.  Plaintiffs' response is entirely consistent with SOF 35 in that both Plaintiffs and TransAm acknowledge that Company Drivers and Owner Operators attend the same three-day orientation session.  Plaintiffs have not provided specific admissible evidence refuting TransAm's statement that "the information provided to the two groups of drivers is different in some respects, including but not limited to home time, maintenance of equipment, routes, and fuel solution," or that "Owner Operators are dismissed from the orientation when TransAm covers topics that are applicable only to employees, such as employee benefits."   In fact, Plaintiffs reference their own Statement of Facts (Doc. 66) at paragraphs 4 – 6 to controvert SOF 35, which includes no testimony from Blair at all and further supports SOF 35 as stated. TransAm incorporates its responses to PSOF ¶¶ 4-6 by reference.  Accordingly, because Plaintiffs' "controversion" of this fact is argument unsupported by any specific, admissible evidence in the record, it must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), and SOF 35 is uncontroverted.

**SOF 36:**      Blair and Davis each provided a signed acknowledgement to TransAm stating they had received an Owner Operator Information Handbook, reviewed the contents, and understood they were responsible for becoming familiar with the contents.   Owner Operator Acknowledgement of Receipt signed by Larry Blair, attached as Exhibit K; Owner Operator Information Handbook Receipt signed by Charlie Davis, attached as Exhibit L.

**REPLY:**      Deemed uncontroverted.  Plaintiffs provided <u>no evidence</u> to controvert the fact as stated and only argue that the statement is immaterial.  To the extent Plaintiffs do

not admit the fact exactly as stated, Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 37:** Blair and Davis also acknowledged that "any policies or procedures of TransAm that are applicable only to employees of TransAm will not apply to me or [to] the services I provide." Exh. K; Exh. L.

> **REPLY:** Deemed uncontroverted.  Plaintiffs provided <u>no evidence</u> to controvert the fact as stated and only argue that the statement is immaterial.  To the extent Plaintiffs do not admit the fact exactly as stated, Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

**SOF 38:** During the orientation period, Owner Operators choose their tractors if they elect to lease a tractor through TransAm Leasing, Inc.[2]  Exh. B, Deposition of Russ McElliott, at p. 57:18-24.  Owner Operators may also choose to provide their own truck from another source. Exh. G, Deposition of Rhonda McFarland, at p. 63:5 – 65:14.

> **REPLY:** Deemed uncontroverted.  Plaintiffs do not demonstrate a genuine dispute. The putative class as defined by the Plaintiffs is part of the record and the language speaks for itself.  Further, Plaintiffs have provided <u>no</u> admissible evidence that <u>none</u> of TransAm's Owner Operators were permitted to provide trucks from another source, as there is ample evidence in the record that drivers are, in fact, permitted to do so with

---

[2] TransAm Leasing, Inc. is a separate corporation engaged in the business of leasing motor vehicle equipment to Owner Operators and is not a defendant in this lawsuit.

some minimal restrictions such as the truck's age and ability to carry gross weight.  *See* Doc. 65, SOF ¶¶ 49; Doc. 72.   Moreover, Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 37 by reference.  Accordingly, SOF 38 is uncontroverted.

**SOF 39:**     Davis admits he chose the truck he wanted to lease and received the truck he requested.  Exh. F, Deposition of Charlie Davis, at p. 110:8 – 111:14, 122:6 – 122:9.

     **REPLY:**     Uncontroverted.

**SOF 40:**     Company Drivers are assigned their tractors following orientation, and do not have a choice in what tractor to which they are assigned.  Exh. G, Deposition of Rhonda McFarland, at p. 75:14 – 21; Exh. I, McFarland Affidavit, at ¶ 9; *see also* Exh. D, Deposition of Larry Blair, at p. 48:3 – 48:13.

     **REPLY:**     Uncontroverted.

**SOF 41:**     In addition to orientation, TransAm also offers an annual "Ethics and Techniques" class and quarterly "safety" classes on a variety of topics, with some topics relating specifically to Company Drivers and some relating specifically to Owner Operators.  Exh. G, Deposition of Rhonda McFarland, at p. 30:3 – 30:19, 39:8 – 39:23.

     **REPLY:**     Deemed uncontroverted.  The testimony cited by Defendant in support of SOF 41 establishes both that the Ethics and Techniques class and quarterly safety classes exist and that "the class is one in the same but there might be topics relating specifically to company drivers or relating specifically to independent contractors that are built into

the program." *See* Deposition of Rhonda McFarland, attached as Exh. G to Doc. 65, at

p. 30:16 – 19.  Plaintiffs do not controvert the fact as stated or the supporting testimony

with any specific evidence in the record and therefore Plaintiffs' response must be

disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and

D. Kan. Local Rule 56.1(b).

**SOF 42:**    The Ethics and Techniques class and the quarterly safety classes are mandatory for

Company Drivers.  Missing a class results in discipline, up to and including termination.  Exh. G,

Deposition of Rhonda McFarland, at p. 31:15 – 31:22, 39:8 – 21.

**REPLY:**    Uncontroverted.

**SOF 43:**    However, Owner Operators are not required to attend the Ethics and Techniques

class or the quarterly safety classes.  They may skip these classes, but are awarded a yearly

incentive bonus of a one cent per mile increase if they voluntarily choose to attend all classes.

Exh. F, Deposition of Charlie Davis, at p. 198:14 – 200:20; Exh. G, Deposition of Rhonda

McFarland, at p. 31:15 – 33:10, 39:18 – 40:6.

**REPLY:**    Uncontroverted.

**SOF 44:**    Only approximately 70 percent of Owner Operators choose to attend all classes and

become eligible for the incentive bonus.  Exh. G, Deposition of Rhonda McFarland, at p. 32:10 –

32:15.

**REPLY:**    Uncontroverted.

**SOF 45:**    Blair did not choose to attend all classes; therefore he was ineligible for the

incentive bonus.  He was not disciplined or terminated for his failure to attend safety classes

because he was not required to attend them as an Owner Operator.  *See* Safety Class records for

Larry Blair, attached as Exhibit M; Exh. I, McFarland Affidavit, at ¶ 10.

**REPLY:**     Uncontroverted.

**Inability to Receive Employee Benefits**

**SOF 46:**     TransAm's Independent Contractor Agreement specifically prohibits Owner

Operators from receiving employee benefits through TransAm:

> Neither contractor nor any of Contractor's employees or agents shall
> have any claim under this Agreement or otherwise against Carrier for
> worker's compensation, unemployment compensation, vacation pay, sick
> leave, retirement benefits, Social Security benefits, disability insurance
> benefits, or any other employee benefits, all of which shall be the sole
> responsibility of Contractor.

Exh. C, § 20.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated that
>
> Owner Operators do not receive employee benefits from TransAm, nor do Plaintiffs
>
> controvert the cited language of the Independent Contractor Agreement.  The remainder
>
> of Plaintiffs' "controversion" of this fact is argument unsupported by any specific,
>
> admissible evidence in the record pertaining to whether Owner Operators are provided
>
> employee benefits, and therefore must be disregarded for its failure to comply with the
>
> standards set forth in Fed. R. Civ. P. 56.  Further, to the extent Plaintiffs improperly rely
>
> on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in
>
> contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm
>
> incorporates its responses to PSOF ¶ 26 - 38 by reference.  Accordingly, SOF 46 is
>
> uncontroverted.

**SOF 47:**     Owner Operators may opt to receive certain benefits at their own cost directly

through a third party provider. For example, Owner Operators may obtain health insurance at

their own cost from a company that is unrelated to TransAm, and from which TransAm does not

receive any benefit for the Owner Operator's election to purchase the benefit.  TransAm only

offers company health insurance benefits to its employees and Company Drivers. Exh. A, Droescher Affidavit, at ¶ 13.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated that Owner Operators may opt to receive certain benefits at their own cost directly through a third party provider.   The remainder of Plaintiffs' "controversion" of this fact is argument unsupported by any specific, admissible evidence in the record directly pertaining to Owner Operators' ability to obtain benefits at their own cost from a third party provider, and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56.   Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference.   Accordingly, SOF 47 is uncontroverted.

**Investment Required by Owner Operators**

**SOF 48:**      Pursuant to the Independent Contractor Agreements between the Owner Operators and TransAm, Owner Operators are responsible for paying all costs associated with their tractor, including lease or ownership payments, fuel, and maintenance:

> Carrier shall have no responsibility for operating and maintenance expenses in connection with the Equipment.   Contractor shall be responsible for all costs and expenses in connection with the operation and maintenance of the Equipment, including, but not limited to, fuel, oil, lubrication, routine tractor maintenance and repairs, and tractor washes.

Exh. C, Independent Contractor Agreement, at §1(d).

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated that Owner Operators are responsible for paying all costs associated with their tractors, nor

do Plaintiffs controvert the cited language in the Independent Contractor Agreement. The remainder of Plaintiffs' "controversion" of this fact is argument unsupported by any specific, admissible evidence in the record directly pertaining to Owner Operators' responsibility for paying all costs associated with their tractors, and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56. Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference.  Accordingly, SOF 48 is uncontroverted.

**SOF 49:**     Owner Operators are not required to lease a truck from TransAm Leasing, Inc., but that option is available to all Owner Operators.  Some Owner Operators bring their own tractors. This tractor may be owned or leased by the driver and is subject to certain criteria relating to age, ability to haul gross weight, and availability of a mobile communication device.   Exh. G, Deposition of Rhonda McFarland, at p. 63:5 – 65:14, 66:14 – 67:2; Exh. A, Droescher Affidavit, at ¶ 14; Exh. B, Deposition of Russ McElliott, at p. 49:4 – 49:11, 126:17 – 128:4.

     **REPLY:**     Deemed uncontroverted.  Plaintiffs do not demonstrate a genuine dispute. The putative class as defined by the Plaintiffs is part of the record and the language speaks for itself.  Further, Plaintiffs have provided no admissible evidence that <u>none</u> of TransAm's Owner Operators were permitted to provide trucks from another source, as there is ample evidence in the record that drivers are, in fact, permitted to do so with some minimal restrictions such as the truck's age and ability to carry gross weight.  *See* Doc. 65, SOF ¶¶ 49; Doc. 72.  Moreover, Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.

Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 37 by reference. Accordingly, SOF 49 is uncontroverted.

**SOF 50:**     Owner Operators who choose to lease a tractor through TransAm Leasing, Inc. may select their own tractors, with varying lease terms and lease costs available depending on the age and miles on the tractor chosen.  Exh. A, Droescher Affidavit, at ¶ 15; Exh. F, Deposition of Charlie Davis, at p. 110:8 – 111:14, 122:6 – 122:9; Exh. B, Deposition of Russ McElliott, at p. 52:23 – 53:23.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs state they controvert SOF 50 "in part" but fail to demonstrate a genuine controversy.  Plaintiffs' response is entirely consistent with SOF 50 and does not refute, with specific evidence, the fact as stated in accordance with Fed. R. Civ. P. 56 or D. Kan. Local Rule 56.1(b).  Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 15 by reference.  Accordingly, SOF 50 is uncontroverted.

**SOF 51:**     Owner Operators who choose to lease a tractor through TransAm Leasing have the option to purchase their tractor upon completion of the lease.  Exh. B, Deposition of Russ McElliott, at p. 51:14 – 52:22.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that Owner Operators who choose to lease a tractor through TransAm Leasing have the option to purchase their tractor upon completion of the lease, nor do Plaintiffs

controvert the cited language in the Independent Contractor Agreement. The remainder of Plaintiffs' "controversion" of this fact is argument unsupported by any specific, admissible evidence in the record directly pertaining to Owner Operators' option to purchase a tractor at the completion of the lease, and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference. Accordingly, SOF 51 is uncontroverted.

**SOF 52:** Blair entered into four Independent Contractor Agreements and leased four different tractors from TransAm Leasing, Inc. Exh. D, Deposition of Larry Blair, at p. 151:6 – 151:17. Each of these Agreements contained substantially similar terms as those contained in Exhibits C and E. Exh. A, Droescher Affidavit, at ¶ 17.

> **REPLY:** Deemed uncontroverted. Plaintiffs do not specifically controvert the fact as stated that Blair entered into four Independent Contractor Agreements or leased four different trucks from TransAm Leasing, Inc. Nor do Plaintiffs refute, with specific, admissible evidence, the fact that the Agreements contained substantially similar terms. Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 52 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 52 as stated. Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, to the extent

Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference. Accordingly, SOF 52 is uncontroverted.

**SOF 53:**      Davis also entered into four Independent Contractor Agreements and leased four different tractors from TransAm Leasing. Exh. F, Deposition of Charlie Davis, at p. 247:20 – 247:23.  Each of these Agreements contained substantially similar terms as those contained in Exhibits C and E.  Exh. A, Droescher Affidavit, at ¶ 17.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that Davis entered into four Independent Contractor Agreements or leased four different trucks from TransAm Leasing, Inc.  Nor do Plaintiffs refute, with specific, admissible evidence, the fact that the Agreements contained substantially similar terms.  Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 53 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 53 as stated.  Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference. Accordingly, SOF 53 is uncontroverted.

**SOF 54:**      Per the Independent Contractor Agreement, Owner Operators have the option to participate in a Maintenance Savings Account to assist in coverage of maintenance expenses:

> At Contractor's discretion, Contractor may fund $0.02 to $0.05 per mile into a voluntary Maintenance Savings Account to cover costs and expenses related to maintenance and repair of the Equipment…PLEASE NOTE THAT THE MAINTENANCE SAVINGS ACCOUNT IS A COMPLETELY VOLUNTARY OPTION FOR CONTRACTOR.  IT IS <u>NOT</u> A MANDATORY MAINTENANCE ESCROW.

Exh. C, Independent Contractor Agreement, at § 1(e) (emphasis in original).

**REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that Owner Operators have the option to participate in a Maintenance Savings Account to assist in coverage of maintenance expenses, nor do Plaintiffs controvert the cited language of the Independent Contractor Agreement.  Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 54 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 54 as stated; i.e., that Owner Operators have the option to participate in a Maintenance Savings Account to assist in coverage of maintenance expenses.  Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference.  Accordingly, SOF 54 is uncontroverted.

**SOF 55:**      Davis initially made the decision not to participate in the Maintenance Savings Account.  He later opted to participate.  This was his choice and not directed or required by TransAm.  Exh. F, Deposition of Charlie Davis, at p. 129:1 – 130:1.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the cited testimony of Mr. Davis.  The remainder of the Plaintiffs' arguments are merely additional facts which are unsupported by the record cited by Plaintiffs.  For example, Plaintiffs cite their own Statement of Facts (Doc. 66, at SOF 16) for the proposition that "Plaintiffs were undoubtedly assessed and required to pay maintenance and repair costs on their trucks at the times and in the amounts determined by Defendant," but the citation only evidences that Plaintiffs were required to invest in their businesses by making all maintenance and repairs to their trucks, and provides no evidence that such maintenance and repairs were "at the times and in the amounts determined by Defendant."  To the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 16 by reference.  Further, Blair's allegations, with no further evidentiary support other than his self-serving testimony, in no way refutes that Davis admitted he initially made the decision not to participate in the Maintenance Savings Account, but later voluntarily opted to participate, as stated in SOF 55.  Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Finally, Plaintiffs' allegation that they were prevented from purchasing their trucks because profits were directed to maintenance payments in amounts in the sole discretion of TransAm and not negotiable by Plaintiffs is unresponsive to SOF 55, and is not supported by the citations provided in

Plaintiffs' response to SOF 55.  Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 55 is uncontroverted.

**SOF 56:**     Owner Operators are free to choose the location of any needed maintenance or repairs for their tractors.  TransAm does not tell Owner Operators where they must go to get any needed maintenance or repairs for their tractors, though they may choose to have the repairs made at TransAm's Olathe or Rockwall facilities.  Exh. B, Deposition of Russ McElliott, at p. 121:14 – 122:22.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not specifically controvert the cited testimony of Mr. McElliott, but instead refer the Court to Plaintiffs' response to SOF 55. Plaintiffs' arguments in SOF 55 are merely additional facts which are unsupported by the record cited by Plaintiffs.  For example, Plaintiffs cite their own Statement of Facts (Doc. 66, at SOF 16) for the proposition that "Plaintiffs were undoubtedly assessed and required to pay maintenance and repair costs on their trucks at the times and in the amounts determined by Defendant," but the citation only evidences that Plaintiffs were required to invest in their businesses by making all maintenance and repairs to their trucks, and provides no evidence that such maintenance and repairs were "at the times and in the amounts determined by Defendant."  To the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 16 by reference.   Further, Blair's allegations with regards to the Maintenance Savings Account in no way refutes or creates any genuine issue of material fact as to the specific facts set forth in SOF 56; i.e., whether Owner

Operators are free to choose the location of any needed maintenance or repairs for their tractors.   Finally, Plaintiffs' allegation that they were prevented from purchasing their trucks because profits were directed to maintenance payments in amounts in the sole discretion of TransAm and not negotiable by Plaintiffs is unresponsive to SOF 56, and is not supported by the citations provided in Plaintiffs' response to SOF 55.   Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Accordingly, SOF 56 is uncontroverted.

**SOF 57:**      Under the Independent Contractor Agreement, Owner Operators are "solely responsible for all fuel taxes, mileage taxes, highway use taxes, road taxes, and all other levies or similar assessments based upon the operation of the Equipment hereunder."  Exh. C, Independent Contractor Agreement, at ¶ 7.   In practice, TransAm does not pay these expenses for Owner Operators it does for Company Drivers.   Rather, if these items were charged by a taxing authority to TransAm, the Company would then deduct the charge from the Owner Operator's Settlement Statement.  Exh. A, Droescher Affidavit, at ¶ 16.

**REPLY:**      Uncontroverted.  Plaintiffs have set forth no specific facts controverting SOF 57 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue.   Moreover, to the extent Plaintiffs rely on speculation and conjecture contained in their affidavits, Plaintiffs' individualized allegations do not apply to the class.   *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.   Accordingly, SOF 57 is uncontroverted.

**SOF 58:**      Owner Operators are also required to provide their own insurance, including physical damage, bobtail/deadhead, and occupational/accident insurance.  Exh. H, Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories, at No. 10; _see_ _also_ Exh. C and E, at Addendum to Independent Contractor Agreement.

> **REPLY:**      Uncontroverted.  Plaintiffs have set forth no specific facts controverting SOF 58 as it is stated, as required by Fed. R. Civ. P. 56.  Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue.  Moreover, to the extent Plaintiffs rely on speculation and conjecture contained in their affidavits, Plaintiffs' individualized allegations do not apply to the class.  _In re FedEx Ground Package Sys., Inc._, 734 F. Supp. 2d at 578-79.  Accordingly, SOF 58 is uncontroverted.

**SOF 59:**      Though this insurance is available through TransAm, Owner Operators are informed they are not required to purchase it through TransAm:  "I understand that I am not required to purchase this, or any item or product from TransAm Trucking, Inc." Exhs. C and E, at the Addendum to Independent Contractor Agreement; Exh. F, Deposition of Charlie Davis, at p. 125:24 – 127:9.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that Owner Operators are informed they are not required to purchase it through TransAm, nor do Plaintiffs controvert the cited language of the addendum to the Independent Contractor Agreement.  Further, to the extent Plaintiffs improperly rely on the PSOF contained in _Plaintiffs' Motion for Partial Summary Judgment_ in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 36 by reference.  Further, the cited testimony of

Davis establishes he signed the addendum to the Independent Contractor Agreement and elected to purchase his insurance through TransAm.  The only "evidence" Plaintiffs cite in support of their controversion of SOF 59 is self-serving testimony from Larry Blair, who admittedly was not permitted to purchase insurance from another source for purposes of this motion only; however, Blair's testimony is incomplete because generally TransAm, as a matter of policy, allows its Owner Operators to purchase insurance from another source so long as the coverage meets TransAm's qualifications as required under the FMCSA and related regulations. *See Defendant's Response to Plaintiffs' Motion for Summary Judgment* (Doc. 72) at Defendant's Statements of Additional Fact ("SOAF") ¶ 96-99.  Blair's testimony is insufficient foundation as to whether *all* Owner Operators must purchase insurance through TransAm.  Moreover, to the extent Plaintiffs rely on speculative testimony and conjecture, Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded, and SOF 59 is uncontroverted.

**SOF 60:**     Owner Operators are also required to provide this insurance for any drivers they employ or pay to drive under their Independent Contractor Agreements with TransAm  *See, e.g.,* Exh. D, Deposition of Larry Blair, at p. 180:3 – 180:7; Exh. F, Deposition of Charlie Davis, at 171:11 – 171:17.

**REPLY:**     Uncontroverted.  Plaintiffs have set forth no specific facts controverting SOF 60 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue.  Moreover, to the extent Plaintiffs rely on

speculation and conjecture contained in their affidavits, Plaintiffs' individualized allegations do not apply to the class. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. Accordingly, SOF 60 is uncontroverted.

**SOF 61:**   Owner Operators may opt to purchase Prepass Plus/scale bypass transponder services through TransAm. The Prepass Authorization specifies that Owner Operators are "not required to purchase this service from TransAm Trucking, Inc." *See* Prepass Authorization, attached as Exhibit N.

> **REPLY:**   Deemed uncontroverted. Plaintiffs do not specifically controvert the cited language of the Prepass Authorization but only state that there is no "admissible evidence" supporting SOF 61. In fact, the Prepass Authorization signed by Davis was attached in support of SOF 61 and is admissible evidence given Davis admitted this was a document he signed on or about June 17, 2009 in the testimony cited by Plaintiffs. Davis admitted in the testimony cited by Plaintiffs that he chose not to read this document. Therefore, Plaintiffs' attempt to "controvert" this fact should be disregarded, and SOF 61 is uncontroverted.

**SOF 62:**   Charlie Davis opted to purchase the Prepass Plus. Exh. N.

> **REPLY:**   Deemed uncontroverted. Plaintiffs argue there is no "admissible evidence" supporting SOF 62. In fact, the Prepass Authorization signed by Davis was attached in support of SOF 62 and is admissible evidence given Davis admitted this was a document he signed on or about June 17, 2009 in the testimony cited by Plaintiffs. Davis admitted in the testimony cited by Plaintiffs that he chose not to read this document. Therefore, Plaintiffs' attempt to "controvert" this fact should be disregarded, and SOF 62 is uncontroverted.

**SOF 63:**     Unlike Owner Operators, Company Drivers are reimbursed for all job-related costs and expenses if a proper receipt is provided.  Exh. H, Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories, at Nos. 13, 19.

> **REPLY:**     Uncontroverted.  Plaintiffs have set forth no specific facts controverting SOF 63 as it is stated, as required by Fed. R. Civ. P. 56.  Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue.  Moreover, to the extent Plaintiffs rely on speculation and conjecture contained in their affidavits, Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Further, Blair's testimony does not controvert the fact as stated given the cited testimony never even mentions how Company Drivers are reimbursed at all.  Therefore the cited testimony is completely non-responsive to SOF 63 and should be disregarded because Plaintiffs have failed to respond in accordance with Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 63 is uncontroverted.

**Ability to Hire Drivers**

**SOF 64:**     Owner Operators do not have to personally perform services for TransAm under the terms of their Independent Contractor Agreements.  Owner Operators may hire their own employees or contractors to drive the equipment they lease to TransAm under the Independent Contractor Agreement.  Exh. F, Deposition of Charlie Davis, at p. 146:13 – 146:19; Exh. D, Deposition of Larry Blair, at p. 148:24 – 149:15; Exh. C, Independent Contract Agreement, at § 2; Exh. A, Droescher Affidavit, at ¶ 10.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that Owner Operators do not have to personally perform the services but may

hire their own employees or contractors to drive the equipment they lease to TransAm under the Independent Contractor Agreement as required by Fed. R. Civ. P. 56.  As noted in the evidence cited by TransAm in SOF 64, the Independent Contractor Agreement provides, and both named Plaintiffs admit, they had the right to and did hire personnel to drive additional trucks for TransAm.  Plaintiffs' argument in response to SOF 64 merely states additional "facts" which are misleading, unsupported by the record, and improperly cited pursuant to Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  The Federal Motor Carrier Safety Administration requires TransAm to ensure that all drivers operating under TransAm's motor carrier number, including any employees or personnel of Owner Operators, are properly "qualified" under the FMCSA and related regulations. *See, e.g.*, 49 C.F.R. §§ 382.101 *et seq.*, § 391.1 *et seq*.  However, it is undisputed that Owner Operators are responsible for selecting, hiring, firing, supervising, directing, training, and setting the wages, hours, and working conditions of their employee drivers. *See Memorandum in Support of Motion for Summary Judgment* (Doc. 65) at SOF ¶¶ 64-81.  Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 28 by reference.  Accordingly, SOF 64 is uncontroverted.

**SOF 65:**    Per their Agreement, any persons hired or paid by Owner Operators are considered employees or agents of the Owner Operator, and not TransAm:

> All personnel furnished or used by Contractor to perform the personnel services hereunder, including drivers, driver's helpers and laborers, are and shall be at all times the employees or agents of Contractor and not the employees or agents of Carrier.

Exh. C, at § 2(c).

**REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that the Independent Contractor Agreement states that any persons hired or paid by Owner Operators are considered employees or agents of the Owner Operator, nor do Plaintiffs controvert the cited language of the Independent Contractor Agreement. Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 65 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 65 as stated; i.e., that any persons hired or paid by Owner Operators are considered employees or agents of the Owner Operator, and not TransAm pursuant to the express terms of the Independent Contractor Agreement. Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference.  Accordingly, SOF 65 is uncontroverted.

**SOF 66:**      TransAm's Owner Operators are solely responsible for paying and providing benefits to any persons who drive on their behalf for TransAm:

> Contractor shall be solely and totally responsible for payment of their wages, employment benefits, including, but not limited to workers compensation benefits, and all other amounts required by government agencies to be paid by employers on behalf of or to employees.

Exh. C, at § 2(c).

**REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that Owner Operators are solely responsible for paying and providing benefits to any persons who drive on their behalf for TransAm, nor do Plaintiffs controvert the

cited language of the Independent Contractor Agreement.  Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 66 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 66 as stated; i.e., that Owner Operators are solely responsible for paying and providing benefits to any persons who drive on their behalf for TransAm pursuant to the express terms of the Independent Contractor Agreement.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference.  Accordingly, SOF 66 is uncontroverted.

**SOF 67:**      Pursuant to the Independent Contractor Agreement, TransAm does not control or supervise any persons hired or paid by its Owner Operators:  "Carrier shall neither have nor exercise control, direction or supervision over the personnel furnished or used by Contractor to perform the services hereunder." Exh. C, at § 2(c).

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that TransAm does not control or supervise any persons hired or paid by its Owner Operators, nor do Plaintiffs controvert the cited language of the Independent Contractor Agreement.  Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 67 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 67 as stated; i.e., that the Independent Contractor Agreement provides that TransAm does not control or supervise

any persons hired or paid by its Owner Operators.  Indeed, Plaintiffs only cite generally

to a number of facts but do not specifically attempt to controvert the fact as stated.

Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs'*

*Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and

D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by

reference.  Accordingly, SOF 67 is uncontroverted.

**SOF 68:**      The Independent Contractor Agreement states that "Contractor shall be solely and

totally responsible for selecting, hiring, firing, supervising, directing, training, and setting wages,

hours and working conditions for its employees." Exh. C, at § 2(c).

>       **REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the cited
>
>       language of the Independent Contractor Agreement.   Further, Plaintiffs' argument that
>
>       the Independent Contractor Agreements do not reflect the economic realities of the
>
>       relationship between Plaintiffs and TransAm is not responsive to SOF 68 as stated, and
>
>       none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF
>
>       68 as stated; i.e., that the Independent Contractor Agreement states that Contractor shall
>
>       be solely and totally responsible for selecting, hiring, firing, supervising, directing,
>
>       training, and setting wages, hours and working conditions for its employees. Indeed,
>
>       Plaintiffs only cite generally to a number of facts but do not specifically attempt to
>
>       controvert the fact as stated.   Further, to the extent Plaintiffs improperly rely on the
>
>       PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention
>
>       of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its
>
>       responses to PSOF ¶ 26 - 38 by reference.  Accordingly, SOF 68 is uncontroverted.

**SOF 69:**    Based on FMCSA regulations, persons hired or paid by TransAm's Owner Operators to provide services for TransAm must complete DOT and FMCSA-required qualification and testing. *See, e.g.*, 49 C.F.R. §§ 390.1 *et seq*.; Exh. C, at § 2(b); Exh. F, Deposition of Charlie Davis, at p. 164:12 – 165:13; Exh. D, Deposition of Larry Blair, at p. 154:20 – 155:20.

> **REPLY:**    Uncontroverted.  Plaintiffs have set forth no specific facts controverting SOF 69 as it is stated, as required by Fed. R. Civ. P. 56.  The fact stated is supported by both the law and Plaintiffs' own testimony.  Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue.   In fact, Plaintiffs have cited <u>no</u> evidence to controvert this fact.   Therefore Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Accordingly, SOF 69 is uncontroverted.

**SOF 70:**    In fact, both Larry Blair and Charlie Davis hired and paid other people to drive on their behalf for TransAm. Exh. F, Deposition of Charlie Davis, at p. 162:4 – 5; Exh. D, Deposition of Larry Blair, at p. 151:6 – 151:17.

> **REPLY:**    Uncontroverted.  Plaintiffs have set forth no specific facts controverting SOF 70 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). The fact as stated is supported by both the law and Plaintiffs' own testimony.  Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue.  Accordingly, SOF 70 is uncontroverted.

**SOF 71:**     Per TransAm's policy, any time an Owner Operator hired another person to perform the services provided for in the Independent Contractor Agreement, the Owner Operator had to complete an Independent Contractor Personnel Form.  Per that policy, for each of the persons hired or paid by the named Plaintiffs to provide services for TransAm, the named Plaintiffs signed "Independent Contractor Personnel" forms, which stated:

> Pursuant to that certain Independent Contractor Agreement between the undersigned independent contractor ("Contractor") and TransAm Trucking, Inc. (TransAm"), the Contractor leases motor vehicle equipment to TransAm and utilizes the services of the undersigned personnel ("Personnel").  The undersigned represent and warrant to TransAm that the undersigned Personnel is an independent contractor of Contractor, and not an employee of Contractor.

*See* Independent Contractor Personnel forms, attached as Exhibit O; Exh. A, Affidavit of Murray Droescher, at ¶ 10.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that any time an Owner Operator hired another person to perform the services provided for in the Independent Contractor Agreement, the Owner Operator had to complete an Independent Contractor Personnel Form, nor do Plaintiffs controvert the cited language of the Independent Contractor Personnel Form.  In fact, the fact that Blair and Davis both hired drivers and completed an Independent Contractor Personnel Form for each driver is supported both by the forms submitted as Exhibit O to Defendant's Motion for Summary Judgment (Doc. 65), and the Plaintiffs' undisputed testimony (*see, e.g.,* SOF ¶ 70).  Further, Plaintiffs' argument that the Independent Contractor Personnel Forms do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 71 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 71 as stated; i.e., that

Owner Operators had to complete an Independent Contractor Personnel Form for all persons whom they hired as personnel.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶ 26 - 38 by reference.  Accordingly, SOF 71 is uncontroverted.

**SOF 72:**     Larry Blair employed five persons to drive tractors he leased to TransAm Trucking, Inc., including Toby Hartley, John Shirey, Matt Dunivan, Daniel Wilbanks, and Scott Ross. Exh. O, at p. 1 – 5.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated and only argue that the statement is misleading as to the term "employed."  Nonetheless, it is uncontroverted, both by the Independent Contractor Personnel Forms for each of the five named drivers submitted as Exhibit O to Defendant's Motion for Summary Judgment (Doc. 65), and by Blair's undisputed testimony, that Toby Hartley, John Shirey, Matt Dunivan, Daniel Wilbanks, and Scott Ross were personnel of Blair and were paid by Blair.  *See* SOF ¶¶ 73-75.  To the extent Plaintiffs do not admit the fact exactly as stated, Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 72 is uncontroverted.

**SOF 73:**     Larry Blair admits he hired drivers on his own terms and TransAm neither instructed him to hire them nor dictated how they were paid.  Exh. D, Deposition of Larry Blair, at p. 166:22 – 172:2, 179:3 – 179:20.

**REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated and only argue that the statement is misleading as to the terms "hired" and "paid." Nonetheless, Blair's cited testimony is that Toby Hartley, John Shirey, Matt Dunivan, Daniel Wilbanks, and Scott Ross were personnel of Blair who were hired and paid by Blair.   To the extent Plaintiffs do not admit the fact exactly as stated, Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Accordingly, SOF 73 is uncontroverted.

**SOF 74:**      Blair issued each of his drivers 1099s at the end of the year.  Exh. D, Deposition of Larry Blair, at p. 171:25 – 172:14.

**REPLY:**      Uncontroverted.

**SOF 75:**      Blair paid his drivers all of the profit from the tractor they drove.  TransAm did not dictate how he paid his drivers.  Exh. D, Deposition of Larry Blair, at p. 167:20 – 169:17.

**REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated and only argue that the statement is misleading.  In fact, it is Plaintiffs' attempt to controvert this fact that is misleading.  For example, Mr. Blair's cited testimony specifically states, in part:

Q:      How much were you going to pay [Wilbanks] to drive for you?

A:       Basically whatever the truck made.  What the truck profit, that's what my drivers got.

…

Q:      Did you – did TransAm tell you what amount of pay that you should give

to Mr. Wilbanks?

A:      No, ma'am.

Q:      Was that an agreement that you and Mr. Wilbanks had between each

other?

A:      Yes, ma'am.

Doc. 65, Exh. D, Deposition of Larry Blair, at p. 167:20 – 167:24, 169:9 – 169:17.

Plaintiffs have failed to controvert SOF 75 or the testimony cited in support thereof with

specific evidence pursuant to Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).

Further, to the extent Plaintiffs do not admit the fact exactly as stated, Plaintiffs'

"controversion" of this fact is argument unsupported by any specific facts in the record as

required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 75 is

uncontroverted.

**SOF 76:**      Blair instructed his drivers that they were not allowed to refuse any loads because

he did not want his trucks to sit idle:  "I told him nobody can refuse a load because I'm not going

to let the truck sit two to three, four days…"  Exh. D, Deposition of Larry Blair, at p. 170:22 –

171:6.

**REPLY:**   Uncontroverted.  Plaintiffs have set forth no specific facts controverting SOF 76

and the accurate testimony cited, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule

56.1(b).  Plaintiffs only claim this fact is misleading, and argue "Blair explained he did not

want drivers to refuse loads because if they did that, Defendant would penalize such drivers

by making their truck sit idle for two, three, four days at a time."  But the testimony cited by

Plaintiffs in support of this argument says nothing about Blair instructing his drivers

regarding refusal of loads at all.   Therefore, Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue pursuant to Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 34 by reference.   Accordingly, SOF 76 is uncontroverted.

**SOF 77:**      TransAm did not pay Blair's drivers directly; rather, TransAm provided settlement statements and payment to Blair and Blair was responsible for paying his drivers.   *See* Settlement Statement attached as Exhibit P; Exh. D, Deposition of Larry Blair, at p. 170:8 – 170:2[0], 193:6 – 194:18

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not controvert the fact as stated and only argue that the statement is misleading.  In fact, it is Plaintiffs' attempt to controvert this fact that is misleading.   Mr. Blair's cited testimony specifically states that he received settlement statements from TransAm for all of the trucks he leased, he paid his drivers directly, his drivers knew he would pay them directly, and his drivers knew they would not be paid by TransAm.  The testimony cited by Plaintiffs does not controvert this fact, and in fact is consistent with the fact as stated.  Therefore, Plaintiffs' have failed to create a genuine issue of material fact by refuting SOF 77 with evidence pursuant to Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Accordingly, SOF 77 is uncontroverted.

**SOF 78:**      Charlie Davis employed one driver, Anthony Terry.  Exh. O, at p. 6.

**REPLY:** Deemed uncontroverted. Plaintiffs do not controvert the fact as stated and only argue that the statement is misleading as to the term "employed." Nonetheless, it is uncontroverted, both by the Independent Contractor Personnel Form submitted as Exhibit O to Defendant's Motion for Summary Judgment (Doc. 65), and by Davis' undisputed testimony, that Anthony Terry was the personnel of Davis hired by him to drive an additional truck, and Mr. Terry was paid by Davis. *See* SOF ¶¶ 79-81. To the extent Plaintiffs do not admit the fact exactly as stated, Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Accordingly, SOF 78 is uncontroverted.

**SOF 79:** Davis met Anthony Terry through a friend. Davis admits he hired Mr. Terry on his own terms and TransAm neither instructed him to hire Mr. Terry nor dictated how Mr. Terry should be paid. Exh. F, Deposition of Charlie Davis, at p. 170:15 – 172:21.

**REPLY:** Deemed uncontroverted. Plaintiffs do not specifically controvert the fact as stated with any specific evidence to the contrary pursuant to Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Nonetheless, Davis' cited testimony is that he hired Anthony Terry after they were introduced through a friend, Terry was paid by Davis, and TransAm did not tell Davis how much to pay Terry. To the extent Plaintiffs do not admit the fact exactly as stated and improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment*, Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and therefore must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local

Rule 56.1(b), and TransAm incorporates its response to PSOF ¶ 28 by reference. Accordingly, SOF 79 is uncontroverted.

**SOF 80:**    Davis terminated Terry because he had two accidents; TransAm did not dictate that Mr. Terry be fired.  Exh. F, Deposition of Charlie Davis, at p. 180:24 – 182:24.

> **REPLY:**    Deemed uncontroverted.  Plaintiffs state they controvert SOF 80 "in part" but fail to provide testimony in support of this controversion.  Although the testimony cited by Plaintiffs indeed indicates Mr. Davis thought TransAm would fire Mr. Terry, this is misleading in view of the entirety of the testimony cited by Defendant, because Davis clarifies that TransAm actually never told him such a thing and confirms he made the termination decision independently:

> Q:    …So just so I'm clear, you didn't have any conversation with anyone at TransAm where they indicated to you that you needed to terminate Mr. Terry, correct?

> A:    Correct.

> Q:    You made that decision independently that you did not want Mr. Terry to continue to drive your vehicle for you; is that true?

> A:    Yes.

> Doc. 65, Exh. F, Deposition of Charlie Davis, at p. 182:16 – 24.   Accordingly, SOF 80 is uncontroverted.

**SOF 81:**    TransAm did not pay Mr. Terry directly; rather, TransAm provided settlement statements and payment to Davis, and Davis agreed to pay Mr. Terry 30 cents per mile.  *See* Settlement Statement attached as Exhibit Q; Exh. F, Deposition of Charlie Davis, at p. 169:2 – 170:11, 175:5 – 176:11.

> **REPLY:**    Uncontroverted.

**Right to Accept or Decline Loads**

**SOF 82:**    At TransAm, loads are assigned using a software program called MicroMap. Exh. B, Deposition of Russ McElliott, at p. 32:20 – 35:16; Exh. H, Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories, at No. 20.

> **REPLY:**    Deemed uncontroverted.  Plaintiffs admit SOF 82 is uncontroverted and only argue that the statement is immaterial.  To the extent Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to how loads are assigned through MicroMap, the argument is unresponsive to SOF 82 as stated. Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 31 by reference. Accordingly, SOF 82 is uncontroverted.

**SOF 83:**    In MicroMap, there are approximately 150 weighted categories that determine which tractor will be assigned to each load.  Exh. B, Deposition of Russ McElliott, at p. 32:25 – 33:6.

> **REPLY:**    Deemed uncontroverted.  Plaintiffs admit SOF 83 is uncontroverted and only argue that the statement is immaterial.  To the extent Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to how loads are assigned through MicroMap, the argument is unresponsive to SOF 83 as stated. Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its response to PSOF ¶ 31 by reference. Accordingly, SOF 83 is uncontroverted.

**SOF 84:**     MicroMap is weighted to favor assignment of loads to Owner Operators so that they are assigned loads more quickly than Company Drivers.   Exh. B, Deposition of Russ McElliott, at p. 32:20 – 35:16.

> **REPLY:**     Uncontroverted.

**SOF 85:**     The longer a driver waits for a load, the more MicroMap is weighted to favor assignment of a load to that particular truck.  Exh. B, Deposition of Russ McElliott, at p. 96:16 – 97:10.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs appear to controvert SOF 85 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to how loads are assigned through MicroMap, and the testimony cited by Plaintiffs includes no refutation as to how MicroMap is weighted.  Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 85 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. TransAm incorporates its response to PSOF ¶ 34 by reference.  Accordingly, SOF 85 is uncontroverted.

**SOF 86:**     Load assignments originate from MicroMap to a TransAm employee called a "planner," who then assigns the load to a tractor based on MicroMap's instruction.  A driver manager then sends that load assignment to a tractor via the truck's satellite communication

system once an empty or availability call is received.  Exh. B, Deposition of Russ McElliott, at p. 152:10 – 152:17.

**REPLY:**      Uncontroverted.

**SOF 87:**      If an Owner Operator does not want to accept a load, he is only required to notify TransAm over his satellite communication device that he is declining the load.  Owner Operators are not required to accept any loads, and can reject loads whenever they want to. Exh. A, Droescher Affidavit, at ¶ 18.

**REPLY:**      Deemed uncontroverted.  Plaintiffs appear to controvert SOF 87 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to how loads are declined via satellite communication device. Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 87 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.    TransAm incorporates its response to PSOF ¶ 34 by reference. Accordingly, SOF 87 is uncontroverted.

**SOF 88:**      Driver managers do not have access to driver qualification files where load rejection messages are retained. Exh. B, Deposition of Russ McElliott, at p. 154:1 – 154:16.

**REPLY:**      Deemed uncontroverted.  Plaintiffs appear to controvert SOF 88 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the

record pertaining to Driver Managers' access to driver qualification files. Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 88 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. TransAm incorporates its response to PSOF ¶ 34 by reference. Accordingly, SOF 88 is uncontroverted.

**SOF 89:** Drivers are unable to contact or communicate with planners directly. Exh. B, Deposition of Russ McElliott, at p. 153:3 – 153:8; Exh. F, Deposition of Charlie Davis, at p. 206:23 – 206:25.

**REPLY:** Deemed uncontroverted. Plaintiffs appear to controvert SOF 89 in part, though they are not specific as to what part of this fact is uncontroverted. Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to whether drivers are able to contact or communicate with planners directly. Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 89 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. TransAm incorporates its response to PSOF ¶ 34 by reference. Accordingly, SOF 89 is uncontroverted.

**SOF 90:**     Driver managers cannot override a planner's load assignment and do not have access to view what loads are available at any given time.  Exh. B, Deposition of Russ McElliott, at p. 152:18 – 153:2.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs appear to controvert SOF 90 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to Driver Managers' ability override a planner's load assignment or view what loads are available at any given time.  Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 90 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  TransAm incorporates its response to PSOF ¶ 34 by reference.  Accordingly, SOF 90 is uncontroverted.

**SOF 91:**     In contrast to Owner Operators, Company Drivers are required to drive any load to which they are assigned.  Exh. B, Deposition of Russ McElliott, at p. 25:12 – 26:5; Exh. D, Deposition of Larry Blair, at p. 242:14 – 18.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs appear to controvert SOF 91 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to Company Drivers' requirement to drive all loads to which they are assigned.  Therefore Plaintiffs have failed to controvert the fact as stated, the argument is

unresponsive to SOF 91 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. TransAm incorporates its response to PSOF ¶ 34 by reference. Accordingly, SOF 91 is uncontroverted.

**SOF 92:**    Owner Operators can "choose any work assignment they like and refuse any work they would like." There are no restrictions on what loads they can take or what loads they can refuse, with no penalty for refusal. Exh. B, Deposition of Russ McElliott, at p. 96:7 – 97:2.

>    **REPLY:**    Deemed uncontroverted. Plaintiffs appear to controvert SOF 92 in part, though they are not specific as to what part of this fact is uncontroverted. Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to Owner Operators' ability to accept and decline work. Plaintiffs only cite Blair's speculative testimony, which establishes he felt he could not reject a load without penalty. However, Blair admits in his testimony that at the time he considered refusing a load, he wanted to haul other available loads for another motor carrier in direct contravention to the FMCSA, which provides a truck leased to a motor carrier such as TransAm can only be driven for that motor carrier. *See*, *e.g.,* 49 C.F.R.§ 376.12 *et seq.* and Defendant's Response to Plaintiffs' Motion for Summary Judgment, Doc. 72, at SOAF ¶¶ 80, 37-38. Blair admits he does not have any firsthand knowledge as to what the customer requirements were in any given geographic area for purposes of planning trips, and whether there were any loads available in his area from TransAm at the time he considered refusing a load. Doc. 72, SOAF at ¶ 80. Therefore, Blair's unsupported

belief that he could not reject a load without a penalty cannot be used to create a genuine issue of material fact. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. Likewise, Davis admits he does not know the specific factors considered by trip planners when assigning loads to any particular truck, and he was not terminated or disciplined for declining loads. Doc. 72, SOAF at ¶ 78. Davis also admits he regularly had to wait one day for a load even when he had not rejected a load, and occasionally had to wait two days even when he had not rejected a load. Doc. 72, SOAF at ¶ 78. In fact, this statement of fact is contrary to both the terms of the Independent Contractor Agreement and in actual practice. It is uncontroverted that TransAm's Owner Operators regularly reject loads: though TransAm previously did not retain load rejection messages in its driver files, it began keeping such information once this lawsuit was filed in order to document the fact that Owner Operators regularly reject load assignments from TransAm. Those rejection messages were produced in the litigation and prove there have been over 6,000 load rejections by Owner Operators since 2009. Doc. 72, SOAF at ¶ 74. Therefore Plaintiffs have failed to controvert the fact as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). TransAm incorporates its response to PSOF ¶ 34 by reference. Accordingly, SOF 92 is uncontroverted.

**SOF 93:**    Independent contractors can specify their preferences for loads and/or load destinations, though they are not guaranteed any particular loads or load destinations. Exh. H, Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories, at No. 20.

**REPLY:**    Deemed uncontroverted. Plaintiffs appear to controvert SOF 93 in part, though they are not specific as to what part of this fact is uncontroverted. Nonetheless,

Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to whether independent contractors can specify preferences for loads though they are not guaranteed loads or load destinations.   Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 93 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class.   *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.   TransAm incorporates its responses to PSOF ¶¶ 30-31, 34 by reference.   Accordingly, SOF 93 is uncontroverted.

**SOF 94:**     The Independent Contractor Agreement states:  "Contractor may refuse to haul any load offered to Contractor by Carrier, for any reason, with no penalty for refusal."   Exh. C, at § 2(a).

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact that the Independent Contractor Agreement states the cited language.  Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 94 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 94 as stated; i.e., that the Agreement says what it says.   The document speaks for itself, and the language of the Independent Contractor Agreement is undisputed.  Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Further, Plaintiffs' unsupported and conjectural opinions are

individualized allegations that do not apply to the class. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. TransAm incorporates its response to PSOF ¶ 34 by reference. Accordingly, SOF 94 is uncontroverted.

**SOF 95:**    Further, the Independent Contractor Agreement states "Contractor shall have the right to reject any load assignment…" Exh. C, at § 20.

> **REPLY:**    Deemed uncontroverted. Plaintiffs do not specifically controvert the fact that the Independent Contractor Agreement contains the cited language. Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 95 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 95 as stated; i.e., that the Agreement says what it says. The document speaks for itself, and the language of the Independent Contractor Agreement is undisputed. Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, Plaintiffs' unsupported and conjectural opinions are individualized allegations that do not apply to the class. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. TransAm incorporates its response to PSOF ¶ 34 by reference. . Accordingly, SOF 95 is uncontroverted.

**SOF 96:**    Though TransAm previously did not retain load rejection messages in its driver files, it began keeping such information once this lawsuit was filed in order to document the fact that Owner Operators regularly reject load assignments from TransAm. Those rejection messages were produced in the litigation and prove there have been over 6,000 load rejections

since 2009. Exh. B, Deposition of Russ McElliott, at p. 97:14 – 98:9; Exh. A, Droescher Affidavit, at ¶ 19.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact
>
> that TransAm has produced records of thousands of load rejections since 2009 as part of
>
> this litigation.      Therefore, Plaintiffs' argument is not responsive to SOF 96 as stated,
>
> and none of the "facts" cited by Plaintiffs in support of this argument specifically refute
>
> SOF 96 as stated; i.e., that Owner Operators other than Blair and Davis regularly reject
>
> load assignments and TransAm produced proof of those load rejection messages in this
>
> litigation.  Accordingly, Plaintiffs' attempt to "controvert" this fact must be disregarded
>
> for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan.
>
> Local Rule 56.1(b).  TransAm incorporates its responses to PSOF ¶¶ 12, 34 by reference.
>
> Accordingly, SOF 96 is uncontroverted.

**SOF 97:**      Davis admits he rejected load assignments.  Exh. F, Deposition of Charlie Davis, at p. 49:25 – 50:11.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs admit SOF 97 is uncontroverted and
>
> only argue it is immaterial.  Further, the testimony cited by Plaintiffs is an additional fact
>
> which has not been supported in accordance with D. Kan. Local Rule 56.1(b) and
>
> therefore should be disregarded.

**SOF 98:**      Charlie Davis also made his truck unavailable in order to take extended home time on a number of days.  _See_ Movement Display Records for Charlie Davis, attached as Exhibit R; Exh. A, Droescher Affidavit, at ¶ 20.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs' response to SOF 98 contains only
>
> argument and no specific evidence that refutes that Davis made his truck unavailable for

extended home time, as documented by the business records for TransAm Trucking that were produced in this litigation and attached as Exhibit R to Defendant's Motion (Doc. 65).  Plaintiffs have set forth no specific facts controverting SOF 98 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), therefore Plaintiffs' response is merely argument and commentary which should be disregarded by the Court because it does not create a genuine issue.  Further, the testimony cited by Plaintiffs is misleading and merely constitutes an additional fact that is entirely consistent with SOF 98, because while it is true Davis admits he rejected loads three times, he also made his truck unavailable on a number of occasions, which is entirely a different situation from rejecting a load.  Accordingly, SOF 98 is uncontroverted.

**SOF 99:**     The home time requested by Davis well exceeds the home time allowed to Company Drivers of only four days per month.  Exh. A, Droescher Affidavit, at ¶ 20.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs' response to SOF 99 contains only argument and no specific evidence that refutes that the home time requested by Davis well exceeds the time allowed Company Drivers of only four days per month, as documented by the business records for TransAm Trucking that were produced in this litigation and attached as Exhibit R to Defendant's Motion.  Plaintiffs have set forth no specific facts controverting SOF 99 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), therefore Plaintiffs' response is merely argument and commentary which should be disregarded by the Court because it does not create a genuine issue.  Further, to the extent Plaintiffs allege Davis was "penalized," this is opinion and conjecture, and Plaintiffs' individualized allegations do not apply to the

class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Accordingly, SOF 99 is uncontroverted.

**SOF 100:**   Davis admits he does not know the specific factors considered by trip planners when assigning loads to any particular truck, and he was not terminated or disciplined for declining loads. Davis also admits he regularly had to wait one day for a load even when he had not rejected a load, and occasionally had to wait two days even when he had not rejected a load. Exh. F, Deposition of Charlie Davis, at p. 58:14 – 59:11, 64:7 – 70:8.

> **REPLY:**   Deemed uncontroverted.   Plaintiffs fail to demonstrate a genuine controversy because they have failed to refute Davis' direct testimony, except by pointing out additional facts contained in Davis' testimony which have not been properly set forth as required by D. Kan. Local Rule 56.1(d).   In fact, the testimony cited in SOF 100 demonstrates that Davis had no foundation for his belief he would be penalized for declining a load as cited by Plaintiffs, and does not alter the undisputed fact that Davis did indeed refuse to drive loads on at least three occasions, in addition to the many instances where Davis made his truck unavailable.  SOF 98 – 99.  Further, to the extent Plaintiffs allege they were "penalized," this is opinion and conjecture, and Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Accordingly, SOF 100 is uncontroverted.

**SOF 101:**   Larry Blair admits he knew other Owner Operators who refused loads.  Exh. D, Deposition of Larry Blair, at p. 133:4 – 8.

> **REPLY:**   Uncontroverted.  Plaintiffs admit SOF 101 is uncontroverted and only argue additional facts which do not controvert SOF 101 as stated.  Moreover, to the extent Plaintiffs' allege there was any "retaliation" for refusing loads, this is unsupported

by evidence in the record (see SOF ¶¶ 82-103), and Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.   Further, to the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its response to PSOF ¶ 34 by reference.  Accordingly, SOF 101 is uncontroverted.

**SOF 102:**     Larry Blair also made his truck(s) unavailable to accept loads on a number of days. *See* Movement Display Records for Larry Blair, attached as Exhibit S; Exh. A, Droescher Affidavit, at ¶ 20.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs' response to SOF 102 contains only legal argument and no specific evidence that refutes that Blair made his truck unavailable for extended home time, as properly supported and documented by the business records for TransAm Trucking that were produced in this litigation and attached as Exhibit S to Defendant's Motion (Doc. 65).  Plaintiffs have set forth no specific facts controverting SOF 102 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), therefore Plaintiffs' response is merely argument and commentary which should be disregarded by the Court because it does not create a genuine issue.  Accordingly, SOF 102 is uncontroverted.

**SOF 103:**     The home time requested by Blair well exceeds the home time allowed to Company Drivers of only four days per month.  Exh. A, Droescher Affidavit, at ¶ 20.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs' response to SOF 103 contains only argument and no specific evidence that refutes that the home time requested by Blair well exceeds the time allowed Company Drivers of only four days per month, as documented by the business records for TransAm Trucking that were produced in this litigation and

attached as Exhibit S to Defendant's Motion.  Plaintiffs have set forth no specific facts

controverting SOF 103 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local

Rule 56.1(b), therefore Plaintiffs' response is merely argument and commentary which

should be disregarded by the Court because it does not create a genuine issue.  Further, to

the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for

Partial Summary Judgment*, TransAm incorporates its response to PSOF ¶ 34 by

reference.  Moreover, to the extent Plaintiffs' allege there was any "retaliation" for

refusing loads, this is unsupported by evidence in the record (see SOF ¶¶ 82-103), and

Plaintiffs' individualized allegations do not apply to the class.  *In re FedEx Ground

Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Accordingly, SOF 103 is uncontroverted.

**Right to Select Routes**

**SOF 104:**     Under the terms of their Independent Contractor Agreement, Owner Operators do

not have to take the routes selected by TransAm – they can drive whatever route they choose:

> Contractor shall have the right to reject any load assignment and further
> has the right to choose the route of travel of the Equipment and at what
> points Contractor's drivers shall take rest stops and refuel the equipment,
> all of which shall be the sole obligation and responsibility of Contractor.

Exh. C, at § 20.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact
>
> as stated that the Independent Contractor Agreement allows Owner Operators to select
>
> their own routes.   Further, Plaintiffs' argument that the Independent Contractor
>
> Agreements do not reflect the economic realities of the relationship between Plaintiffs
>
> and TransAm is not responsive to SOF 104 as stated, and none of the "facts" cited by
>
> Plaintiffs in support of this argument specifically refute SOF 104 as stated; i.e., that
>
> Owner Operators do not have to take the routes selected by TransAm.  Even in Plaintiffs'

response to SOF 104, Plaintiffs acknowledge that Owner Operators are provided with "advised" (i.e., not mandatory) routes of travel. Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 29-31 by reference. Accordingly, SOF 104 is uncontroverted.

**SOF 105:**   Charlie Davis admits he had the right to, and did, choose his own routes while driving for TransAm because he did not believe the routes recommended by his Fuel Optimizer were as efficient as the routes he chose himself.  Exh. F, Deposition of Charlie Davis, at p. 138:9 – 139:11.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs do not specifically controvert the fact as stated that Charlie Davis admitted he regularly chose his own routes.  Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 105 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 105 as stated.  Indeed, the fact that one of the named Plaintiffs admits he regularly chose his own routes because he believed his routes were more efficient is contrary to Plaintiffs' unsupported arguments in response to SOF 105. Therefore, Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Moreover, to the extent Plaintiffs' imply there was any "punishment" for driving outside of the recommended route, this is unsupported by evidence in the record

(see SOF ¶¶ 104-108), and Plaintiffs' unsupported individualized allegations do not apply to the class. *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79. Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 29-31 by reference.  Accordingly, SOF 105 is uncontroverted.

**SOF 106:**    Larry Blair also admits he could choose his own routes while driving for TransAm, but chose not to do so. Exh. D, Deposition of Larry Blair, at p. 101:24 – 102:14, 225:10 – 225:13.

> **REPLY:**    Deemed uncontroverted.  Plaintiffs do not directly controvert Blair's cited testimony.  Instead, Plaintiffs simply add additional facts pertaining to whether TransAm would compensate a driver if the driver chose to drive additional miles to get to a particular destination.   This argument is irrelevant to whether Blair had the right to choose – and did choose – to take his own routes of travel while driving for TransAm.  Further, Plaintiffs' "controversion" of this fact is argument unsupported by any specific facts in the record and must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 106 is uncontroverted.

**SOF 107:**    TransAm's Owner Operators regularly determine their own routes and do not always follow the recommended routes suggested by TransAm.  Exh. A, Droescher Affidavit, at ¶ 29.

> **REPLY:**    Deemed uncontroverted.  Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to whether Owner Operators regularly determine their own routes – a fact which is supported not only by Droescher's

sworn affidavit, but by the testimony of the named Plaintiffs Blair and Davis who admitted they regularly chose their own routes.  See SOF ¶¶ 105 – 106.  Plaintiffs admit in their response to SOF 107 that Owner Operators are provided "advised" routes and are "encouraged" to follow the routes, but do not provide any evidence refuting that Owner Operators in fact determine their own routes, nor any evidence that TransAm requires drivers to follow a specific route.  Moreover, Plaintiffs' argument ignores that only those Owner Operators who elect to purchase TransAm's fuel solution program receive any advised route for TransAm; in other words, some Owner Operators do not even receive a recommended route.  *See* Doc. 72, SOAF ¶ 61.  Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 107 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Moreover, to the extent Plaintiffs' imply there was any "punishment" for driving outside of the recommended route, this is unsupported by evidence in the record (see SOF ¶¶ 104-108), and Plaintiffs' unsupported individualized allegations do not apply to the class.  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 29-31 by reference.  Accordingly, SOF 107 is uncontroverted.

**SOF 108:**     In contrast to Owner Operators, Company Drivers must take the routes dictated by TransAm and may be disciplined for driving out-of-route.  Exh. D, Deposition of Larry Blair, at p. 58:22 – 59:24.

**REPLY:**      Deemed uncontroverted.  Plaintiffs appear to controvert SOF 108 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to Company Drivers' requirement to drive the route to which they are assigned by TransAm, subject to discipline for driving out-of-route.  Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 108 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 108 is uncontroverted.

## Right to Select Method and Location of Fuel Purchases

**SOF 109:**     Owner Operators have the right to choose how they pay for fuel.  According to the Independent Contractor Agreement, the "Contractor is <u>not</u> required to use the Comdata card or TCH card to purchase fuel."  Exh. C, §1(f).

**REPLY:**      Deemed uncontroverted.  Plaintiffs only controvert this fact in part, but do not specifically controvert the fact as stated that Owner Operators have the right to choose how they pay for fuel, nor do Plaintiffs controvert the cited language of the Independent Contractor Agreement.  Further, Plaintiffs' argument that the Independent Contractor Agreements do not reflect the economic realities of the relationship between Plaintiffs and TransAm is not responsive to SOF 109 as stated, and none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 109 as stated; i.e., that Owner Operators do not have to use a Comdata or TCH card to purchase fuel.  Therefore, Plaintiffs have provided no evidence that controverts or refutes SOF 109, and Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to

comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). In fact, none of the citations provided by Plaintiffs address the issue of whether Plaintiffs were required to use the Comdata or TCH card to purchase fuel at all.   Finally, the testimony of Davis cited by Plaintiffs is misleading and taken out of context.   Though Davis did state he was "told he wasn't getting the discount…" he clarified he did not actually know whether he received a fuel discount when driving his own route and had no documents indicating he did not receive the discount.   Doc. 65, Exh. F, Deposition of Charlie Davis, at p. 158: 18 – 161:7.   Moreover, to the extent Plaintiffs' imply there was any "punishment" for driving outside of the recommended route, this is unsupported by evidence in the record (see SOF ¶¶ 104-108), and Plaintiffs' unsupported individualized allegations do not apply to the class.   *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.   Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶¶ 29-31 by reference.   Accordingly, SOF 109 is uncontroverted.

**SOF 110:**   However, Owner Operators can take advantage of discounts negotiated by TransAm with fuel suppliers by using a TCH card at any fuel stop within TransAm's network. Exh. F, Deposition of Charlie Davis, at p. 158:18 – 159:11; Exh. B, Deposition of Russ McElliott, at p. 134:12 – 137:11; Exh. C, Independent Contractor Agreement, at § 1(f).

    **REPLY:**      Uncontroverted.   Plaintiffs admit SOF 110 is uncontroverted and have set forth no specific facts controverting SOF 110 as it is stated, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Plaintiffs' response, to the extent it attempts to controvert SOF 110, is merely argument and commentary which should be disregarded

by the Court and does not create a genuine issue.    Accordingly, SOF 110 is uncontroverted.

**SOF 111:**    This discount may be utilized regardless of whether the Owner Operator is driving on the route recommended by TransAm or driving his or her own chosen route.  Exh. F, Deposition of Charlie Davis, at p. 158:18 – 159:11; Exh. A, Droescher Affidavit, at ¶ 21.

> **REPLY:**    Deemed uncontroverted.  Plaintiffs do not specifically controvert, with admissible evidence, the fact as stated that the fuel discount may be utilized regardless of whether the Owner Operator is driving on the route recommended by TransAm or driving his or her own chosen route.   The testimony of Davis cited by Plaintiffs is misleading and taken out of context.   Though Davis did state he was "told he wasn't getting the discount…" he clarified he did not actually know whether he received a fuel discount when driving his own route and had no documents indicating he did not receive the discount.  Doc. 65, Exh. F, Deposition of Charlie Davis, at p. 158: 18 – 161:7. Therefore, Plaintiffs have provided no admissible evidence that controverts or refutes SOF 111, and Plaintiffs' attempt to "controvert" this fact must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 111 is uncontroverted.

**SOF 112:**    Owner Operators have the option to voluntarily purchase a fuel optimization program to help maximize efficiency of fuel use.  Exh. B, Deposition of Russ McElliott, at p. 134:12 – 135:25.

> **REPLY:**    Deemed uncontroverted.  Larry Blair lacks foundation for this testimony because Blair cannot demonstrate he has personal knowledge as to TransAm's business practices or policies for <u>all drivers.</u>  Plaintiffs have provided no proof that all Owner

Operators were treated in the manner described in Blair's testimony, which is self-serving and entirely contradictory to the clear terms of this one-page agreement.  Indeed, this conclusory statement is inadmissible and should not be considered by the Court: "In class action summary judgment motions, the drivers can't rely on individual contractors' experiences ... to show [the motor carrier's] right to control drivers on a class-wide basis. The detailed information the drivers produced represents anecdotal evidence of how [the motor carrier] treated individual drivers…The court's analysis will focus on [the motor carrier's] right to control all drivers based on the Operating Agreement and generally applicable policies and procedures."  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.  Further, Plaintiffs' "controversion" of this fact is unsupported by any specific facts in the record and must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 112 is uncontroverted.

**SOF 113:**    Because they are not required to use the fuel solution, Owner Operators may choose when and where they want to stop for fuel, and how many gallons of diesel they wish to purchase at any given stop.  Exh. G, Deposition of Rhonda McFarland, at p. 21:4 – 21:12.

> **REPLY:**    Deemed uncontroverted.  Plaintiffs have provided no direct evidence controverting SOF 113 as stated, that Owner Operators may choose when and where they want to stop for fuel, and how many gallons of diesel they wish to purchase at any given stop.  *See* Reply to SOF ¶¶ 109 – 112.  Accordingly, Plaintiffs' has failed to demonstrate a genuine issue of material fact with supporting evidence in the record, pursuant to Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), and SOF 113 is uncontroverted.

**SOF 114:**     Charlie Davis and Larry Blair both opted to use the fuel optimizer.   _See_ Fuel

Optimizer authorizations, attached as Exhibit T; Exh. F, Deposition of Charlie Davis, at p. 125:5

– 125:23; Exh. D, Deposition of Larry Blair, at p. 104:4 – 104:21.

>    **REPLY:**     Deemed uncontroverted.  Plaintiffs appear to controvert SOF 114 in part,
>    though they are not specific as to what part of this fact is uncontroverted.  Nonetheless,
>    Plaintiffs' response includes additional argument unsupported by any specific facts in the
>    record which specifically controvert the fact as stated that Davis and Blair both signed
>    Fuel Optimizer Authorizations and received the fuel optimizer.  Therefore Plaintiffs have
>    failed to controvert the fact as stated, the argument is unresponsive to SOF 114 as stated,
>    and Plaintiffs' response must be disregarded for its failure to comply with the standards
>    set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 114 is
>    uncontroverted.

**SOF 115:**     Company Drivers are told where and when to make fuel purchases through

TransAm's fuel solution.  Participation in and compliance with this program is mandatory for

Company Drivers.   Exh. B, Deposition of Russ McElliott, at p. 133:1 – 133:7; Exh. G,

Deposition of Rhonda McFarland, at p. 21:4 – 21:7; Exh. A, Droescher Affidavit, at ¶ 22.

>    **REPLY:**     Deemed uncontroverted.  Plaintiffs appear to controvert SOF 115 in part,
>    though they are not specific as to what part of this fact is uncontroverted.  Nonetheless,
>    Plaintiffs' response includes additional argument unsupported by any specific facts in the
>    record pertaining to Company Drivers' requirement to make fuel purchases at the times
>    and locations directed by TransAm.  Therefore Plaintiffs have failed to controvert the fact
>    as stated, the argument is unresponsive to SOF 115 as stated, and Plaintiffs' response

must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ.

P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 115 is uncontroverted.

**SOF 116:**     Company Drivers are not obligated to pay for fuel; so long as the Company Driver

did not drive any out-of-route miles, fuel was paid by TransAm.  Exh. D, Deposition of Larry

Blair, at p. 58:2 – 58:15; Exh. B, Deposition of Russ McElliott, at p. 133:1 – 133:4.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs admit this is uncontroverted and only
>
> argue it is immaterial.  Nonetheless, Plaintiffs' response includes additional argument
>
> unsupported by any specific facts in the record pertaining to the fact that Company
>
> Drivers are not obligated to pay for fuel.  Therefore Plaintiffs' argument is unresponsive
>
> to SOF 116 as stated, and must be disregarded for its failure to comply with the standards
>
> set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 116 is
>
> uncontroverted.

**TransAm's Driver Supervision**

**SOF 117:**     TransAm trains its Driver Managers and Operations Managers to treat its Owner

Operators and Company Drivers differently.  Exh. I, Affidavit of Rhonda McFarland, at ¶ 4.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs state this is not a "specific provable
>
> fact" and do not cite any evidence to refute the affidavit of Rhonda McFarland.
>
> Moreover, Plaintiffs' deposed McFarland in this litigation and had an opportunity to
>
> cross-examine her on this topic, and documents were produced evidencing how Driver
>
> Managers and Operations Managers are trained to treat Owner Operators and Company
>
> Drivers differently.  *See* SOF 118.  Therefore, Plaintiffs' argument is disingenuous and
>
> merely an attempt to "controvert" a fact for which Plaintiffs have no evidence in
>
> refutation.  None of the "facts" cited by Plaintiffs directly controvert or refute SOF 117 as

stated that Driver Managers and Operations Managers are trained to treat Owner Operators and Company Drivers differently, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Further, to the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 26 - 38 by reference.  Accordingly, SOF 117 is uncontroverted.

**SOF 118:**   For example, during training for Driver Managers and Operations Managers, TransAm instructs these employees as to how home time, vacation time, out-of-route driving, and fuel stops are handled differently as to Owner Operators and Company Drivers.  Exh. I, McFarland Affidavit, at ¶ 5; Itinerary for Driver Manager, attached as Exhibit U; Itinerary for Operations Management Trainee, attached as Exhibit V.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs state this is not a "specific provable fact" and do not cite any evidence to refute the affidavit of Rhonda McFarland or the training documents attached to Defendant's Motion.   Moreover, Plaintiffs' deposed McFarland in this litigation and had an opportunity to cross-examine her on this topic, and the cited documents were produced in this litigation evidencing how Driver Managers and Operations Managers are trained to treat Owner Operators and Company Drivers differently.   Therefore, Plaintiffs' argument is disingenuous and merely an attempt to "controvert" a fact for which Plaintiffs have no evidence in refutation.  None of the "facts" cited by Plaintiffs directly controvert or refute SOF 118 as stated that Driver Managers and Operations Managers are trained to treat Owner Operators and Company Drivers differently, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Further, to the extent Plaintiffs improperly rely on the PSOFs contained in

*Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 26 - 38 by reference.  .  Accordingly, SOF 118 is uncontroverted.

**SOF 119:**    Driver Managers and Operations Managers are instructed that although Company Drivers must drive the route chosen by TransAm, Owner Operators may drive any route they choose and are not to be disciplined for driving out-of-route.  Exh. I, McFarland Affidavit, at ¶ 6.

   **REPLY:**    Deemed uncontroverted.  Plaintiffs appear to controvert SOF 119 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless, Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to how Driver Managers and Operations Managers are instructed. Indeed, in the "evidence" cited by Plaintiffs, there are no facts pertaining to the training of Driver Managers and Operations Managers at all.  Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 119 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 119 is uncontroverted.

**SOF 120:**    Driver Managers and Operations Managers are trained that although employee drivers must fuel their tractors at the times and locations chosen by TransAm, independent contractors may fuel at the location and time, and in the amount they choose, and are not to be disciplined for failing to fuel their tractors in accordance with the Fuel Solution.  Exh. I, McFarland Affidavit, at ¶ 7.

   **REPLY:**    Deemed uncontroverted.  Plaintiffs appear to controvert SOF 120 in part, though they are not specific as to what part of this fact is uncontroverted.  Nonetheless,

Plaintiffs' response includes additional argument unsupported by any specific facts in the record pertaining to how Driver Managers and Operations Managers are trained.  Indeed, in the "evidence" cited by Plaintiffs, there are no facts pertaining to the training of Driver Managers and Operations Managers at all.  Therefore Plaintiffs have failed to controvert the fact as stated, the argument is unresponsive to SOF 120 as stated, and Plaintiffs' response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Accordingly, SOF 120 is uncontroverted.

**SOF 121:**   Owner Operators are not required to give notice when they wish to have "home time," though an 8-day notice will assist TransAm in routing the Owner Operator as close to their home as possible.  Exh. G, Deposition of Rhonda McFarland, at 19:18 – 19:22; Exh. J, Training PowerPoint, at p. 3.

**REPLY:**      Uncontroverted.  Plaintiffs admit SOF 121 is uncontroverted and only argue it is immaterial.  The remainder of Plaintiffs' response to SOF 121 is merely argument and commentary unsupported by the record in accordance with Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), which should be disregarded by the Court and does not create a genuine issue.  Accordingly, SOF 121 is uncontroverted.

**SOF 122:**   Owner Operators may take as many days off as they wish.  Exh. A, Affidavit of Murray Droescher, at ¶ 23.

**REPLY:**      Uncontroverted.  Plaintiffs admit SOF 122 is uncontroverted and only argue it is immaterial.  The remainder of Plaintiffs' response to SOF 122 is merely argument   and   commentary   unsupported   by   the   record   in   accordance   with

Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), which should be disregarded by the Court and does not create a genuine issue. Accordingly, SOF 122 is uncontroverted.

**SOF 123:**   Company Drivers may have only four days off per month. Exh. F, Deposition of Charlie Davis, at p. 108:10 – 108:14; Exh. J, Training PowerPoint, at p. 2; Exh. B, Deposition of Russ McElliott, at p. 25:12 - 22.

> **REPLY:**   Uncontroverted. Plaintiffs admit SOF 123 is uncontroverted and only argue it is immaterial. The remainder of Plaintiffs' response to SOF 123 is merely argument and commentary unsupported by the record in accordance with Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), which should be disregarded by the Court and does not create a genuine issue. Accordingly, SOF 123 is uncontroverted.

**SOF 124:**   Company Drivers must provide 8 days notice in order to request home time. Exh. G, Deposition of Rhonda McFarland, at 19:18 – 19:22; Exh. J, Training PowerPoint, at p. 2.

> **REPLY:**   Uncontroverted. Plaintiffs admit SOF 124 is uncontroverted and only argue it is immaterial. The remainder of Plaintiffs' response to SOF 124 is merely argument and commentary unsupported by the record in accordance with Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), which should be disregarded by the Court and does not create a genuine issue. Accordingly, SOF 124 is uncontroverted.

**SOF 125:**   Company Drivers' trucks are governed to drive no more than 62 miles per hour. Exh. B, Deposition of Russ McElliott, at p. 44:14 – 45:1.

> **REPLY:**   Uncontroverted. Plaintiffs admit SOF 125 is uncontroverted and only argue it is immaterial. The remainder of Plaintiffs' response to SOF 125 is an additional fact which is wholly unsupported by the record cited by Plaintiffs. The record cited (at Doc. 66, PSOF 27) was testimony from Rhonda McFarland which in no way discussed

the governance of Owner Operators' speed.  The testimony cited describes a wholly-separate system called the Eaton Vorad system, which tracked circumstances when a driver followed another vehicle too closely and the testimony cited establishes this information was not used to discipline Owner Operators.  Further, the testimony cited establishes that TransAm began phasing out the Eaton Vorad system in approximately 2006 and the system is no longer used at TransAm.  In any case, the Eaton Vorad system had nothing to do with governing a driver's speed and Plaintiffs' have provided no evidentiary support for that proposition.  To the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its response to PSOF ¶ 27 by reference.  Accordingly, SOF 125 is uncontroverted.

**SOF 126:**     Software is installed on Company Drivers' tractors that restrict the speed of the truck to no more than 62 miles per hour.  Exh. B, Deposition of Russ McElliott, at p. 44:14 – 45:1.

> **REPLY:**     Uncontroverted.  Plaintiffs admit SOF 126 is uncontroverted and only argue it is immaterial.  The remainder of Plaintiffs' response to SOF 126 is an additional fact which is wholly unsupported by the record cited by Plaintiffs.  The record cited (at Doc. 66, Plaintiffs' SOF 27) was testimony from Rhonda McFarland which in no way discussed the governance of Owner Operators' speed.  The testimony cited describes a wholly-separate system called the Eaton Vorad system, which tracked circumstances when a driver followed another vehicle too closely and the testimony cited establishes this information was not used to discipline Owner Operators.  Further, the testimony cited establishes that TransAm began phasing out the Eaton Vorad system in approximately

2006 and the system is no longer used at TransAm.  In any case, the Eaton Vorad system had nothing to do with governing a driver's speed and Plaintiffs' have provided no evidentiary support for that proposition.  To the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its response to PSOF ¶ 27 by reference.   Accordingly, SOF 126 is uncontroverted.

**SOF 127:**    This speed restriction ensures Company Drivers do not exceed speed limits and maximizes fuel efficiency on TransAm's tractors.  Exh. A, Affidavit of Murray Droescher, at ¶ 24.

> **REPLY:**    Uncontroverted.  Plaintiffs admit SOF 127 is uncontroverted and only argue it is immaterial.  The remainder of Plaintiffs' response to SOF 127 is an additional fact which is wholly unsupported by the record cited by Plaintiffs.  The record cited (at Doc. 66, Plaintiffs' SOF 27) was testimony from Rhonda McFarland which in no way discussed the governance of Owner Operators' speed.  The testimony cited describes a wholly-separate system called the Eaton Vorad system, which tracked circumstances when a driver followed another vehicle too closely and the testimony cited establishes this information was not used to discipline Owner Operators.  Further, the testimony cited establishes that TransAm began phasing out the Eaton Vorad system in approximately 2006 and the system is no longer used at TransAm.  In any case, the Eaton Vorad system had nothing to do with governing a driver's speed and Plaintiffs' have provided no evidentiary support for that proposition.  To the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm

incorporates its response to PSOF ¶ 27 by reference.   Accordingly, SOF 127 is uncontroverted.

**SOF 128:**     Tractors driven by Owner Operators are not similarly governed with a 62 mile-per-hour speed restriction. Exh. B, Deposition of Russ McElliott, at p. 44:14 – 45:1.

> **REPLY:**     Uncontroverted.   Plaintiffs admit SOF 128 is uncontroverted and only argue it is immaterial.   The remainder of Plaintiffs' response to SOF 128 is an additional fact which is wholly unsupported by the record cited by Plaintiffs.   The record cited (at Doc. 66, Plaintiffs' SOF 27) was testimony from Rhonda McFarland which in no way discussed the governance of Owner Operators' speed.   The testimony cited describes a wholly-separate system called the Eaton Vorad system, which tracked circumstances when a driver followed another vehicle too closely and the testimony cited establishes this information was not used to discipline Owner Operators.   Further, the testimony cited establishes that TransAm began phasing out the Eaton Vorad system in approximately 2006 and the system is no longer used at TransAm.   In any case, the Eaton Vorad system had nothing to do with governing a driver's speed and Plaintiffs' have provided no evidentiary support for that proposition.   To the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its response to PSOF ¶ 27 by reference.   Accordingly, SOF 128 is uncontroverted.

**Ability to Drive for other Carriers**

**SOF 129:**     Owner Operators who lease their tractor from TransAm Leasing, Inc. enter into written Equipment Lease Agreements.   Under these agreements Owner Operators may use their equipment to drive for other carriers with TransAm Leasing, Inc.'s  permission:

> The parties acknowledge that, for purposes of conducting Lessee's freight transportation business, during the term hereof Lessee intends to lease the Equipment to at least one for-hire motor carrier. Lessee agrees to notify Lessor in writing of the name of any motor carrier to which Lessee intends to lease the Equipment, and the name and address of such carrier shall be set forth on Exhibit A attached hereto. Such lease shall be subject to the prior approval of the Lessor, which approval shall not be unreasonably withheld.

*See, e.g.,* Equipment Lease Agreement, attached as Exhibit W, at § 5.

**REPLY:** Deemed uncontroverted. Plaintiffs do not specifically controvert the fact as stated that Owner Operators who lease their tractor from TransAm Leasing, Inc. enter into written Equipment Lease Agreements, nor do Plaintiffs controvert the cited language of the Equipment Lease Agreement. Further, none of the "facts" cited by Plaintiffs in support of this argument specifically refute SOF 129 as stated; i.e., that Owner Operators who lease their tractor from TransAm Leasing, Inc. enter into written Equipment Lease Agreements which contain the cited language. To the extent Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial Summary Judgment*, TransAm incorporates its responses to PSOF ¶ 38 by reference. Plaintiffs' attempt to "controvert" this fact with unsupported argument must be disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Accordingly, SOF 129 is uncontroverted.

**SOF 130:** However, while a tractor is leased to TransAm pursuant to an Independent Contractor Agreement, it may only be driven on TransAm's behalf, pursuant to Federal Motor Carrier Safety Administration regulations. Exh. B, Deposition of Russ McElliott, at p. 59:15 – 59:20; Exh. C, Independent Contractor Agreement, at §§ 1(h), 20.

**REPLY:** Deemed uncontroverted. Plaintiffs do not specifically controvert the fact as stated that while a tractor is leased to TransAm pursuant to an Independent Contractor

Agreement, it may only be driven on TransAm's behalf, pursuant to Federal Motor
Carrier Safety Administration regulations, nor do Plaintiffs controvert the cited language
of the Independent Contractor Agreement.  Further, none of the "facts" cited by Plaintiffs
in support of this argument specifically refute SOF 130 as stated.  Further, to the extent
Plaintiffs improperly rely on the PSOF contained in *Plaintiffs' Motion for Partial
Summary Judgment*, TransAm incorporates its responses to PSOF ¶ 38 by reference.
Plaintiffs' attempt to "controvert" this fact with unsupported argument must be
disregarded for their failure to comply with the standards set forth in Fed. R. Civ. P. 56
and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 130 is uncontroverted.

**Ability to Control Profit and Loss**

**SOF 131:**     Owner Operators have a variety of ways in which they can increase their profits
and decrease expenses.  Exh. F, Deposition of Charlie Davis, at p. 188:25 – 194:10.

> **REPLY:**     Deemed uncontroverted.  SOF 131 is supported by Plaintiffs' own sworn
> testimony, and any attempt by Plaintiffs now to contradict that testimony should be
> disregarded as an insufficient basis for defeating a summary judgment motion.  Further,
> Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 30 – 33 in support of their
> response.  This general "controversion" of SOF 131 by referring generally to a number of
> facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine
> issue of material fact and should be disregarded, especially given a number of those facts
> are inadmissible and unsupported.  To the extent Plaintiffs improperly rely on the PSOFs
> contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of
> Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to

PSOF ¶¶ 30-33 by reference.  Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 131 is uncontroverted.

**SOF 132:**     As an independent contractor, an Owner Operator's objective is to increase profits. Exh. F, Deposition of Charlie Davis, at p. 189:8 – 189:12.

>    **REPLY:**     Deemed uncontroverted.  SOF 132 is supported by Plaintiffs' own sworn testimony, and any attempt by Plaintiffs now to contradict that testimony should be disregarded as an insufficient basis for defeating a summary judgment motion.  Plaintiffs provide no admissible evidence which directly controverts this fact.  Further, Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 30 – 33 in support of their response.  This general "controversion" of SOF 132 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.  To the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 30-33 by reference.  Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 132 is uncontroverted.

**SOF 133:**     Owner Operators can increase profits by increasing the miles driven by the particular truck.  Exh. F, Deposition of Charlie Davis, at p. 189:18 – 189:22.

>    **REPLY:**     Deemed uncontroverted.  SOF 133 is supported by Plaintiffs' own sworn testimony, and any attempt by Plaintiffs now to contradict that testimony should be disregarded as an insufficient basis for defeating a summary judgment motion.  Plaintiffs provide no admissible evidence which directly controverts this fact.  Further, Plaintiffs

cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 30 – 33 in support of their response.  This general "controversion" of SOF 133 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.  To the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 30-33 by reference.   Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 133 is uncontroverted.

**SOF 134:**     Owner Operators can also increase profits by decreasing expenses.   Exh. F, Deposition of Charlie Davis, at p. 189:23 – 190:1.

**REPLY:**     Deemed uncontroverted.  SOF 134 is supported by Plaintiffs' own sworn testimony, and any attempt by Plaintiffs now to contradict that testimony should be disregarded as an insufficient basis for defeating a summary judgment motion.  Plaintiffs provide no admissible evidence which directly controverts this fact.  Further, Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 26 - 38 in support of their response.  This general "controversion" of SOF 134 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.  To the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to

PSOF ¶¶ 26-38 by reference.   Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 134 is uncontroverted.

**SOF 135:**   Owner Operators can increase profit and decrease fuel costs by choosing routes that will result in less fuel consumption.  Exh. F, Deposition of Charlie Davis, at p. 190:2 – 190:10.

>    **REPLY:**      Deemed uncontroverted.  SOF 135 is supported by Plaintiffs' own sworn testimony, and any attempt by Plaintiffs now to contradict that testimony should be disregarded as an insufficient basis for defeating a summary judgment motion.  Plaintiffs provide no admissible evidence which directly controverts this fact.   Further, Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 26 - 38 in support of their response.  This general "controversion" of SOF 135 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.   To the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 26-38 by reference.   Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 135 is uncontroverted.

**SOF 136:**   Owner Operators can also decrease expenses by declining optional payments, such as voluntary contributions to Maintenance Savings Accounts.  Exh. F, Deposition of Charlie Davis, at p. 192:8 – 8; 218:13 – 219:21.

>    **REPLY:**      Deemed uncontroverted.  SOF 136 is supported by Plaintiffs' own sworn testimony, and any attempt by Plaintiffs now to contradict that testimony should be disregarded as an insufficient basis for defeating a summary judgment motion.  Plaintiffs

provide no admissible evidence which directly controverts this fact.  Further, Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 26 - 38 in support of their response.  This general "controversion" of SOF 136 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.  To the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 136 is uncontroverted.

**SOF 137:**     In addition, Owner Operators can increase profitability by choosing when and what preventative maintenance they wish to do on their equipment, and at what times.  Further, Owner Operators can increase profitability by making decisions relating to the age of their equipment, factoring in the impact of the maintenance needs and fuel costs associated with running a particular tractor.  For example, some Owner Operators may choose to lease or purchase older trucks and run them for a longer period of time, while other Owner Operators may choose to lease or buy newer tractors which could require less maintenance and are more fuel efficient. Exh. A, Droescher Affidavit, at ¶ 25.

> **REPLY:**     Deemed uncontroverted.  Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 26 - 38 in support of their response.  This general "controversion" of SOF 137 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.  To the extent

Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference. Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 137 is uncontroverted.

**SOF 138:**    Owner Operators can also increase profitability in the manner that they set pay and benefits rates for those persons whom they may employ or contract with to drive their equipment.  For example, Owner Operators can set the pay for their drivers, and may choose to pay less to those drivers to increase the profit they receive on the miles driven by that driver. Exh. A, Droescher Affidavit, at ¶ 26.

**REPLY:**    Deemed uncontroverted.  Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 29 - 38 in support of their response.  This general "controversion" of SOF 138 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.  To the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 29 – 38 by reference.  Further, Plaintiffs' statement that "there is no evidence that any Leased Drivers were able to negotiate pay for other drivers to drive leased trucks for them at any lower rate than such drivers would receive when driving directly for Defendant" is an additional fact unsupported by any evidence as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b) and should be wholly disregarded.  It is Plaintiffs' burden to bring contradictory

evidence establishing a genuine issue of material fact before the Court in responding to a Motion for Summary Judgment.  They have not done so.  Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 138 is uncontroverted.

**SOF 139:**      Owner Operators can increase profitability by choosing to run their routes at slower speeds, thus decreasing the cost of fuel, or in turn, make the business decision to run their equipment at higher speeds in order to allow for more files to be covered, increasing mileage revenue.  Exh. A, Droescher Affidavit, at ¶ 27.

> **REPLY:**      Deemed uncontroverted.  Plaintiffs cite generally to Doc. 66, at Plaintiffs' SOF ¶¶ 26 - 38 in support of their response.  This general "controversion" of SOF 139 by referring generally to a number of facts is insufficient under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1(b) to create a genuine issue of material fact and should be disregarded, especially given a number of those facts are inadmissible and unsupported.  To the extent Plaintiffs improperly rely on the PSOFs contained in *Plaintiffs' Motion for Partial Summary Judgment* in contravention of Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b), TransAm incorporates its responses to PSOF ¶¶ 26 – 38 by reference.  Further, Plaintiffs' argument regarding the "Hobbesian choice" is merely argument unsupported by any evidence in the record as required by Fed. R. Civ. P. 56 and should be wholly disregarded.  It is Plaintiffs' burden to bring contradictory evidence establishing a genuine issue of material fact before the Court in responding to a Motion for Summary Judgment.  They have not done so.  Accordingly, Plaintiffs have not met their burden to establish any genuine issue of a material fact, and SOF 139 is uncontroverted.

**Termination**

**SOF 140:**    Company Drivers are terminable "at will."  Exh. I, McFarland Affidavit, at ¶ 11.

 **REPLY:**    Uncontroverted.

**SOF 141:**    Owner Operators enter into a one-year agreement with TransAm, under which either party may terminate the contract with appropriate notice:

> Subject to the provisions for early termination set forth herein, the terms of this Agreement shall commence as of the day and year first above written and continue for a period of one (1) years, and thereafter shall automatically renew for additional consecutive one (1)-year terms.  Either party may terminate this Agreement without cause by giving the other party at least fourteen (14) days' prior written notice thereof.

Exh. C, § 5.

 **REPLY:**    Uncontroverted.    TransAm and Plaintiffs agree the Independent Contractor Agreement automatically renews unless cancelled as noted in the above-cited portion of the Agreement.

**SOF 142:**    The Independent Contractor Agreement does not contain a noncompetition provision.  As such, an Owner Operator may enter into an Independent Contractor Agreement with TransAm, and hire another driver to perform the services required under the Agreement, leaving the Owner Operator free to accept employment or work from other entities if he so chooses.  Exh. A, Droescher Affidavit, at ¶ 27.

 **REPLY:**    Deemed uncontroverted.  Plaintiffs admit this is uncontroverted but argue it is immaterial.  Further, Plaintiffs' statement that "there is no evidence that any Leased Drivers actually entered ICA agreements and then did not personally drive for Defendant" is an additional fact unsupported by any evidence as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b) and should be wholly disregarded.  It is Plaintiffs' burden to bring contradictory evidence establishing a genuine issue of

material fact before the Court in responding to a Motion for Summary Judgment.  They

have not done so.  In any case, both Blair and Davis entered into Independent Contractor

Agreements under which they did not personally drive the truck but had personnel or

employees to do so.  *See* SOF ¶¶ 64 – 81.  Accordingly, Plaintiffs have not met their

burden to establish any genuine issue of a material fact, and SOF 142 is uncontroverted.

**Internal Revenue Service and Department of Labor Investigations**

**SOF 143:**     On or about May 3, 2010, the Internal Revenue Service sent a letter to TransAm

stating it was conducting an investigation into the worker classification of an Owner Operator

named Christopher Barr.  The IRS sought to determine whether Barr should be classified as an

independent contractor or as an employee for purposes of federal employment taxes.  *See* Letter

from IRS dated May 3, 2010, attached as Exhibit X.

>     **REPLY:**        Uncontroverted.  Plaintiffs do not controvert SOF 143 as stated and only
>
>     argue it is immaterial.  Plaintiffs' response is merely argument and commentary which
>
>     should be disregarded by the Court and does not create a genuine issue given no evidence
>
>     was submitted which controverts the specific fact that on May 3, 2010, the IRS sent a
>
>     letter to TransAm regarding its investigation into worker classification of an Owner
>
>     Operator.  Given Plaintiffs' failure to controvert the fact as stated, this response must be
>
>     disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and
>
>     D. Kan. Local Rule 56.1(b).  Accordingly, SOF 143 is uncontroverted.

**SOF 144:**     At the close of its investigation, the IRS determined Mr. Barr was properly

considered an independent contractor.  *See* IRS Determination of Worker Status dated April 23,

2012, attached as Exhibit Y.

**REPLY:**      Uncontroverted.  Plaintiffs do not controvert SOF 144 as stated and only argue it is immaterial.  Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue given no evidence was submitted which controverts the fact that at the close of its investigation, the IRS determined Mr. Barr was properly considered an independent contractor.   Given Plaintiffs' failure to controvert the fact as stated, this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 144 is uncontroverted.

**SOF 145:**     In making its decision, the IRS reviewed the Independent Contractor Agreement, and considered factors such as whether the driver had the right to accept or decline a load, choose the route of travel, choose fuel purchase locations, and choose a substitute driver.  The IRS also considered ownership of the tractor-trailer, and the driver's obligation to pay for the vehicle, fuel, insurance, maintenance, and satellite service fees, as well as the method of compensation for the driver, including lack of company-provided health insurance and other benefits. *See* Exh. Y.

**REPLY:**      Uncontroverted.  Plaintiffs do not controvert SOF 145 as stated and only argue it is immaterial.  Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue given no evidence was submitted which controverts what materials the IRS reviewed in making its decision. Given Plaintiffs' failure to controvert the fact as stated, this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 145 is uncontroverted.

**SOF 146:**      According to the IRS determination letter, the ruling "pertains to all workers performing services under the same or similar circumstances" – in other words, all other Owner Operators at TransAm.  *See* Exh. Y, at p. 3.

> **REPLY:**      Uncontroverted.  Plaintiffs do not controvert SOF 146 as stated and only argue it is immaterial.  Plaintiffs' response is merely argument and commentary which should be disregarded by the Court and does not create a genuine issue given no evidence was submitted which controverts the fact that the IRS determination letter stated the ruling "pertains to all workers performing services under the same or similar circumstances."   Given Plaintiffs' failure to controvert the fact as stated, this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Accordingly, SOF 146 is uncontroverted.

**SOF 147:**      The Wage and Hour Division of the Department of Labor (the "DOL"), through a fax to TransAm from investigator Jeffrey DePew, instigated an investigation of TransAm in approximately July 2012.  Deposition of John M. Neyens, attached in relevant part as Exhibit Z, at p. 60:25 – 65:13; Records from the U.S. Department of Labor, attached as Exhibit AA.

> **REPLY:**      Uncontroverted.  Plaintiffs argue this fact is immaterial but do not provide any evidence which creates a genuine issue of material fact to controvert it, as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Accordingly, SOF 147 is uncontroverted.

**SOF 148:**      The DOL visited TransAm in July 2012 in order to determine, in part, whether TransAm was in compliance with the FLSA.  Exh. AA.

**REPLY:**      Uncontroverted.    Though Plaintiffs argue "there is no admissible evidence" supporting the purpose of the visit, the cited Exhibit AA clearly references the FLSA on both pages 1 and 2, and notes "…full FC was held discussing all FLSA compliance issues…"  Page 3 of Exhibit AA clearly states the complainant alleged "he did not receive at least the minimum wage."  There are multiple references throughout Exhibit AA as to Mr. DePew's investigation and findings.  Thus Plaintiffs' argument is wholly unfounded and should be disregarded.   Further, given Plaintiffs' failure to controvert the fact as stated, this response must be disregarded for its failure to comply with the standards set forh in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).  Accordingly, SOF 148 remains uncontroverted.

**SOF 149:**      The DOL's investigation was focused, in part, on driver minimum wage and worker classification of TransAm's drivers.  Exh. AA.

**REPLY:**      Uncontroverted.    Though Plaintiffs argue "there is no admissible evidence" supporting this fact, the cited Exhibit AA clearly references the FLSA on both pages 1 and 2, and notes "…full FC was held discussing all FLSA compliance issues…"  Page 3 of Exhibit AA clearly states the complainant alleged "he did not receive at least the minimum wage."  There are multiple references throughout Exhibit AA as to Mr. DePew's investigation and findings as to worker classification and the driver's right to minimum wage.   Thus Plaintiffs' argument is wholly unfounded and should be disregarded.   Further, given Plaintiffs' failure to controvert the fact as stated, this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Accordingly, SOF 149 remains uncontroverted.

**SOF 150:**     As part of its investigation, the DOL reviewed Independent Contractor Agreements, driver logs, payroll records, employee records, and other corporate records.   In determining driver classification, the DOL also took into account the driver's obligation to pay operating and maintenance expenses, fuel costs, insurance, and equipment costs, as well as the fact that independent contractor drivers have the right to refuse loads.   *See* Exh. AA; Notes dated 8/27/12, attached as Exhibit BB.

> **REPLY:**     Uncontroverted.   Though Plaintiffs argue "there is no admissible evidence" supporting this fact, the cited Exhibits AA and BB clearly references the documents reviewed, in addition to noting a review of the documents provided to the IRS as part of its investigation.   There are multiple references throughout Exhibits AA and BB as to the documents referenced by Mr. DePew's as part of his investigation and findings.   Thus Plaintiffs' argument is wholly unfounded and should be disregarded.   Further, given Plaintiffs' failure to controvert the fact as stated, this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b).   Moreover, to the extent Plaintiffs argue the Court should disregard the IRS and DOL findings in ruling on Defendant's Motion for Summary Judgment, that is merely argument which should be disregarded by the Court because it is legal argument and does not controvert the fact itself.   Nonetheless, while TransAm acknowledges the DOL's decision is not binding on the Court, a finding by the DOL that TransAm was in compliance with the FLSA should be persuasive, especially considering the IRS came to the same result.   SOF 150 remains uncontroverted.

**SOF 151:**     Although no written opinion was generated by the DOL, ultimately it found *no violation* by TransAm of the FLSA and that TransAm's Owner Operators were properly

classified as independent contractors and not employees. Exh. Z, Deposition of John M. Neyens, at p. 79:3 – 79:18; Exh. AA, at p. 2.

> **REPLY:** Uncontroverted.  Though Plaintiffs argue "there is no admissible evidence" supporting this fact, the cited Exhibits AA and BB clearly reference and discuss the findings of the DOL as noted by Mr. DePew.  Thus Plaintiffs' argument is wholly unfounded and should be disregarded.  Further, given Plaintiffs' failure to controvert the fact as stated, this response must be disregarded for its failure to comply with the standards set forth in Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1(b). Further, to the extent Plaintiffs argue the Court should disregard the IRS and DOL findings in ruling on Defendant's Motion for Summary Judgment, that is merely argument which should be disregarded by the Court because it is legal argument and does not controvert the fact itself.  Nonetheless, while TransAm acknowledges the DOL's decision is not binding on the Court, a finding by the DOL that TransAm was in compliance with the FLSA should be persuasive, especially considering the IRS came to the same result.  SOF 151 remains uncontroverted.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Stevens v. Water Dist. One of Johnson Cnty.*, 561 F. Supp. 2d 1224, 1230-31 (D. Kan. 2008).  Therefore, to overcome TransAm's Motion for Summary Judgment, Plaintiffs bear the burden to "set forth *specific facts* showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis added); *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).    This

showing requires more than a scintilla of evidence; rather, the facts must be specifically identified by references to affidavits, deposition transcripts, or specific exhibits, and only facts admissible at trial should be considered.  *Anderson,* 477 U.S. at 247, 252; *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998).  The nonmoving party "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

If the non-moving party's evidence is merely colorable or is not significantly probative, summary judgment should be granted.  *Anderson,* 477 U.S. at 249–250.  Further, though material factual disputes cannot be resolved on summary judgment based on conflicting affidavits, "to come within the protection of this rule…the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; *conclusory and self-serving affidavits are not sufficient.*"  *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991) (emphasis added).  A plaintiff "cannot defeat a motion for summary judgment by standing on his own unsupported, self-serving allegations."  *Wallin v. Dycus,* No. 03-CV-00174, 2009 WL 2490127, * 5 (D. Colo. August 13, 2009) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).  "In class action summary judgment motions, the drivers can't rely on individual contractors' experiences ... to show [the motor carrier's] right to control drivers on a class-wide basis.  The detailed information the drivers produced represents anecdotal evidence of how [the motor carrier] treated individual drivers…The court's analysis will focus on [the motor carrier's] right to control all drivers based on the Operating Agreement and generally applicable policies and procedures."  *In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d at 578-79.

Further, the nonmoving party "cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Stevens,* 561 F.Supp.2d 1224, 1230 (D. Kan. 2008).  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* at 1231. "Only *material* factual disputes preclude summary judgment; factual disputes about immaterial items are irrelevant." *Hall,* 935 F.3d at 1111 (emphasis in original).

## IV.    ARGUMENT AND AUTHORITIES

Multiple courts across the country have examined the classification of independent contractor drivers in the trucking industry in light of the Federal Motor Carrier Safety Administration regulations, under the FLSA, KWPA, and other laws.  As more fully set forth herein, and in *Defendants Motion for Summary Judgment* (Docs. 63, 65) and *Defendant's Response to Plaintiff's Motion for Partial Summary Judgment* (Doc. 72), an analysis of these cases in light of the Fair Labor Standard Act's "economic realities test" and the KWPA's "right to control test," leads to but one conclusion: TransAm is entitled to summary judgment because its Owner Operators are properly classified as independent contractors.

### A.    Plaintiffs have Failed to Properly Controvert TransAm's Statements of Fact, thus TransAm's Material Facts Remain Uncontroverted.

Plaintiffs responded to TransAm's Statements of Fact ("SOF") with mostly inadmissible or immaterial allegations.  Affidavits used to oppose a Motion for Summary Judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  The Federal Rules of Evidence require that a testifying witness "ha[ve] personal knowledge of the matter" of which he is testifying.  Fed. R. Evid. 602.  Further, the Tenth Circuit has stated

that "under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Stevens*, 561 F. Supp. 2d at 1231 (citations omitted).  Statements of "mere belief in an affidavit must be disregarded." *Id.*  The court ordinarily does not strike affidavits, even on motion, but rather simply disregards those portions that are not shown to be based upon personal knowledge or otherwise do not comply with the Rules.  *Id.*

Further, Federal Rule 56 requires that a party disputing a fact must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only, admission, interrogatory answers, or other materials…" Fed. R. Civ. P. 56(c)(1).  In addition, the local rules of this Court state "Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed." D. Kan. Local Rule 56.1(b)(1).  "If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record..." *Id.* at (b)(2).  Where a party fails to properly support a "controversion" of fact, the Court may, among other things, consider the fact undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials show the movant is entitled to it.  Fed. R. Civ. P. 56(e).

Here, a substantial number of Plaintiffs' responses to TransAm's SOF are based on speculation and conjecture contained in self-serving testimony and affidavits from Plaintiffs that are otherwise unsupported by any evidence.  Thus they are inadmissible and must be disregarded by the Court.  *Hall v. Bellmon,* 935 F.2d at 1111; *Wallin,* 2009 WL 2490127 at * 5; *Murray*, 45

F.3d at 1422.   Likewise, a number of Plaintiffs' responses to TransAm's SOF lack foundation and are not supported by specific references to the record that directly refute the fact as stated. Instead, Plaintiffs pollute the record with legal argument and additional alleged "facts," which lack proper support by references directly to the record via additional statements of fact as required by Fed. R. Civ. P. 56 and D. Kan. Local Rule 56.1.   Because Plaintiffs had an opportunity to address and support their responses to the facts in accordance with both the Federal Rules and Local Rules but failed to do so, the Court should disregard those responses and consider those facts undisputed.

For the Court's convenience, a summary of the responses to TransAm's SOF that should be disregarded by the Court follows:

|  | Response lacks foundation and/or specific references to the record of supported and admissible evidence | Response based on unsupported and self-serving speculation, conjecture, and personal opinion |
|---|---|---|
| **Statement of Fact No.:** | 4-12, 16-20, 22-30, 33-38, 41, 46-73, 75-80, 82-83, 85, 87-139, 142-151 | 22, 38, 49, 55-60, 63, 85, 87-95, 99-101, 103, 105, 107, 109, 112 |

Because Plaintiffs' responses to these facts must be disregarded, these facts should be deemed uncontroverted by the Court in analyzing TransAm's *Motion for Summary Judgment*.

**B.     TransAm's Owner Operators are Accurately Classified as Independent Contractors Under the FLSA and the KWPA.**

Both Plaintiffs and TransAm agree that the Tenth Circuit employs an "economic reality test" to distinguish between independent contractors and employees for FLSA purposes. As Plaintiffs point out, the analysis focuses on the "economic realities," and "the focal point is 'whether the individual is economically dependent on the business to which he renders

service…or is, as a matter of economic fact, in business for himself.'" *Johnson v. Unified Gov't of Wyandotte Co.,* 371 F.3d 723, 729 (10th Cir. 2004).

Though Plaintiffs argue at length that TransAm ignored this test in its Motion, TransAm in fact correctly analyzed this test (as more fully set forth in its *Motion for Summary Judgment*, (Docs. 63, 65) incorporated herein by reference) in light of the six elements used by the Tenth Circuit to interpret this test: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Id.* None of these factors alone are dispositive; instead, the Court employs a totality of the circumstances approach. *Id.*

The Kansas Wage Payment Act analyzes similar factors. Pursuant to the KWPA, "[t]he primary test used in determining whether an employment relationship exists is 'whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished.' *In re FedEx Ground Package Sys., Inc.,* 734 F. Supp. 2d at 584-85. The existence of the right or authority to interfere or control by the employer, not the actual interference or exercise of control, renders one an employee rather than an independent contractor. *Id.* at 585. Other relevant factors include: "whether there is an agreement to perform a certain kind of work for a definite period of time; whether the employer has the right to discharge the worker at any time; whether the worker must furnish necessary tools, supplies, and materials; whether the worker is paid by the hour or by the job; whether the work is part of the regular business of the employer; whether the worker's business is independent in nature; and

whether the worker has the right to employ assistants and supervise their work." *Id.* In other words, though the "economic reality test" has not been formally adopted for purposes of analyzing a KWPA claim, ultimately Courts analyze primarily the same factors. *See, e.g., In re FedEx Ground*, 734 F. Supp. 2d at 584-601.

TransAm has already analyzed the relevant factors and fully briefed the issues for the Court in its *Motion for Summary Judgment* and supporting memorandum, incorporated fully herein (Docs. 63, 65). Therefore, TransAm will not repeat its arguments here. However, once Plaintiffs' inadmissible or immaterial factual attempts to controvert TransAm's SOF are disregarded, as they must be, the uncontroverted facts definitively prove TransAm's Owner Operators are properly classified because they are, in economic fact, in business for themselves. These remaining uncontroverted facts include (but are not limited to):

- Though TransAm conducts certain minimum safety and FMCSA-required evaluation of its Owner Operators and their personnel at the time it hires them, it otherwise does not direct the manner and means by which its Owner Operators perform their services for TransAm. In fact, in the Independent Contractor Agreement, TransAm's Owner Operators agree to lease tractors to TransAm "on a schedule to be determined by [Owner Operator]." SOF ¶ 7.

- TransAm does not require its Owner Operators' services be provided personally by the driver. SOF ¶ 64. An Owner Operator may choose to hire his or her own employees, personnel, agents, or contractors to provide services to TransAm on their behalf, pursuant to the Independent Contractor Agreement. SOF ¶¶ 64 - 69. Though any person driving for the Owner Operator must be initially qualified by TransAm pursuant to FMCSA regulations, *see* 49 C.F.R. §§ 382.101 *et. seq.*, 49

C.F.R. §§ 390.1 *et seq.*, 49 C.F.R. §§ 391.1, *et seq.* according to the Independent Contractor Agreement, TransAm is not responsible for selecting, supervising, determining pay, paying, or providing benefits to any of its Owner Operator's personnel, which instead are wholly its Owner Operators' responsibilities.  SOF ¶ 68 - 81.  In this case, both of the named Plaintiffs who now wish for this Court to declare they are TransAm employees hired and paid drivers to perform driving services for TransAm on their behalf.  SOF ¶¶ 70 – 72, 78.  Both Blair and Davis admit TransAm did not recommend or require they hire these drivers and they made their own agreements to pay these drivers; TransAm neither dictated how these drivers to were to be paid nor actually paid these drivers.  SOF ¶¶ 73 – 75, 77, 79, 81.  Though TransAm communicated directly with the drivers as to load assignments, as it must with any driver hauling loads for TransAm, it did not dictate how they performed their services.  SOF ¶¶ 64 – 81.  Though Plaintiffs cite the aging case of *W.J. Usery v. Pilgrim Equipment Co., Inc.*, for the proposition that the "right to hire helpers" is not indicative of nonemployee status, the *Pilgrim Equipment* Court is clear that in looking at the *total context* of the relationship, the right to hire helpers is not determinative where no other facts are present indicating nonemployee status, and the Court noted the "*occasional* exercise of the right to hire helpers also has not been found sufficiently indicative of independence to allow a finding of nonemployee status." *W.J. Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1312 (5th Cir. 1976) (emphasis added). Likewise, the *Driscoll Strawberry* Court, also cited by Plaintiffs, only held that the right to hire "helpers" does not *prevent* a finding of employee status.  *Real v.*

*Driscoll Strawberry Assoc., Inc.,* 603 F.2d 748, 755 (9th Cir. 1979).  These cases are inapposite to the facts at bar, where Owner Operators did not just hire "helpers" (such as the short-term "lumpers" they can pay to assist in unloading cargo) whose pay detracted from the Owner Operators' bottom lines, but instead hired full-time drivers and leased additional equipment so that their employees could drive additional loads, thereby increasing profits for the Owner Operators' business.  By contrast, the cases cited by Defendant on this point are not only more recent but also are more factually on-point given the nexus to the trucking industry.

- Plaintiffs' elections to become Owner Operators were completely voluntary.  SOF ¶ 16.  Plaintiffs offer no contradictory evidence.  Both Blair and Davis admit they voluntarily chose to become Owner Operators because they wanted to own their own businesses.  SOF ¶¶ 16, 20.  Mr. Davis testified he chose to become an Owner Operator, in part, because wanted to control his time off over the holidays; he understood that was not an option if he opted to become a Company Driver.  SOF ¶ 20.

- Owner Operators must be experienced drivers; inexperienced drivers are ineligible to become Owner Operators without further training.  SOF ¶ 30. Therefore, TransAm's Owner Operators attend only a three-day orientation in which they complete their FMCSA and DOT-required evaluation and testing, including drug and alcohol evaluations and other background checks.  SOF ¶¶ 30 - 35.  Though TransAm offers additional quarterly safety classes and an annual "Ethics and Techniques" course, Owner Operators (unlike employees) are not

required to attend these classes and are not disciplined if they fail to attend the classes.  SOF ¶¶ 41 - 45.   Instead, they are offered a financial incentive to attend, but it remains their option.  SOF ¶ 43.

- Although TransAm's Company Drivers are required to drive any load assigned to them, Owner Operators may decline or reject loads pursuant to the Independent Contractor Agreement, which states "Contractor may refuse to haul any load offered to Contractor by Carrier, for any reason, with no penalty for refusal."  SOF ¶¶ 91 - 94.  In fact, TransAm's Owner Operators regularly decline loads, as evidenced by the thousands of load rejection messages produced by TransAm in this litigation.  SOF ¶ 96.  Named Plaintiff Charlie Davis admits he rejected load assignments while an Owner Operator.  SOF ¶ 97.  Though Plaintiffs' argue they would be "penalized" for rejecting a load in order to attempt to controvert this fact, Plaintiffs have no foundation for such self-serving statements.   This testimony is merely a conclusion based on speculation, unsupported by any actual evidence, and must be disregarded.  There is also no foundation for this statement given both Plaintiffs admitted they were unaware of all the factors which contribute to how loads are planned and distributed.  SOF ¶¶ 97-103.  In fact, the evidence that *is* amply supported by the record is that TransAm's system for planning load assignments is set up in such a way that Plaintiffs could not be "penalized" for refusing a load – nor would it make business sense for TransAm to do so as TransAm makes more money when its drivers are on the road.  SOF ¶¶ 82-90, 96.

- Unlike employee Company Drivers, Owner Operators may take as much "home time" as they wish, simply by notifying TransAm that their tractor is unavailable. SOF ¶ 122.  Both Blair and Davis effectively rejected loads by frequently making themselves and/or their tractors unavailable so that they could have frequent "home time."  SOF ¶¶ 98-99, 102-103.  Neither Blair nor Davis offered any evidence to controvert the fact that they requested and took home time well in excess of that allowed to Company Drivers of only four days per month.

- Although Owner Operators may opt to have fuel optimization on their tractors to guide them as to the most economical use of fuel, Owner Operators are not required to follow the recommendations given.  SOF ¶¶ 109 - 119.   Instead, Owner Operators may fuel their tractors when and where they like.  SOF ¶ 113. And, if they opt to take advantage of fuel discounts negotiated by TransAm with fuel stations, they may do so simply by using their TCH card for payment. SOF ¶ 110.  Use of the TCH card is strictly voluntary and is not required. SOF ¶ 109.  In other words, an Owner Operators' decision to take advantage of these economic opportunities is his business decision; it is not mandated by TransAm as it is for Company Drivers.  SOF ¶¶ 109-116.

- Company Drivers' tractors are governed by TransAm to drive no more than 62 miles per hour in order to maximize fuel efficiency.  SOF ¶¶ 125, 127. This is accomplished via software installed on Company Drivers' tractors.  SOF ¶ 126. By contrast, TransAm does not govern the tractors of Owner Operators at 62 m.p.h.  SOF ¶ 128.  If Owner Operators drive at 62 m.p.h., it is because they choose to do so.

- Owner Operators have the ability to control their own profit or loss opportunity. They are responsible for their own trip-related expenses including fuel, tractor maintenance and repairs, and travel expenses such as meals.  SOF ¶¶ 48 - 63. Because of this, there are a number of opportunities and choices available to Owner Operators in which they could increase or decrease their profit and/or loss. SOF ¶¶ 131 - 139.   For example, Owner Operators have the option to purchase a Fuel Solution program to help maximize the efficiency of fuel use, the cost of which (if elected) will appear as a deduction from the Owner Operators' settlement statement.  SOF ¶¶ 112 - 113.   In fact, both Blair and Davis elected to receive the Fuel Solution, and Davis admits he did not always choose to follow it, as he may have determined a different route or fuel stop was in his best interest. SOF ¶¶ 105, 11, 114.  Likewise, because TransAm allows its Owner Operators to enter into multiple ICAs and hire additional drivers, Owner Operators have the ability to increase their profitability by operating more than one tractor for TransAm at a time.   SOF ¶¶ 12, 52 – 53, 138.  In fact, both Blair and Davis took advantage of this opportunity and had additional trucks and drivers.  SOF ¶¶ 12, 52 – 53, 70, 72, 78, 138.  They determined the rate to be paid for the additional drivers, and therefore were in control of whether the additional tractors would increase their own profits.  SOF ¶¶ 73, 75, 77, 79, 81.  For example, though Davis paid his employee driver 30 cents per mile, Blair elected to pay his employee drivers all of the profit earned from the tractor.  SOF ¶¶ 75, 81.  Thus, Davis attempted to increase profit from the running of an additional tractor, while Blair

chose not to make any profit from the additional tractors he leased to TransAm. These are simply business decisions made by Blair and Davis.

- TransAm's Owner Operators are not W-2 employees like Company Drivers. SOF ¶ 24.  Instead, they receive payments on a per-mile basis, reflected in weekly settlement statements provided to the Owner Operators pursuant to the Independent Contractor Agreement.  SOF ¶¶ 23, 25.  TransAm does not withhold any sums for income tax, unemployment insurance, Social Security, or any other withholding.  SOF ¶¶ 28 – 29.

- Owner Operators make significant investments in their businesses.  The most significant costs for an Owner Operator are their tractors and fuel.  Owner Operators must provide a tractor to lease to TransAm, which may be owned by the driver, leased to the driver by TransAm Leasing, Inc., or leased to the driver from another company.  SOF ¶¶ 49 - 50.  Owner Operators have the option to purchase any tractor they lease from TransAm Leasing, Inc. upon successful completion of their Equipment Lease.  SOF ¶ 51.  Further, Owner Operators are "solely responsible for all fuel taxes, mileage taxes, highway use taxes, road taxes, and all other levies or similar assessments based upon the operation of the Equipment hereunder."  SOF ¶ 57.  Owner Operators are also required to provide their own insurance, including physical damage, bobtail/deadhead, and occupational/accident insurance.  SOF ¶ 58.  Owner Operators are also required to provide this insurance for any drivers they employ or pay to drive additional tractors for TransAm.  SOF ¶ 60.  By contrast, Company Drivers are not responsible for any expenses relating to the services they provide to TransAm.

SOF ¶ 63.   Company Drivers are reimbursed for all job-related costs and expenses.  SOF ¶ 63.

- Unlike Company Drivers who are "at will" employees under Kansas law, Owner Operators enter into an automatically-renewing one-year Independent Contractor Agreement, under which either party may terminate the contract with appropriate notice. SOF ¶¶ 140-141.

- The initiative required to be an Owner Operator far surpasses that needed to perform as a Company Driver.  Owner Operators must manage their business so as to maximize their profits, including knowledge of routes and fuel consumption. Indeed, Blair testified he has a Business Management degree from The Ohio State University.  SOF ¶ 14.  Blair utilized his business acumen in managing up to five other drivers who drive various routes and loads with four tractors as an Owner Operator for TransAm.  SOF ¶¶ 14, 72 - 77.

These uncontroverted facts conclusively establish that TransAm's Owner Operators are, in economic fact, in business for themselves and dependent upon no one other than themselves in light of the six-factor analysis employed by the Tenth Circuit.  Further, although Plaintiffs argue extensively that TransAm failed to analyze and cite to cases applying the FLSA standard in its Motion, that simply is not true.  For example, the Court in *Brennan* analyzed whether truck drivers were properly classified as independent contractors or employees, and held "the truckers were not at anytime employees of the Defendant under the Act but were in fact independent contractors and not covered by the Act." *Brennan v. Sand Products, Inc.,* 371 F. Supp. 236, 239 (W.D. Okla. 1973).  Likewise, the Court in *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, affirmed that a delivery service's drivers were independent contractors, not employees, for

FLSA purposes.  *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 306 (5th Cir. 1998).  The Court in *Luxama* also analyzed whether drivers were properly classified under the FLSA (and New Jersey state law).  *Luxama v. Ironbound Exp., Inc.*, No. 11-2224, 2012 WL 5973277 *3-8 (D.N.J., June 28, 2012). Further, the *Goldberg* Court analyzed worker classification issues under the FLSA in the trucking industry.  *Goldberg v. Bellotto*, 207 F.Supp. 499, 500 (S.D. Fla. 1962).  Likewise, the *Ruiz* case was brought under both California law and the FLSA, though the analysis focused on California law.  *Ruiz v. Affinity Logistics Corp.,* 887 F. Supp. 2d 1034, 1038-39 (S.D. Cal. 2012).

Given the specialized nature of the trucking industry and the similarity of factors considered by the Courts in the various tests under the FLSA, KWPA, and other state laws, this Court should certainly find cases interpreting the same or similar law persuasive.  In fact, in a number of similar cases analyzing multiple statutes, Courts have found drivers to be properly classified as independent contractors.  *See, e.g., In re FedEx Ground,* 734 F.Supp.2d at 600-01; *see also State Comp. Ins. Fund v. Brown*, 32 Cal. App. 4th 188, 203, 38 Cal. Rptr. 2d 98, 105 (1995) ; *see also Mazzei v. Rock N Around Trucking, Inc.,* 246 F.3d 956, 964 (7th Cir. 2001).  By contrast, Plaintiffs cite to a number of aging cases from other circuits, most of which have nothing to do with the trucking industry.  *See, e.g., Donovan v. DialAmerica Marketing*, 757 F.2d 1376 (3rd Cir. 1985); *W.J. Usery v. Pilgrim Equipment Co., Inc*., 527 F.2d 1308 (5th Cir. 1976); *Mitchell v. Strickland Transportation Co*., 228 F.2d 124 (5th Cir. 1956); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748 (9th Cir. 1979).  These are hardly persuasive.

Indeed, Plaintiffs fail to acknowledge that *In re FedEx Ground* is wholly on-point and involves analysis of KWPA claims for drivers in the trucking industry – the precise claims Plaintiffs have brought in this lawsuit. *See In re FedEx Ground*, 734 F. Supp. 2d at 584-601.

Moreover, Plaintiffs only briefly analyze the KWPA at all, and cite primarily to an aging Kansas Employment Security Act case relating to vacuum salesmen to argue Owner Operators should be employees under the KWPA. *Wallis v. Secretary Kan. Dept. of Human Resources*, 236 Kan. 97, 689 P.2d 789 (Kan. 1984).

In arguing that this 30-year-old *Wallis* case should apply here, Plaintiffs rely primarily on the fact that the ICAs can be terminated with notice, that Plaintiffs' work is "central" to TransAm's business, and that TransAm's Owner Operators must complete a three-day orientation. Plaintiffs ignore that the facts in *Wallis* are dissimilar to those here. First, in *Wallis*, the agreements could be terminated by either party with notice, <u>or</u> by the employer (Wallis) <u>for cause</u>, a fact which was expressly differentiated by the *FedEx* Court. *See Wallis,* 689 P.2d at 789-90; *In re FedEx Ground*, 734 F.Supp.2d at 586. Further, Plaintiffs misrepresent the "training" TransAm's Owner Operators complete. Owner Operators only attend a 3-day orientation, consisting largely of FMCSA-required qualification and drug testing; only inexperienced employee Company Drivers must "ride along" with experienced drivers for three weeks following orientation. SOF ¶¶ 30-35. In sum, *Wallis* has nothing to do with the trucking industry and certainly should be disregarded given there is another, much more recent case that is closely on-point to the facts here. The *FedEx* Court found truck drivers were properly classified as independent contractors under the KWPA under nearly the same factual circumstances as TransAm's Owner Operators, as this Court should do here.

Further, Plaintiffs reference a number of alleged "disputed" facts to argue this Court should deny TransAm's Motion for Summary Judgment, but curiously, the "facts" referenced by Plaintiffs are all contained in Plaintiffs' Statement of Facts in support of its *Motion for Partial Summary Judgment* (Docs. 64, 66). In doing so, Plaintiffs have failed to assert any "additional

facts" in response to Defendant's *Motion for Summary Judgment* as required by D. Kan. Local Rule 56.1.  Further, a number of Plaintiffs' alleged "controverted facts" are wholly unsupported by the record and lack foundation, as more fully set forth in Defendant's *Response to Plaintiffs' Motion for Partial Summary Judgment* (Doc. 72), incorporated fully herein by reference. Accordingly, Plaintiffs fail to meet their evidentiary burden under Rule 56.  TransAm therefore is entitled to summary judgment on Plaintiffs' KWPA claims.

C.       **Results of IRS and DOL Investigations of Worker Classification Issues at TransAm**

Both the IRS and the United States Department of Labor have analyzed whether TransAm's Owner Operators are properly classified as independent contractors, and determined TransAm's Owner Operators are properly classified.  Plaintiffs argue these findings should be wholly disregarded by this Court.  However, although TransAm acknowledges these findings are not binding on this Court, these agency determinations are persuasive in analyzing the status of TransAm's Owner Operators, given not one but two federal agencies have very recently audited TransAm and determined TransAm properly classified its Owner Operators as independent contractors.

TransAm will not repeat the arguments it made in its Motion for Summary Judgment here.  However, it should be noted that the IRS uses a twenty-factor test for determining employee and independent contractor status which largely overlap the factors considered in an FLSA or KWPA analysis, and the IRS found TransAm had properly classified its Owner Operators. Further, the U.S. Department of Labor sought to determine if TransAm was in compliance with the FLSA – precisely the issue, here – and found *no violation* by TransAm of the FLSA and that TransAm's Owner Operators were properly classified as independent contractors and not employees.

Again, though TransAm acknowledges these decisions are not binding precedent on this Court, these administrative findings are certainly persuasive evidence that TransAm's Owner Operators are properly classified as independent contractors.

## V.      CONCLUSION

TransAm's Owner Operators are properly classified.  TransAm does not exhibit the requisite control under the FLSA or KWPA such that its Owner Operators should be considered employees.  Instead, the undisputed material facts show that TransAm is entitled to judgment as a matter of law on these claims because TransAm's Owner Operators are economically dependent on only themselves and have significant autonomy and control in running their own independent businesses.  Because liability under Plaintiffs' FLSA and KWPA claims is dependant upon a finding that workers are employees, the fact that TransAm's Owner Operators are properly classified as independent contractors as a matter of law is fatal to Plaintiffs' claims. Accordingly, TransAm requests this Court dismiss all of Plaintiffs' claims.

Dated:  June 28, 2013.

Respectfully submitted,

SEIGFREID BINGHAM, P.C.

By: /s/ Rachel H. Baker
     Rachel H. Baker    US-KS #70148
     Shannon Johnson       KS #23496
     2800 Commerce Tower
     911 Main Street
     Kansas City, Missouri 64105
     rbaker@seigfreidbingham.com
     sjohnson@seigfreidbingham.com
     Phone:      816-421-4460
     Fax:        816-474-3447

     ATTORNEYS FOR DEFENDANT
     TRANSAM TRUCKING, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 28th day of June, 2013, the foregoing was served on all parties of interest receiving electronic notices in the above-captioned proceedings through the Court's CM/ECF System, including:

Teresa A. Woody
**THE WOODY LAW FIRM**
1621 Baltimore Avenue
Kansas City, Missouri 64108
(816) 421-4246
(816) 471-4883 [Fax]
Teresa@woodylawfirm.com

Rik N. Siro
Eric W. Smith
Athena M. Dickson
**SIRO SMITH DICKSON P.C.**
1621 Baltimore Avenue
Kansas City, Missouri 64108
(816) 471-4881
(816) 471-4883 [Fax]
Rsiro@sirosmithdickson.com
Esmith@sirosmithdickson.com
Adickson@sirosmithdickson.com

Michael F. Brady
**BRADY & ASSOCIATES**
10901 Lowell Avenue, Suite 280
Overland Park, KS 66210
913.696.0925
913.696.0468 [Fax]
brady@mbradylaw.com

*Counsel for Plaintiffs*

/s/ Rachel H. Baker
Attorney for Defendant