## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LARRY BLAIR and
CHARLIE DAVIS,
On behalf of themselves and
all other persons similarly situated,

      *Plaintiffs,*

  vs.

TRANSAM TRUCKING, INC.,

      *Defendant.*

Case No. 09-2443-EFM-KGG

## MEMORANDUM AND ORDER

Plaintiffs Larry Blair and Charlie Davis, on behalf of themselves and other similarly situated truck drivers, assert claims against Defendant TransAm Trucking, Inc., for failure to pay minimum wages under the Fair Labor Standards Act (FLSA) and failure to pay wages due under the Kansas Wage Payment Act (KWPA). Plaintiffs seek class certification for their KWPA claims and conditional certification of collective claims under the FLSA. Because common issues predominate over individual issues, the Court finds that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 and grants the motion for class certification for the KWPA claims (Doc. 104). And because the Court finds that Plaintiffs are similarly situated, the Court grants the motion for conditional certification of collective claims under the FLSA (Doc. 102). The Court denies TransAm's motion for leave to file a surreply (Doc. 140).

## I. Factual and Procedural Background

In 2009, Plaintiffs Larry Blair and Charlie Davis filed suit on behalf of themselves and all other persons similarly situated against Defendant TransAm Trucking, Inc., a trucking company with its principal place of business in Kansas. Plaintiffs bring this action as a collective action for violations of the Fair Labor Standards Act and as a class action for violations of the Kansas Wage Payment Act. Plaintiffs, truck drivers, allege TransAm Trucking failed to pay them minimum wages, failed to pay wages due, and made improper deductions. Plaintiffs argue that they have been misclassified as independent contractors.

TransAm has two types of drivers, which it refers to either as Company Drivers or Owner Operators. TransAm acknowledges that Company Drivers are employees and has designated the drivers referred to as Owner Operators as independent contractors. TransAm enters into a written contract, titled an Independent Contractor Agreement, with its non-company drivers. The Independent Contractor Agreement is a contract in which the driver agrees to lease to TransAm the use of a truck for the hauling of freight to TransAm's customers. Each driver signs a separate agreement for each truck he leases to TransAm. The agreement is for a one-year term that automatically renews unless canceled by either party with 14 days notice.

One way in which a driver may lease a truck to TransAm Trucking is by leasing a truck from TransAm Leasing, Inc., a wholly owned subsidiary of TransAm Trucking. Drivers using this option enter into a contract, titled an Equipment Lease Agreement, with TransAm Leasing. The trucks leased through TransAm Leasing are part of the fleet of trucks that are owned and being depreciated by TransAm Trucking. Drivers who choose to lease a truck from TransAm Leasing may select their trucks with lease terms and costs that vary depending on the age and miles on the tractor. Drivers who choose to lease a truck through TransAm Leasing have the

option to buy their truck at the end of the lease with a balloon buy-out payment. As part of the Independent Contractor Agreement, the truck leased to a driver through an Equipment Lease Agreement and then leased back to TransAm can be used only to haul loads for TransAm Trucking. The Federal Motor Carrier Safety Act requires that a driver lease a truck to only one motor carrier and operate a truck only under one motor carrier number at a time.

At any given time since 2008, there are more than 1,000 drivers working for TransAm Trucking. All drivers who lease a truck through TransAm Leasing must attend training at TransAm's facility where they are given an Owner-Operator Handbook and guided through a presentation of TransAm's policies and procedures. Under the Independent Contractor Agreement, drivers are paid on a per-mile basis with various deductions.

In addition to named Plaintiffs Blair and Davis, 12 other drivers have consented to being a party plaintiff: Reginald Harris, Rob Hanneken, James Sturgeon, Patrick Kelley, Ronald Aguillard, Chad Frobos, Scott Ross, James Thomas, Timothy Allor, Michael Walker, Elhajj Alston, and Randy Hemingway. In November 2013, the Court denied motions for summary judgment on the issue of whether the drivers are employees or independent contractors as a matter of law. In April 2014, Plaintiffs filed a second amended complaint alleging failure to pay minimum wages under the Fair Labor Standards Act and failure to pay wages due and making improper deductions under the Kansas Wage Payment Act.

In July 2014, Plaintiffs filed a motion for conditional certification of collective claims under § 216(b) of the Fair Labor Standards Act (Doc. 102) and a motion for class certification under Federal Rule of Civil Procedure 23 for claims under the Kansas Wage Payment Act (Doc. 104), which are now before the Court. In addition, TransAm has filed a motion for leave to file a surreply (Doc. 140).

## II. Analysis

## A. Motion to Certify Class Under Rule 23 for KWPA Claims

### 1. Standard

Class action certification is governed by Federal Rule of Civil Procedure 23. The trial court has broad discretion in deciding whether to certify a class.[1] The Court must perform a "rigorous analysis" to satisfy itself that the prerequisites of Rule 23 are met.[2] Rule 23 does not provide the Court with the authority to conduct a preliminary inquiry into the merits of the lawsuit to determine whether it may be maintained as a class action.[3] Although the Court may not evaluate the strength of a cause of action at the class certification stage, it must consider, "without passing judgment on whether plaintiffs will prevail on the merits," whether the requirements of Rule 23 are met.[4] In exercising its discretion, the Court should err on the side of class certification because it has the authority to redefine or decertify the class if necessary.[5]

Plaintiffs have the burden to demonstrate under a strict burden of proof that the requirements of Rule 23 are clearly established.[6] In doing so, plaintiffs must establish that the prerequisites of Rule 23(a) are satisfied by demonstrating that: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the

---

[1] *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1085-86 (10th Cir. 2014).

[2] *Id*. at 1086.

[3] *Id*. at 1087.

[4] *Id*. at 1088 (quoting *Shook v. Bd. of Cty. Comm'rs of El Paso*, 543 F.3d 597, 612 (10th Cir. 2008)).

[5] *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 503 (D. Kan. 2014).

[6] *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

representative parties will fairly and adequately protect the interests of the class.[7] After meeting all four of these requirements, the plaintiffs must demonstrate that the proposed class action fits within one of the three categories described in Rule 23(b).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[8] Not all of the elements of the claim must have questions of fact or law that are common to the class, and the answers to those common questions must not all be dispositive.[9] In other words, the predominance question " 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.' "[10]

Predominance regularly is the greatest obstacle to class certification. The Court must characterize the issues in the case as common or not common and then weigh each to determine which issues predominate.[11] In other words, considering the extent to which the evidence needed to answer factual and legal questions will frequently include some discussion of the claim itself.[12]

---

[7] Fed. R. Civ. P. 23(a).

[8] *Amchem Prods. v. Windsor*, 521 U.S. 591, 622-23 (1997).

[9] *CGC Holding*, 773 F.3d at 1087.

[10] *Id.* (quoting 2 William B. Rubenstein, et al., *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)).

[11] *Id.*

[12] *Id.*

## 2. Class Definition

The Court first addresses the proposed class definition.[13] "Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action."[14] Therefore, the definition must be "precise, objective, and presently ascertainable."[15] Here, Plaintiffs seek certification of the following class: "All current and former 'Leased Drivers' employed by Defendant since August 21, 2006."[16] Plaintiffs further describe "Leased Drivers" as "those designated by Defendant as independent contractors who have entered into an Independent Contractor Agreement with TransAm and who have leased a truck through Defendant's wholly-owned subsidiary, TransAm Leasing, Inc. since August 21, 2006."[17]

TransAm Trucking objects to the proposed class definition because it differs from the class definition proposed in the second amended complaint filed in 2014. In support, TransAm cites three out-of-jurisdiction cases for the proposition that Plaintiffs are limited to the class definition pled in the complaint unless there has been a request to amend. Rule 23 contains no such limitation.[18] Rather, Rule 23 puts the responsibility of defining the class on the Court.[19] By rule, the definition of the class ultimately is to be determined by the Court, not the parties. The

---

[13] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 257 (D. Kan. 2010).

[14] *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 444 (D. Kan. 2006) (quoting Manual for Complex Litigation § 21.222, at 270 (4th ed. 2005)).

[15] *Id.*

[16] Plaintiffs' Motion for Class Certification, Doc. 104, at 1.

[17] Memorandum in Support of Plaintiffs' Motion, Doc. 105, at 4.

[18] *See Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181, at *2-3 (N.D. Ill. Jan. 4, 2013).

[19] Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class[.]").

Tenth Circuit has noted that if "the court finds that the proposed definition is not sufficiently definite, it may modify the definition instead of dismissing the proposed action."[20]

There comes a time when it becomes unfair to significantly alter the class definition—as TransAm alleges here—but that time has not come in this case.[21] The definition proposed in the motion narrows the class from the one proposed in the complaint. And it is early enough in the proceedings that TransAm will not be prejudiced by the proposed class definition. The Court's responsibility is to ensure that the definition is "precise, objective, and presently ascertainable."[22] The Court reserves, under Rule 23(c)(1)(C), the authority to amend the class definition before final judgment. The Court finds that the proposed class definition is sufficiently precise and objective and that potential class members are presently ascertainable as defined. Therefore, the Court adopts the following class definition:

> All current and former "Leased Drivers" employed by Defendant TransAm Trucking, Inc., since August 21, 2006. "Leased Drivers" are those designated by Defendant as independent contractors who have entered into an Independent Contractor Agreement with TransAm and who have leased a truck through Defendant's wholly owned subsidiary, TransAm Leasing, Inc. since August 21, 2006.

### 3. Rule 23(a) Requirements

Rule 23(a) provides the following prerequisites for class certification: (1) Numerosity: "the class is so numerous that joinder of all members is impracticable;" (2) Commonality: "there are questions of law or fact that are common to the class;" (3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and" (4) Adequacy

---

[20] *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999).

[21] *See Urethane*, 237 F.R.D. at 445 (declining to adopt class definition submitted in a revised proposed order after the class certification hearing).

[22] *Id*. at 444.

of representation: "the representative parties will fairly and adequately represent the interests of the class."[23] None of the elements of Rule 23(a) are in dispute in this case. Nonetheless, the Court will analyze whether Plaintiffs have met all of the Rule 23(a) requirements.

### a. Numerosity

To satisfy the numerosity requirement of Rule 23(a)(1), Plaintiffs must establish that the class is so numerous so as to make joinder impracticable.[24] Plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.[25] Courts have found that classes as small as 20 members can satisfy the numerosity requirement.[26] Here, Plaintiffs estimate that there are more than 1,000 drivers in the class. Therefore, the Court finds that Plaintiffs have established the numerosity required.

### b. Commonality

Rule 23(a)(2) requires Plaintiffs to show that questions of law or fact are common to the class—that is, if class members " 'possess the same interest and suffer the same injury.' "[27] This inquiry requires the Court to find only whether common questions of law or fact exist. Unlike the analysis under Rule 23(b)(3), the commonality inquiry does not require a finding that such questions predominate.[28] Here, the common question is whether class members are employees or independent contractors. Therefore, the Court finds that Plaintiffs have established commonality.

---

[23] Fed. R. Civ. P. 23(a)(1)-(4); *Trevizo*, 455 F.3d at 1161-62.

[24] *Trevizo*, 455 F.3d at 1162.

[25] *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

[26] *Id.*

[27] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

[28] *Bennett*, 298 F.R.D. at 505.

### c. Typicality

Rule 23(a)(3) requires that the representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members.[29] "It is well established that 'differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative[s] and class members are based on the same legal or remedial theory.' "[30] The representative plaintiffs' interests need not be identical to those of the class members, but they must not be "significantly antagonistic" to the claims of the proposed class.[31] This Court has found typicality when a named plaintiff's KWPA claim proceeds under the legal theory that the employer's compensation system failed the requirements of the KWPA.[32] Here, the named Plaintiffs Blair and Davis have KWPA claims that are similar to the claims of other class members, and they have no interests that are antagonistic to the rest of the class. Therefore, the Court finds that Plaintiffs have established typicality.

### d. Adequacy of Representation

Under Rule 23(a)(4), a representative plaintiff must show that he will fairly and adequately protect the interests of the class. To satisfy this requirement, the representative plaintiff must be a member of the class he seeks to represent and must show that (1) his interests do no conflict with those of the class members and (2) that he will be able to prosecute the action vigorously through qualified counsel.[33] To defeat class certification, a conflict must be

---

[29] *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010).

[30] *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 689 (D. Kan. 2009) (quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

[31] *Stricklin*, 594 F.3d at 1198-99.

[32] *Garcia*, 255 F.R.D. at 689.

[33] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

fundamental and go to specific issues in controversy.[34] A fundamental conflict exists where some members of the class claim harm through a representative plaintiff's conduct that resulted in benefit to other class members.[35]  Minor conflicts will not defeat class certification.[36] Here, there is no allegation that Blair and Davis have any potential conflict with other members of the class. TransAm does not dispute that Plaintiffs' counsel is experienced and able to manage class litigation. Therefore, the Court finds that Plaintiffs have established adequacy of representation.

### 4. Requirements Under Rule 23(b)

After satisfying the prerequisites under Rule 23(a), Plaintiffs must demonstrate that the proposed class action fits within one of the three categories described in Rule 23(b). In this case, Plaintiffs seek to proceed under Rule 23(b)(3), which provides that a class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members" and a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."[37] Rule 23(b)(3) lists four factors for the Court to consider regarding the predominance and superiority criteria: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action."[38]

---

[34] *Bennett*, 298 F.R.D. at 506.

[35] *Id.*

[36] *Id.*

[37] Fed. R. Civ. P. 23(b)(3).

[38] Fed. R. Civ. P. 23(b)(3)(A)-(D).

### a. Predominance

The Rule 23(b)(3) predominance requirement tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," but it does not demand commonality as to all questions.[39] The predominance requirement is a far more demanding standard than the commonality requirement of Rule 23(a) and requires more than a common claim.[40] In short, issues " 'common to the class must predominate over individual issues.' "[41] Whether a question is common or individual may be determined by the nature of the evidence necessary to resolve the question.[42] A question is an individual question if the proposed class members will need to present evidence that varies from member to member to make out a prima facie case.[43] But if the same evidence will suffice for each member to make out a prima facie case, then it is a common question.[44]

Here, Plaintiffs assert that the question of whether class members are employees or independent contractors may be answered with common evidence. Specifically, the Plaintiffs contend that common evidence includes the owner-operator handbook, the independent contractor agreements, and the equipment lease agreements. Plaintiffs also note that all potential class members have or had the same job duties and underwent the same training. TransAm

---

[39] *Amchem*, 521 U.S. at 623.

[40] *Garcia*, 255 F.R.D. at 690.

[41] *Id*. (quoting *In re Hydrogen Peroxide Antitrust Lit.*, 552 F.3d 305, 311 (3d Cir. 2008)).

[42] *Id*.

[43] *Id*.

[44] *Id*.

counters that individual questions predominate because Plaintiffs' allegations and deposition testimony vary widely about the control exerted over them.

Kansas recently clarified how to determine whether a worker is an employee or independent contractor. The Kansas Supreme Court identified 20 factors but emphasized that the primary test is the employer's right to control the work. The 20-factor test considers:

> (1) the employer's right to require compliance with instructions (economic reality test's degree of control factor);
> (2) the extent of any training provided by the employer;
> (3) the degree of integration of the worker's services into the business of the employer (economic reality test's integral part of employer's business factor);
> (4) the requirement that the services be provided personally by the worker;
> (5) the extent to which the worker hires, supervises, and pays assistants;
> (6) the existence of a continuing relationship between the worker and the employer (economic reality test's permanence of the working relationship factor);
> (7) the employer's establishment of set work hours;
> (8) the requirement that the worker devote full-time to the employer's business;
> (9) the degree to which the work is performed on the employer's premises;
> (10) the degree to which the employer sets the order and sequence of work;
> (11) the requirement that the worker submit regular or written reports to the employer;
> (12) the manner of payment to the worker, *e.g.*, by the hour, day, or job;
> (13) the extent to which the employer pays the worker's business or travel expenses;
> (14) the degree to which the employer furnishes tools, equipment, and material (economic reality test's investment in business factor);
> (15) the incurrence of significant investment by the worker (economic reality test's investment in business factor);
> (16) the ability of the worker to make a profit or suffer a loss (economic reality test's opportunity for profit or loss factor);
> (17) whether the worker can work for more than one firm at a time;
> (18) whether the worker makes his or her services available to the general public on a regular and consistent basis;
> (19) whether the employer has the right to discharge the worker; and
> (20) whether the worker has the right to terminate the relationship at any time without incurring liability.[45]

---

[45] *Craig v. FedEx Ground Package Sys., Inc.*, 300 Kan. 788, 797, 335 P.3d 66, 76 (2014).

The Kansas Supreme Court concluded, "This test includes economic reality considerations, while maintaining the primary focus on an employer's right to control."[46] The goal of considering each of the factors individually is not to compare the number of factors favoring one result against the number of factors favoring the other result.[47] Rather, the factors are viewed as a whole with a "particular emphasis on the company's right to control the worker to tip the scales."[48] The Court noted the KWPA is broadly construed to protect workers from overreaching employers but should not be construed to prevent a worker from entering a mutually advantageous business arrangement.[49] The most fundamental principle to guide the weighing process is that form should not trump substance, meaning "if a worker is hired like an employee, dressed like an employee, supervised like an employee, compensated like an employee, and terminated like an employee, words in an operating agreement cannot transform that worker's status into that of an independent contractor."[50]

The Kansas Supreme Court came to these conclusions as the result of answering a certified question from the Seventh Circuit.[51] The Court applied the above factors and principles to conclude that FedEx drivers, plaintiffs in a class action, were employees as a matter of law under the KWPA.[52] The Court considered the standard form operating agreement as well as

---

[46] *Id.* at 798.

[47] *Id.* at 805.

[48] *Id.*

[49] *Id.* at 805-06.

[50] *Id.* at 806.

[51] *Id.* at 788-89.

[52] *Id.* at 828.

manuals, handbooks, memoranda, training videos, and other communication to determine the drivers' relationship with the company.[53] Based on the Kansas Supreme Court's answer to the certified question, the Seventh Circuit reversed a lower court's finding that the plaintiff FedEx drivers were independent contractors.[54] The Seventh Circuit noted that FedEx's policies and procedures were relevant in determining FedEx's right to control the drivers and that the Kansas Supreme Court's decision "does not mandate an evidentiary inquiry into actual control."[55]

Other federal district courts have split on whether to certify a Rule 23 class when the issue is whether proposed class members are employees or independent contractors. In most cases, the significant difference is whether the court considered the employer's right to control or the employer's actual control of the workers. Generally, courts that evaluated whether an employer had the right to control certified the class based on common evidence such as written agreements or policies.[56] Courts that evaluated whether the employer exercised actual control denied class certification based on the need to examine the relationship with each plaintiff.[57]

The Kansas Supreme Court has held that the right to control is the primary factor in determining whether a worker is an employee or an independent contractor under the KWPA.[58]

---

[53] *Id.* at 807.

[54] *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 2015 WL 4099853, at *3 (7th Cir. July 8, 2015).

[55] *Id.* at *2 (" 'Actual control' cannot even be found among the twenty factors used to determine whether an employer-employee relationship exists under the KWPA.").

[56] *See, e.g., Villalpando v. Exel Direct Inc.*, 303 F.RD. 588, 608-10 (N.D. Cal. 2014); *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 607-08 (S.D. Cal. 2010); *Wilkins v. Just Energy Grp., Inc.*, 2015 WL 1234738, at *13-15 (N.D. Ill. Mar. 13, 2015).

[57] *See, e.g., Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 183-84 (S.D.N.Y. 2010); *Sherman v. Am. Eagle Express, Inc.*, 2012 WL 748400, at *11-12 (E.D. Pa. Mar. 8, 2012).

[58] *Craig*, 300 Kan. at 798.

This is consistent with its precedent that held that the actual exercise of control is not a factor.[59] Here, the question is not whether TransAm had the right to control the drivers but rather if common evidence can be used to make that determination for all class members. Much like the Seventh Circuit and the Kansas Supreme Court based its conclusions on FedEx's written operating agreements and policies, whether TransAm had the right to control can be determined from the written independent contractor agreements, equipment lease agreements, and owner-operator handbook that are substantially the same for all drivers in the proposed class. The same documents may be considered to address most, if not all, of the 19 secondary factors as well.[60] TransAm addresses many issues that correspond to some of the 20 factors, but most of these issues are asserted to dispute the actual control exercised by TransAm. In fact, TransAm summarizes its argument by claiming that evidence about its alleged control exerted over the drivers varies widely.

But as stated, it is not the actual control exerted over the drivers that is at issue, it is TransAm's right to control. And that question can be answered with common evidence. Notably, the Seventh Circuit decided the question of whether FedEx drivers were employees or independent contractors based on common evidence in a case in which a class had been certified.[61] The Court finds that the same can be done here. Therefore, the Court finds that questions common to the class predominate over questions affecting individual members.

---

[59] *Wallis v. Sec'y of Kan. Dept. of Human Res.*, 236 Kan. 97, 103, 689 P.2d 787, 792 (1984) ("It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.").

[60] *See Norris-Wilson*, 270 F.R.D. at 607 ("But just because the test for making the determination takes into account a multitude of factors doesn't mean it's not susceptible to common proof.").

[61] *See In re FedEx Ground Package Sys., Inc.*, 734 F. Supp. 2d 557, 559 (N.D. Ind. 2010), *rev'd*, 2015 WL 4099853, at *3.

### b. Superiority

Rule 23(b)(3) requires plaintiffs to establish that a class action is a preferable method to resolve the dispute.[62] If individual claims are similar, a class action may be superior to discrete actions that could be "grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation."[63] As discussed above, Plaintiffs' claims are substantially similar, rely on much of the same evidence, and will require many of the same witnesses. Therefore, the Court finds that a single class action is a preferable and superior method to duplicative litigation by individual parties.[64]

### 5. Appointment of Class Counsel

"An order certifying a class must also appoint class counsel that will adequately represent the interests of the class."[65] In appointing class counsel, the court must consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."[66] Plaintiffs are represented by Brady & Associates, The Woody Law Firm PC, and Siro Smith Dickson PC. There has been no opposition to counsel's request to be appointed as class counsel. After reviewing the record, the Court is satisfied that Plaintiffs' attorneys meet the criteria of Rule 23(g) and will adequately represent the interests of

---

[62] *Knight v. Mill-Tel, Inc.*, 2013 WL 3895341, at *8 (D. Kan. July 29, 2013).

[63] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004).

[64] *See Garcia*, 255 F.R.D. at 692.

[65] *Id.*

[66] Fed. R. Civ. P. 23(g)(1)(A).

the class as counsel. Accordingly, the Court appoints Brady & Associates, The Woody Law Firm PC, and Siro Smith Dickson PC as class counsel for this action.

### 6. Conclusion

Based on these reasons, the Court concludes that Plaintiffs' proposed class satisfies the requirements of Rule 23. Accordingly, the class will be certified with respect to Plaintiffs' KWPA claims. Larry Blair and Charlie Davis are appointed as class representatives.

### B. Motion for Conditional Certification Under the FLSA

Plaintiffs ask the Court to conditionally certify a class under the FLSA of "Drivers who were classified by Defendant as independent contractors and who leased trucks from TransAm Leasing, Inc. and performed driving work between November __, 2008 to the present."[67] In addition, Plaintiffs ask the Court to (1) order TransAm to provide Plaintiffs with the names, addresses, and phone numbers of each of the class members in an easily malleable format, such as Microsoft Excel; (2) designate Blair and Davis as class representatives and appoint Plaintiffs' counsel as class counsel; and (3) approve Plaintiffs' proposed notice of claim and right to opt-in.

### 1. Standard

The FLSA permits legal action against any employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[68] Unlike class actions under Federal Rule of Civil Procedure 23(b)(3), a collective action brought under

---

[67] Plaintiffs' Motion for Conditional Certification, Doc. 102, at 1. The starting date for the class is determined by subtracting six years, nine months, and 15 days from the date of this Order. This period accounts for a three-year statute of limitation plus three years, nine months, and 15 days that the statute of limitations was tolled between the filing of an amended complaint on January 28, 2010, and this Court's Order denying summary judgment on November 13, 2013. *See* Joint Motion for Stay and Tolling Agreement, Doc. 36; Scheduling Order, Doc. 45, at 7.

[68] 29 U.S.C. § 216(b).

-17-

§ 216(b) of the FLSA includes only those similarly situated individuals who opt into the class.[69] But the FLSA does not define what it means to be "similarly situated." Instead, the Tenth Circuit has approved an ad-hoc, two-step approach to § 216(b) certification claims.[70] The ad-hoc approach employs a two-step analysis for determining whether putative opt-in plaintiffs are similarly situated to the named plaintiffs.[71]

First, in the initial "notice stage," the court "determines whether a collective action should be certified for purposes of sending notice of the action to potential class members."[72] The notice stage "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[73] The standard for conditional certification at the notice stage is lenient and typically results in certification for the purpose of notifying potential plaintiffs.[74] The second step of the ad-hoc approach occurs after discovery, most often prompted by a motion for decertification.[75]

### 2. Plaintiffs Are Similarly Situated

TransAm acknowledges that the standard for conditional class certification is lenient, and there is no dispute that this case is in the notice stage. TransAm argues that the motion for conditional class certification under the FLSA should fail for the same reasons it argued against

---

[69] *See id.*

[70] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

[71] *Id.* at 1102-03.

[72] *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

[73] *Thiessen*, 267 F.3d at 1102 (citations and internal quotations marks omitted).

[74] *See id.* at 1103.

[75] *Id.* at 1102-03.

Rule 23 class certification for the KWPA claims. Specifically, TransAm argues that the drivers in the proposed class are not similarly situated and that it would be futile to certify the class.

Plaintiffs maintain that potential class members are similarly situated because they all received the same training, were provided with the same handbook of policies, and entered into the same independent contractor and equipment lease agreements. They all were paid under similar per-mileage pay policies by TransAm. They all had essentially the same job duties of driving to make deliveries. They all were classified as independent contractors. And they all were prohibited from driving for anyone other than TransAm.

The Court agrees that these situations qualify as substantial allegations that the drivers were "together the victims of a single decision, policy, or plan."[76] Generally, when putative class members have similar job duties, "the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan."[77] Similarly, Plaintiffs here allege that TransAm engaged in a pattern or practice of not paying minimum wages. Therefore, the Court finds that the class members are similarly situated and the allegations are sufficient to grant conditional certification.

### 3. Proposed Notice

Plaintiffs submitted a proposed Notice of Claims and Right to Opt In form and a proposed Consent to Join form for the Court's review. District courts have the discretion to monitor the preparation and distribution of collective action notices.[78] When using this

---

[76] *See Thiessen*, 267 F.3d at 1102.

[77] *Renfro v. Spartan Comp. Servs.*, 243 F.R.D. 431, 433-34 (D. Kan. 2007).

[78] *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989); *McCoy v. Over Easy Mgmt., Inc.*, 2015 WL 1578627, at *4 (D. Kan. Apr. 9, 2015).

discretion, courts must ensure fair and accurate notice and should refrain from altering the proposed notice absent strict necessity.[79] Here, TransAm made three objections to the proposed Notice of Claims and Right to Opt In form and one objection to the Consent to Join form. Plaintiffs concede to TransAm's objection to the Consent to Join form and agree to remove any reference to state law. The Court approves this modification and addresses the remaining objections.

**TransAm's Objection No. 1, Class definition**: The Court overrules TransAm's objection, which asks that the notice reflect the proper class definition. This is a restatement of TransAm's argument against the proposed class definition as ruled on in this Order. Accordingly, the Court finds that the notice accurately reflects the class definition and requires no change.

**TransAm's Objection No. 2, Terminology**: The Court overrules TransAm's objection to Plaintiffs' use of the term "Leased Driver" in the notice. The Court acknowledges that the term is not one used by TransAm in its business. But the Court finds that the term is neutral and not prejudicial to TransAm. Because the Court should refrain from altering the proposed notice unless necessary, the Court overrules the objection and requires no change.

**TransAm's Objection No. 3, Defense position**: The Court sustains in part TransAm's objection to the paragraph stating its answer to the claim. The Court finds that the term "Leased Drivers" should remain to maintain consistency and avoid confusion with TransAm's proposed use of the term "Owner Operators." But the Court finds TransAm's other proposed change—

---

[79] *McCoy*, 2015 WL 1578627, at *4.

adding that "it entered into valid and enforceable independent contractor agreements"[80]—is a reasonable statement of its position and necessary to the notice.[81] Therefore, the Court orders a modification to paragraph 4 as follows: "TransAm denies that it improperly misclassified Leased Drivers as independent contractors rather than as employees and that it otherwise has not violated the FLSA. To the contrary, TransAm asserts that it entered into valid and enforceable independent contractor agreements with the Leased Drivers."

### C. Motion to File Surreply

TransAm seeks leave to file a surreply to Plaintiffs' reply brief. The local rules of this Court contemplate only the filing of responses and replies to motions. They do not contemplate the filing of surreplies.[82] Surreplies are disfavored and will be permitted only in exceptional circumstances, such as when new material is raised for the first time in the movant's reply.[83] TransAm has not persuaded this Court that there is any new relevant material raised in Plaintiffs' reply brief or that there exists any other exceptional circumstance that would justify a surreply. Accordingly, TransAm's motion for leave to file surreply is denied.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification Under Federal Rule of Civil Procedure 23 for KWPA Claims (Doc. 104) is **GRANTED**. TransAm is ordered to provide Plaintiffs with the names, addresses, and phone numbers of putative class members in an easily malleable format, such as Microsoft Excel. Larry Blair and Charlie Davis

---

[80] Response to Plaintiffs' Motions for Class Certification, Doc. 131, at 50-51.

[81] *See Wass v. NPC Int'l, Inc.*, 2011 WL 1118774, at *10 (D. Kan. March 28, 2011).

[82] *See* D. Kan. Rule 7.1(c).

[83] *See Locke v. Grady Cty.*, 437 F. App'x 626, 633 (10th Cir. 2011); *Dale v. Beechcraft*, 2014 WL 853028, at *2 (D. Kan. March 5, 2014).

are appointed as class representatives, and their counsel, Brady & Associates, The Woody Law Firm PC, and Siro Smith Dickson PC are designated class counsel.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Conditional Certification of Collective Claims Under § 216(b) of the FLSA (Doc. 102) is **GRANTED**. Plaintiffs are authorized to send out notice, as set forth above, to each potential member of the class. TransAm is ordered to provide Plaintiffs with the names, addresses, and phone numbers of putative class members in an easily malleable format, such as Microsoft Excel. Larry Blair and Charlie Davis are appointed as class representatives, and their counsel, Brady & Associates, The Woody Law Firm PC, and Siro Smith Dickson PC are designated class counsel.

**IT IS FURTHER ORDERED** that TransAm's Motion for Leave to File Surreply (Doc. 140) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 20th day of August, 2015.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE