## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LARRY BLAIR and
CHARLIE DAVIS,
On behalf of themselves and
all other persons similarly situated,

       *Plaintiffs,*

vs.

       Case No. 09-2443-EFM-KGG

TRANSAM TRUCKING, INC.,

       *Defendant.*

## MEMORANDUM AND ORDER

Plaintiffs, on behalf of themselves, a certified class and a certified collective class, bring suit against Defendant TransAm Trucking Inc. alleging that Defendant misclassified them as "independent contractors" when they were in reality "employees" of Defendant.  Because of this alleged misclassification, Plaintiffs assert that Defendant failed to pay them minimum wages in violation of the Fair Labor Standards Act ("FLSA") and the Kansas Wage Payment Act ("KWPA").  Currently before the Court is Plaintiffs' Motion to Accept and for Leave to File Consents to Join Out of Time (Doc. 317) and Defendant's Motion to Strike Certain Opt-In Plaintiffs (Doc. 354).  The Court grants in part and denies in part both the Plaintiffs' and Defendant's motion for the reasons stated below.

## I.      Background

On August 20, 2015, this Court conditionally certified a collective class under the FLSA.[1] The class was defined as "Drivers who were classified by Defendant as independent contractors and who leased trucks from TransAm Leasing, Inc. and performed driving work between November 5, 2008 to the present."   In this Order, the Court also approved the proposed class notice.

In the September 2015 scheduling order, the Court established that the class notice would be served by October 15, 2015.  It set an opt-in deadline of January 30, 2016.  Plaintiffs were allowed to mail a second notice to any addresses that were returned undeliverable after the third-party administrator performed a skip-trace or other update to the addresses.

The class notice stated on the first page in bold print: "Ask to be included: Return the attached consent to join by January 30, 2016."   On the third page, it explained how to join.  The notice provided:

> To participate in this lawsuit, you need to fill out the enclosed "Consent to Join" form and mail it in the enclosed self-addressed stamped envelope postmarked by January 30, 2016 . . . .
>
> If you fail to return a Consent to Join form postmarked by January 30, 2016, you will not be allowed to participate in any recovery for the FLSA minimum wage claims in this lawsuit and may be jeopardizing your right to sue.

Approximately 1,900 individuals opted into the class.

Due to Defendant's inadvertent omission of contact information as to fifty potential Plaintiffs, the parties came to an agreement in March 2016 to send a class notice to these individuals.   The notice, sent out in late March, extended the opt-in period for these fifty

---

[1] The Court also certified a class pursuant to Fed. R. Civ. P. 23 on Plaintiffs' KWPA claims.  There are no issues related to this class in this Order.

individuals through July 8, 2016.  The same form of notice was used and had the same language that if the opt-in Plaintiff failed to return the consent postmarked by July 8 that "you will not be allowed to participate in any recovery for the FLSA minimum wage claims . . . ."

Over the past year, Defendant engaged in discovery with opt-in Plaintiffs through a questionnaire.  The questionnaire was seven pages with approximately twelve questions (including some sub-parts).  Plaintiffs objected to several of the questions in the questionnaire and also argued that the number of questions exceeded thirty in violation of the scheduling order. Magistrate Judge Gale reviewed the questionnaire and ruled that the subparts, with the exception of one, did not exceed the allowable amount.  Judge Gale also allowed Plaintiffs ninety days to respond to the questionnaire due to the number of opt-in Plaintiffs and the nature of the work performed by Plaintiffs (truck drivers who travel and are away from home for extended periods of time).  The initial responsive date was August 15, 2016.

Plaintiffs then requested a thirty-day extension to allow for the opt-in Plaintiffs to respond to the questionnaire.  Defendant objected to this request.  Judge Gale granted the extension in a Second Supplemental Scheduling order and stated that the deadline to respond to the questionnaire was September 15, 2016.

There are currently two motions before the Court.  Plaintiffs filed a Motion to Accept and for Leave to File Consents to Join Out of Time.  In this motion, they seek the Court's acceptance of opt-in consents already filed and also seek approval from the Court for the late filing of consents.  Defendant filed a Motion to Strike Certain Opt-In Plaintiffs.  In this motion, it seeks to strike approximately 960 individuals for failure to comply with the discovery process.  It also seeks to strike approximately 134 Plaintiffs because they do not fall within the class definition. The Court will first address Plaintiffs' motion and then Defendant's motion.

## II.     Plaintiffs' Motion to Accept and for Leave to File Consents to Join Out of Time

Pursuant to 29 U.S.C. § 216(b), "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Thus, to affirmatively opt-in to an FLSA collective action, an individual must do so in writing and file that consent with the Court.  In the class notice, the opt-in deadline was January 30, 2016.

The deadline in the class notice, however, does not state that consents have to be *filed* with the Court on that day.  Instead, the class notice provides that the opt-in deadline is for the consent form to be "postmarked by January 30."  If the requirement was for the consent to be postmarked by January 30, the consents could not be filed with the Court on January 30 as some consents would still be in transit and would necessarily have to go to the third party administrator to first be compiled and then filed with the Court.  However, the consents do have to be filed with the Court, as noted in 29 U.S.C. § 216(b), and Plaintiffs do not have an indefinite time for which to file these consents.  There is a purpose in setting a deadline in the class notice for which individuals can join the class and for requiring the prompt filing of those consents.

In this case, Plaintiffs filed opt-in notices at various times after the opt-in deadline.  They seek the Court's acceptance of these already-filed consents.  Plaintiffs also apparently seek leave to file a number of opt-in consents that have not been previously filed.  The Court notes that the parties' briefing is confusing.[2]

---

[2] As an example, Plaintiffs list eighty-three potential opt-in individuals by random date and name.  It is not clear whether these individuals have already opted in or whether they have been held in "abeyance."  Presumably, "abeyance" means that they were not filed with the Court.  They are not alphabetized nor are they listed in sequential order by date.  There does not appear to be any method as to how they were listed.  In addition, Plaintiffs provided affidavits for thirty-five of the eighty-three individuals.  These affidavits and corresponding exhibit letters appear to be in an even more random order.  Thus, the filing made it very difficult to ascertain the diligence and/or the timing of these potential opt-in Plaintiffs' consents.

Defendant states that Plaintiffs have already filed *all* of the consents. In their briefing, Plaintiffs sometime appear to agree with this proposition.  However, at other times, Plaintiffs state that some of these notices have been held in abeyance.  Presumably, this means that they were not filed with the Court.  The record appears to reflect that not *all* of the consents that Plaintiffs seek to file have already been filed.  The record, however, demonstrates that numerous consents were filed in early February.  Yet, there were also consents filed in mid-February and mid-March.  The record also reflects that some of the consents that Plaintiffs stated were held in abeyance were actually filed.[3]  Thus, it is entirely unclear to the Court which consents of the approximately 170 that are at issue in this Order have been filed or have been held in abeyance. The Court reminds the parties that they need to direct the Court to the evidence supporting their contentions. It will not scour the record to determine which consents have been filed or have not been filed, particularly when there are approximately 1,900 consents in this case, and approximately 170 at issue in this order.[4]  The Court will address the consents in three different groups.

### A.  *Sixty-five to Sixty-six Consents Already Filed between February 1 and February 5*

With regard to sixty-five of the consents, Defendants do not oppose them.  Although these consents were not filed until early February, the parties agree that they were all postmarked on or before January 30, 2016.  Thus, they are timely consents.[5]  Plaintiffs include an additional

---

[3] Specifically, Plaintiffs state that with regard to twenty undeliverable address Plaintiffs, three have been filed with the Court, and seventeen have been held in abeyance.  The record, however, demonstrates that five of the twenty have been filed.  To make matters more confusing, four of the five consents were signed and dated January 30 or before which would make them appear timely.  One of the consents was signed after January 30.  These five consents were either filed February 5 (Doc. 192) or February 12 (Doc. 194).

[4] There are currently almost 400 docket entries in this case.

[5] Presumably all of these consents have been filed and are on record.

individual, Read Tillotson, in their motion (who apparently was not on the list of sixty-five) and state that his consent was already filed with the Court on February 2. Plaintiffs state that he faxed his consent on January 30 and should also be considered timely filed. Defendants offer no response to this argument. Thus, the Court will allow his consent as well.

> B.  *Three Opt-In Consents Already Filed on July 11*

Plaintiff contends that these three already-filed consents should be accepted because they are part of the group of fifty individuals who had an opt-in deadline of July 8. Plaintiffs state that the third party administrator received these three consents, and they were postmarked between March 28, 2016 and April 9, 2016. Plaintiffs filed them on July 11.

Defendants take issue with these three consents arguing that there is no declaration or affidavit supporting Plaintiff's contention so there is no excuse for filing the consents on July 11 instead of July 8. The Court notes that Defendant is taking issue with one business day as July 8 was a Friday and July 11 was a Monday. In any event, as noted above, the deadline set in the class notice was for the consents to be *postmarked* by July 8. And although Plaintiffs do not provide an affidavit as to when the consents were postmarked, one can simply look at the document on file and see the date that the individual signed the consent to join.[6] Each consent was dated prior to July 8 and filed within one business day of July 8. Thus, the Court will accept these three filings.

> C.  *Twenty "Undeliverable Address" Opt-In Plaintiffs and Eighty-Three Untimely Opt-In Plaintiffs*

---

[6] *See* Doc. 256-1, pp. 1-3 (signed dates of March 26, 2016, April 2, 2016, and April 8, 2016). Presumably, if the consents were filed by the third party administrator on July 11, the *very latest* they could have been postmarked was July 9 (one day late) in order for the third party administrator to receive it by July 11 and file the consent that same day. Plaintiffs, however, stated in their motion that they were postmarked between March 28 and April 9.

With regard to the twenty undeliverable address opt-in Plaintiffs and the eighty-three untimely opt-in Plaintiffs, the Court will address these individuals as one group because neither party clarified or briefed the issue well.  As noted above, with regard to the twenty undeliverable address Plaintiffs, Plaintiffs state that they have only filed three, but the record appears to reflect that five were filed.  As to the eighty-three "untimely" Plaintiffs, it appears that at least one of these has already been filed.  However, the Court is unsure as to the status of all.

Rather than searching the record, the Court establishes the following parameters. The Court will accept any signed consent *dated* January 30, 2016 or before *and filed* by February 12, 2016 or before.[7]  If a consent was signed by January 30, but not filed until *after* February 12, Plaintiffs' counsel must specifically show cause as to why the consent was untimely filed.[8]  If the consent was signed after January 30, the Court will not accept signed consents already filed, or allow leave to file a signed consent—unless the individual is one of the twenty undeliverable address Plaintiffs, and Plaintiff can specifically show that they did not receive the second mailing until after January 4.  The Court will entertain a motion to allow these consents so long as Plaintiffs specifically shows that there was no delay in promptly signing the consent and then

---

[7] The Court recognizes that the class notice required the consents to be postmarked by January 30.  Because there is no specific evidence as to when these consents were postmarked—but instead the evidence is when the third party administrator received them—the Court will use the signing date as the relevant date.  This method appears to place substance over form because the Court hesitates to penalize an individual who timely signed the consent form but may not have complied procedurally with having it postmarked by January 30. In addition, the Court sees no prejudice to Defendant in proceeding this way, particularly because it is requiring Plaintiffs' counsel to demonstrate excusable neglect if they were not filed within two weeks of January 30.

[8] Generally, if a party seeks to file something out of time, the party must demonstrate excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *see also Scott v. Raudin McCormick, Inc.*, 2010 WL 3125955, at *2 (D. Kan. Aug. 6, 2010). When determining whether neglect is excusable, some circumstances include: (1) the danger of prejudice to the opposing party, (2) the length of the delay and its possible impact on judicial proceedings, (3) the reason for delay and whether it was within the reasonable control of the movant, and (4) the existence of good faith on the moving party's part. *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

promptly returning the consent to the third party administrator.   Counsel will need to look at the consents already filed to determine whether any need to be stricken.   In addition, to the extent that Plaintiffs seek to file any additional consents, they will need to follow the guidelines as set forth above and demonstrate good cause and excusable neglect.   Accordingly, the Court grants in part and denies in part Plaintiff's Motion to Accept and for Leave to File Consents to Join Out of Time.

### III.    Defendant's Motion to Strike Certain Opt-In Plaintiffs

Defendant seeks to strike a number of opt-in Plaintiffs for either failure to comply with the discovery process or because they do not fall within the class definition.   The Court will first address Defendant's motion relating to the discovery process.   The Court will then address the 144 Plaintiffs who fail to fall within the class definition.

### A.  *Failure to Comply with the Discovery Process*

Defendant seeks to strike numerous opt-in Plaintiffs from this action—which effectively operates as a dismissal of these Plaintiffs from this action.[9]   These include 809 opt-in Plaintiffs who failed to turn in a discovery questionnaire, five opt-in Plaintiffs who failed to timely turn in a discovery questionnaire, 138 opt-in Plaintiffs who failed to sign the last page of the questionnaire, and five individuals who allegedly failed to make themselves available for a deposition.[10]

---

[9] Defendant asserts that they are not seeking "dismissal" of the action but rather simply seeking to strike such class members who have failed to answer a questionnaire or make themselves available for a deposition. In reality, the Court and Defendant well know, the dismissal of these plaintiffs would effectively be dismissal of these Plaintiffs' FLSA action against Defendant.

[10] At the filing of Defendant's motion, there were seven individuals.  Two were deposed, and thus they are not at issue anymore.

As an initial dispositive matter, the parties argue over the appropriateness of Defendant's motion with regard to these Plaintiffs who apparently failed to comply with discovery.  Plaintiffs argue that Defendants never took steps to compel the discovery that is lacking and simply sought to utilize the judicial process prior to seeking dismissal and thus should not be able to proceed.  In its reply, Defendant concedes that its Motion to Strike is really a Motion for Sanctions brought under Fed. R. Civ. P. 37(b)(2).[11]  Defendant then argues that Plaintiffs failed to comply with a court order.  Defendant, however, does not identify to the Court which discovery court order Plaintiffs did not comply with.[12]

With any motion brought under Fed. R. Civ. P. 37, the District of Kansas requires the party bringing it to meet and confer with the opposing party prior to filing it.  Specifically, D. Kan. Rule 37.2 states that "[t]he court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 . . . unless the attorney for the moving party has conferred or has made reasonable effort to confer with the opposing counsel concerning the

---

[11] Defendant never states in its original memorandum that it is bringing the motion pursuant to Fed. R. Civ. P. 37(b)(2).  In Defendant's reply, it states that perhaps it could have titled the motion differently or more clearly, but it contends that it did cite to case law addressing Rule 37(b)(2)  and thus it was "abundantly clear that Defendant was seeking dismissal of these opt-in plaintiffs as a sanction pursuant to Fed. R. Civ. p. 37(b)(2)."  If Defendant is indeed relying on Rule 37, it must be clear to the Court, and Defendant must follow all applicable rules.

In addition, the opinions that Defendant cites to for support of its Rule 37(b)(2) sanctions occurred after motions to compel, orders on those motions, and failure to comply with those court orders requiring the plaintiff's compliance with discovery.  *See, e.g., Scott,* 2010 WL 3125955, at **3-4 (entertaining a sanctions motion under Rule 37 after opt-in plaintiffs had failed to respond to the discovery request deadline, and a letter had been sent warning them that if they failed to comply that they would be dismissed from suit, and a motion to compel had been filed that the court granted and set a specific deadline for compliance that the opt-in plaintiffs failed to meet again); *Duarte v. PPG Indus., Inc.,* 2011 WL 1097799, at *1 (D. Kan. Mar. 22, 2011) (dismissing four opt-in plaintiffs after they failed to comply with the court's order on defendant's motion to compel).  Indeed, Rule 37(b)(2)(A) is directed toward the failure to obey a "discovery order."  As will be noted above, Defendant does not direct the Court to a discovery order.  And Defendant does not direct the Court to any case law allowing for dismissal on the basis of facts similar to this case.

[12] As noted above, there was no motion to compel and thus no corresponding order on a motion to compel.  Presumably, Defendant may be relying upon the Second Supplemental Scheduling Order establishing the extension deadline for questionnaire responses.  However, it is not clear.

matter in dispute prior to the filing of the motion."  "The purpose of the local rule is to encourage the parties to satisfactorily resolve their discovery disputes prior to resorting to judicial intervention."[13]  "Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute the parties themselves could have resolved, it must needlessly expend resources it could better utilize elsewhere."[14]  A "[r]easonable effort to confer requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[15]

In this case, this requirement was not followed and the purpose of the rule was not served.  Neither party is fulfilling their obligations in this case, and they are unnecessarily involving the Court in the process.  Deadlines are set, and Plaintiffs must follow them.  Local rules are established, and Defendant must follow them.[16]  It appears that Plaintiffs are not taking their discovery obligations seriously.  It also appears that Defendant attempts to dismiss opt-in Plaintiffs for issues ranging from the mundane to the more serious.  The Court reminds

---

[13] *Pro Fit Mgmt., Inc., v. Lady of Am. Franchise Corp.*, 2011 WL 5825423, at *1 (D. Kan. Nov. 11, 2011).

[14] *Banks v. St. Francis Health Ctr., Inc.*, 2015 WL 7451174, *2 (D. Kan. Nov. 23, 2015) (citation omitted).

[15] *Pro Fit Mgmt.*, 2011 WL 5825423, at *1 (quotation marks and citation omitted).

[16] With regard to opt-in Plaintiffs' failure to respond, undoubtedly, this is frustrating.  However, Defendant must make an effort to confer with Plaintiffs about this failure before involving the Court.  With regard to five opt-in Plaintiffs filing their questionnaires late and 138 opt-in Plaintiffs who failed to sign the last page, meeting and conferring could have resolved these issues without judicial intervention.  With regard to the five individuals who have not made themselves available for depositions, meeting and conferring could potentially resolve this issue as well as evidenced by the appearance of two individuals for depositions during the briefing of this matter.

Defendant that dismissal is a harsh sanction.[17]  The Court reminds Plaintiffs that sanctions can be imposed for failure to comply with discovery deadlines, which can include dismissal.[18]

Defendant failed to comply with the local rules before bringing this sanction motion under Fed. R. Civ. P. 37(b).  There does not appear to be *any* attempt to confer prior to bringing this motion.  Due to this failure, the Court denies this aspect of the motion.

### B.  Not Within the Class Definition

Defendants seek to strike two individuals (Huggins and Turner) who were never independent contractors with Defendant, 130 opt-in Plaintiffs whose agreements ended with Defendant prior to November 5, 2008, eight opt-in Plaintiffs who opted in twice, and two unidentifiable Plaintiffs (who appear to be Huggins and Turner) from the class.  Plaintiffs agree that these individuals should be stricken.  Thus, the Court strikes them.

With regard to two other individuals (Kristin Stump and Jason Palmer), Defendant contends that they never drove as independent contractors for Defendant but instead drove as employees or independent contractors for other drivers who were independent contractors of Defendant.  Defendant provides an affidavit in which a representative for Defendant avers that neither Kristin Stump nor Jason Palmer signed an independent contractor agreement or equipment lease agreement with Defendant.  Instead, they drove as employees of their spouses.  Plaintiff argues that these individuals were both part of married teams and that there are issues of fact regarding their status with Defendant.  The Court disagrees.  Defendant's averment that these individuals did not sign independent contractor agreements is sufficient to demonstrate that

---

[17] *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (dismissal under Rule 37(b)(2) "represents an extreme sanction appropriate only in cases of willful misconduct" and the court should usually consider five factors before imposing it).

[18] *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

they cannot be considered independent contractors for purposes of this FLSA class.  Thus, these two individuals are stricken from the class as well.  Accordingly, all of the individuals who Defendant contends do not fall within the class definition are stricken as opt-in Plaintiffs.

**IT IS ACCORDINGLY ORDERED** that Plaintiffs' Motion to Accept and for Leave to File Consents Out of Time (Doc. 317) is **GRANTED IN PART** and **DENIED IN PART**.

The Court will accept the already-filed sixty-six consents that were postmarked before January 30 and filed in early February.  The Court will also accept the already-filed three July consents.  The Court will accept any signed consent *dated* January 30, 2016 or before *and filed* by February 12, 2016 or before.  If a consent was signed by January 30, but not filed until *after* February 12, Plaintiffs' counsel must specifically show cause as to why the consent was untimely filed.  If the consent was signed after January 30, the Court will not accept signed consents already filed, or allow leave to file a signed consent—unless the individual is one of the twenty undeliverable address Plaintiffs, and Plaintiff can specifically show that they did not receive the second mailing until after January 4.  The Court will entertain a motion to allow these consents so long as Plaintiffs specifically shows that there was no delay in promptly signing the consent once Plaintiffs received it and then promptly returning the consent to the third party administrator.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Certain Opt-In Plaintiffs (Doc. 354) is **GRANTED IN PART** and **DENIED IN PART**.  It is granted to the extent that certain individuals do not fall within the class definition and thus the Court strikes these individuals.

**IT IS SO ORDERED**.

Dated this 7th day of December 2016.

Eric F Melgren

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE